**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:25-cv-80458-RLR**

KRISTIN COBBS, LYNN KAWAMINAMI,
AND LORETTA SCHWEINSBURG,
individually and on behalf of all others similarly
situated,

       *Plaintiffs,*

vs.

PETMED EXPRESS, INC.,

       *Defendant.*

**DEFENDANT PETMED EXPRESS, INC.'S**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

MOTION TO DISMISS PLAINTIFFS' COMPLAINT ................................................................. 1

BACKGROUND ........................................................................................................................... 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

I.      Plaintiffs Lack Standing. ................................................................................................... 3

II.     Plaintiffs and/or PetMed Consented to the Alleged Interceptions. ................................... 4

        A.      Plaintiffs consented to PetMed's use of the Website Technologies. ...................... 5

        B.      Plaintiffs consented to the alleged interception by accepting Meta's policies. ...... 6

        C.      PetMed Was a Party to Any Communication and Consented to Any Purported Interception. ............................................................................................................. 6

III.    Count I: Violation of the ECPA (18 U.S.C. § 2510 *et seq.*). ............................................ 7

        A.      No Interception While in Transit. ........................................................................... 7

        B.      The Crime or Tort Exception Does Not Apply. ...................................................... 8

IV.     Counts II and III: Violations of CIPA (Cal. Penal Code §§ 631, 632). ............................ 9

        A.      Clause One Does Not Apply to Internet Communications. ................................... 10

        B.      Clause Two Cannot Apply Because Plaintiffs Do Not Allege the Interception of the Contents of a Communication in Transit. ............................................................. 10

                1.      The information allegedly disclosed was not "contents." ......................... 10

                2.      The alleged interception did not occur while the communications were in transit. ........................................................................................................ 11

                3.      Plaintiffs Cannot Adequately Plead a Violation of Section 631(a) Clause Three Because Plaintiffs Fail to Allege a Claim Under Clause One or Clause Two. ......................................................................................................... 13

        C.      Plaintiffs do not allege a violation of section 632 ................................................. 13

                1.      No confidential communication. ............................................................... 13

        D.      No Requisite Intent. .............................................................................................. 14

        E.      The rule of lenity applies to resolve any ambiguity in PetMed's favor. ............... 14

V.     Count IV: Violation of CDAFA (Cal. Penal Code § 502)................................................ 15

VI.    Count V: Intrusion Upon Seclusion.............................................................................. 16

       A.     Plaintiff fails to state a claim under California law. .......................................... 16

              1.     No intentional intrusion occurred. ........................................................... 16

              2.     No reasonable expectation of privacy...................................................... 17

              3.     Any alleged intrusion was not highly offensive. ..................................... 18

       B.     Plaintiff fails to state a claim under Florida law. ............................................. 19

CONCLUSION................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Novant Health, Inc.*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ..........................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................3

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .............................................................................9, 18

*Barbour v. John Muir Health*,
No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. 2023) ..................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................3

*Bunnell v. MPAA*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ................................................................................12

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..............................................................................13, 17

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ................................................................................17

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)......................................................................................................8

*Celestine v. Capital One*,
No. 17-20237-CIV, 2017 WL 2838185 (S.D. Fla. June 30, 2017)........................................19

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................................................................13

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ..................................................................................15

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) (*Cousin I*) ..............................................................18

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)......................................................................................8

*Esparza v. Gen Digital Inc.*,
  No. CV 23-8223-KK-AGRX, 2024 WL 655986 (C.D. Cal. Jan. 16, 2024)...........................18

*Esparza v. Kohl's, Inc.*,
  723 F. Supp. 3d 934 (S.D. Cal. 2024) .......................................................................................17

*In re Facebook Internet Tracking Litig.*,
  140 F. Supp. 3d 922 (N.D. Cal. 2015) .........................................................................................4

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) .........................................................................................4

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .....................................................................................................16

*Folgelstrom v. Lamps Plus, Inc.*,
  125 Cal. Rptr. 3d 260 (Cal. Ct. App. 2011) ..............................................................................17

*Ga. Republican Party v. Sec. & Exch. Comm'n*,
  888 F.3d 1198 (11th Cir. 2018) ...................................................................................................3

*Glob. Pol'y Partners, LLC v. Yessin*,
  686 F. Supp. 2d 631 (E.D. Va. 2009) ..........................................................................................7

*Glob. Quest, LLC v. Horizon Yachts, Inc.*,
  849 F.3d 1022 (11th Cir. 2017) .................................................................................................16

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015)................................................................................................10, 11

*In re Google Inc. Gmail Litig.*,
  No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. 2014)..................................................8

*In re Google, Inc. Priv. Pol'y Litig.*,
  58 F. Supp. 3d 968 (N.D. Cal. 2014) .........................................................................................18

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................................................................11

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ...............................................................................................................18

*Houston v. Marod Supermarkets, Inc.*,
  733 F.3d 1323 (11th Cir. 2013) ...................................................................................................2

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .....................................................................................11

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)..............................15

*Johnson v. City of Atlanta*,
107 F.4th 1292 (11th Cir. 2024) ........................................................................................2, 6

*Khan v. Children's Nat'l Health Sys.*,
188 F. Supp. 3d 524 (D. Md. 2016) ........................................................................................4

*Kristensen v. Credit One Bank, N.A.*,
No. CV 14-7963 DMG, 2016 WL 11757832 (C.D. Cal. July 11, 2016)................................14

*Kurowski, et al. v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ......................................................................7, 16, 19

*Licea v. Am. Eagle Outfitters*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ................................................................................12

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................................17, 18

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ..............................................................................................15

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021)..............................................................................9, 13

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. 2016)..............................................10

*McEwan v. OSP Grp., L.P.*,
No. 14-CV-2823-BEN (WVG), 2015 WL 13374016 (S.D. Cal. July 2, 2015)......................15

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024)....................................................................................16

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020) ................................................................................................4

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) ................................................................................................17

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................................................................................................6

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d at 294–95 ...............................................................................................................19

v

*Nienaber v. Overlake Hosp. Med. Ctr.*,
    733 F. Supp. 3d 1072 (W.D. Wash. 2024) ............................................................16

*Okash v. Essentia Health*,
    No. CV 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ...............................17

*Oleary v. HCA Healthcare, Inc.*,
    No. 19-80647-CIV-ALTMAN, 2020 WL 597361 (S.D. Fla. Feb. 4, 2020) ..............3

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...................................................................5

*People v. Malotte*
    46 Cal.2d 59, 64, 67 n.1 (1956). ............................................................................12

*People v. Perez*,
    35 Cal.4th 1219 (2005) ..........................................................................................14

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ..................................................................................8

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019) ....................................................................19

*Provost v. Aptos, Inc.*,
    No. 17-02120, 2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ...................................3

*Ramos v. Delphi Behavioral Health Grp., LLC*,
    No. 21–11218, 2022 WL 1415856 (11th Cir. May 4, 2022) ....................................4

*Rattray v. City of Nat'l City*,
    51 F.3d 793 (9th Cir. 1994) ...................................................................................13

*Rodriguez v. FastMed Urgent Care, P.C.*,
    741 F. Supp. 3d 352 (E.D.N.C. 2024) .....................................................................8

*Rodriguez v. Google LLC*,
    No. 20-CV-04688-RS, 2025 WL 50425 (N.D. Cal. Jan. 7, 2025) ...........................5

*Romero v. Sec'y, U.S. Dep't of Homeland Sec.*,
    20 F.4th 1374 (11th Cir. 2021) ..............................................................................15

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) .................................................................15

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) .....................................................4, 7, 12, 18

*Snipes v. Wilkie*,
No. 18-cv-03259-TSH, 2019 WL 1283936 (N.D. Cal. 2019) ................................16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ..........................................................................................3, 4

*United States v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) ..................................................................................7

*Swarts v. Home Depot, Inc.*,
No. 23-CV-0995-JST, 2023 WL 5615453 (N.D. Cal. 2023)............................10, 12

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024),
*reconsideration denied*, No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D.
Ga. Dec. 10, 2024) ....................................................................................1, 6, 8

*TBG Ins. Servs. Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002) ....................................................................................6

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................................................................................................4

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ......................................................................12

*Williams v. What If Holdings, LLC, et al.*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. 2022)..........................9, 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ............................................................................10, 11

**Statutes**

18 U.S.C. § 2510 *et seq.*..............................................................................................2

18 U.S.C. §§ 2511(1)(a), (c) ......................................................................................7

18 U.S.C. §2511(2)(d) ................................................................................................8

Cal. Penal Code § 31....................................................................................................14

Cal. Penal Code § 502..................................................................................................2

Cal. Penal Code § 502(c)(2)......................................................................................15

Cal. Penal Code § 631................................................................................................2, 12

Cal. Penal Code § 631(a) ....................................................................................10, 11, 12, 13

Cal. Penal Code § 632 .................................................................................................................2

Cal. Penal Code § 632(c) .........................................................................................................13

Cal. Penal Code. § 637.2 ..........................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................................3

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 3

Fed. R. Civ. P. 12(b)(1) .......................................................................................................1, 2

Restatement (Second) of Torts § 8A, comment .....................................................................17

## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant PetMed Express, Inc. ("PetMed" or "Defendant"), by and through its undersigned counsel, respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Class Action Complaint (Dkt. 1) filed by Plaintiffs Kristin Cobbs, Lynne Kawaminami, and Loretta Schweinsburg ("Plaintiffs") for lack of standing and for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Complaint fails to allege sufficient facts to support the claims asserted, and dismissal is warranted.

## BACKGROUND

This case is one in a series of class action suits across the country concerning the use of ubiquitous advertising technology that most companies and government entities have on their public websites. As the Northern District of Georgia put it succinctly: "Cases like this have sprouted like weeds in recent years." *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024), *reconsideration denied,* No. 1:23-CV-5416-TWT, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024). But this tide of litigation has begun to recede, with courts now recognizing that "the weight of authority in . . . pixel tracking cases is now solidly in favor of [defendants'] argument[s]." *Id.* The present case provides no occasion to stray from this view.

PetMed is a Florida corporation operating www.1800petmeds.com, a licensed online pharmacy that dispenses veterinary medications. *See* Compl. ¶ 11. Plaintiffs, California residents, allege they accessed www.1800petmeds.com between September 2024 and February 2025 to purchase veterinary medications for their pets, although they fail to allege what—specifically— was purchased. *Id.* ¶¶ 7–9. During these transactions, Plaintiffs voluntarily provided information such as their names, phone numbers, email addresses, and billing addresses to complete their purchases. *Id.* They interacted with the website by browsing products, clicking buttons, and adding items to their carts, all standard activities on an e-commerce platform. *Id.* Plaintiffs allege that PetMed integrated third-party tracking tools, including Meta Pixel, Attentive Tag, and Zeta's LiveConnect Tag (the "Website Technologies") into its website, which captured data such as URLs, button clicks, and hashed email addresses. *Id.* ¶¶ 45–54, 94–100. Plaintiffs allege that these tools are common in the industry to facilitate analytics and targeted advertising. *Id.* ¶¶ 35–41.

Notably, PetMed's publicly-posted Privacy Policy notifies website users that it uses "tracking tools including cookies, web beacons or other online information-gathering tools that

1

collect information," that it "partner[s] with third-party advertising companies," and that it shares personal information "[w]ith third parties who . . . help us to administer our website, collect data for analysis purposes, conduct surveys, provide technical support, process payments, [and] provide marketing research and assistance (including email and mobile marketing) . . . ." Privacy Policy, https://www.1800petmeds.com/privacy.html (eff. Feb. 13, 2024) (attached hereto as Ex. A).[1] The website also features a "consent banner"[2] informing users that "[t]o opt-out of our making available to third parties information relating to cookies and similar technologies for advertising purposes, select 'Opt-Out.'" *See* https://www.1800petmeds.com/.

In light of the aforementioned allegations, Plaintiffs bring this putative class action alleging that PetMed violated federal and state privacy laws by integrating the Website Technologies into its website, which allegedly intercepted electronic communications containing veterinary and personally identifiable information (PII) without consent. The Complaint asserts five causes of action: (1) violation of the Wiretap Act (ECPA), 18 U.S.C. § 2510 *et seq.*; (2) violation of the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631; (3) violation of CIPA, Cal. Penal Code § 632; (4) violation of the California Comprehensive Computer Data Access and Fraud Act (CDAFA), Cal. Penal Code § 502; and, (5) Intrusion Upon Seclusion. For the reasons discussed below, each claim fails as a matter of law due to insufficient factual allegations, legal deficiencies, and failure to meet statutory requirements.

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on a facial attack to a plaintiff's standing challenges whether plaintiff "sufficiently alleged a basis of subject matter jurisdiction," applying the standards similar to those governing 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). On the other hand, when "a Rule 12(b)(1) motion takes the form of a factual attack, the movant challenge[s] the existence of

---

[1] Plaintiffs refer to and rely upon PetMed's Privacy Policy in their Complaint. *See, e.g.*, Compl. ¶ 64. As a result, this Court may consider the policies in ruling on PetMed's motion to dismiss. *See, e.g., Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("[A] court may properly consider a document . . . under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.").

[2] A consent banner is a pop-up or notification displayed on a website or application that informs users about the collection and processing of their personal data.

subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Oleary v. HCA Healthcare, Inc.*, No. 19-80647-CIV-ALTMAN, 2020 WL 597361, at *2 (S.D. Fla. Feb. 4, 2020) (cleaned up).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter" to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8. Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I.   Plaintiffs Lack Standing.

At the outset, Plaintiffs lack standing to bring their claims because they fail to allege an actual, concrete injury. The Complaint is largely silent as to how Plaintiffs were purportedly affected by the alleged disclosure of their data to the Website Technology providers.

To establish standing, a plaintiff "must put forth specific facts supported by evidence showing that: '(1) it has suffered an 'injury in fact' . . . (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1202 (11th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). To prove an "injury in fact" under the first requirement, a plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citation omitted). For an injury to be "concrete" it must "actually exist," as opposed to being merely "abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

Here, Plaintiffs have failed to sufficiently allege an injury in fact. Plaintiffs suggest only that they have suffered a loss of "valuable personal information." Compl. ¶ 152. But such allegations are entirely conclusory and have been rejected by courts around the country as insufficient to confer standing or establish damages. *See, e.g., Provost v. Aptos, Inc.*, No. 17-02120,

2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) ("The Court is not persuaded by the hypothetical diminution of value propounded by Plaintiff. Plaintiff has failed to allege with particularity any facts explaining how her personal identity information is less valuable than it was before . . . ."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533–34 (D. Md. 2016) (the alleged diminished value of PII did not establish standing when plaintiff failed to explain how the "information has diminished its value, . . . [or] assert that she would ever actually sell her own personal information"); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015) ("[C]ourts have found insufficient . . . generalized assertions of economic harm based solely on the alleged value of personal information . . . ."); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("Although . . . each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user."). These allegations are insufficient to confer standing on Plaintiffs.

Therefore, the only injury actually claimed by Plaintiffs is for a statutory violation of the ECPA, CIPA, and CDAFA. But it is well established that "a bare procedural violation, divorced from any concrete harm" does not qualify as an injury. *Spokeo, Inc.*, 578 U.S. at 341. In fact, the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo*, 578 U.S. at 341). Accordingly, not only are Plaintiffs' assertions of statutory violations incorrect, but they are insufficient—standing alone—to allege standing. *See, e.g.*, *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 921 (11th Cir. 2020) ("Because the plaintiff alleged only a statutory violation, and not a concrete injury, he has no standing.").

## II.     Plaintiffs and/or PetMed Consented to the Alleged Interceptions.

Even if Plaintiffs possessed standing to sue, their claims nonetheless fail because they have consented to the collection of their activity on PetMed's website. The ECPA is a one-party consent statute, whereas the CIPA and CDAFA require the consent of all parties. *See, e.g.*, *Ramos v. Delphi Behavioral Health Grp., LLC*, No. 21–11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) (citing 18 U.S.C. §2511(2)(d)) (explaining that, under the ECPA, "it is lawful for an individual to intercept a communication if he is a party to it"); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 995 (N.D. Cal. 2017) ("Plaintiffs cannot state a claim under the [CIPA] because that statute

imposes liability only for interception 'without the consent of all parties.'"); *Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2025 WL 50425, at *7–8 (N.D. Cal. Jan. 7, 2025) (citing Cal. Penal Code § 502(c)(2)) (explaining that the CDAFA imposes liability only where the access is "without permission").[3] Plaintiffs plainly consented to the alleged interceptions—through their choices to use PetMed's website despite PetMed's clear, public notice that the website works with third parties for data collection purposes, as well as by accepting Facebook's written policies when creating their accounts. In any case, PetMed itself also consented to the purported interceptions.

### A.    Plaintiffs consented to PetMed's use of the Website Technologies.

Plaintiffs consented to PetMed's use of the Website Technologies by accepting PetMed's Privacy Policy. Plaintiffs allege that they were never "put on notice of a terms of service or privacy policy." Compl. ¶¶ 7–9. Yet in no uncertain terms, PetMed's publicly-posted Privacy Policy notifies website users that it uses "tracking tools including cookies, web beacons or other online information-gathering tools that collect information," that it "partner[s] with third-party advertising companies," and that it shares personal information "[w]ith third parties who . . . help us to administer our website, collect data for analysis purposes, conduct surveys, provide technical support, process payments, [and] provide marketing research and assistance (including email and mobile marketing) . . . ." Privacy Policy, https://www.1800petmeds.com/privacy.html (eff. Feb. 13, 2024) (attached hereto as Ex. A). The website also features a "consent banner" informing users that "[t]o opt-out of our making available to third parties information relating to cookies and similar technologies for advertising purposes, select 'Opt-Out.'" *See* https://www.1800petmeds.com/.

Thus, PetMed disclosed the potential collection of data—through various technologies—related to a website user's activity on its website. A reasonable person browsing PetMed's website would be alerted to the Privacy Policy and the "consent banner," both of which are directly applicable to Plaintiffs' claims.

At any rate, regardless of PetMed's privacy policy, Plaintiffs consented to the alleged capture of data because "[a]ny reasonably intelligent person, 'savvy enough' to be using the

---

[3] The same is also true of Plaintiffs' intrusion upon seclusion claim. *See, e.g.*, *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("Effective consent negates an intrusion upon seclusion claim . . . Therefore, if the Plaintiffs effectively consented to Yelp's use of their address book data, they cannot maintain an intrusion upon seclusion claim.").

Internet," would be aware that to conduct an online search or click a webpage link requires their computer to send that query over the public internet to retrieve the webpage and that such transmissions "are received in a recorded format" by their very nature. *TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 452 n.8 (2002) (citing *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001)).

**B.      Plaintiffs consented to the alleged interception by accepting Meta's policies.**

At the very least, Plaintiffs consented to the alleged interceptions through their use of Facebook. Facebook users, like Plaintiffs, consent to the transmission and use of their data by Facebook when they accept Facebook's policies at the time they sign up for Facebook.[4] *See* Meta, *Terms of Service*, https://www.facebook.com/legal/terms (eff. Jan. 1, 2025). As Facebook's Terms of Service explain, Facebook "collect[s] and use[s] your personal data" pursuant to Facebook's "Privacy Policy," in order to provide Facebook's services. *See id.* Of course, users of Facebook may change their privacy choices about how their data is used at any time. *See id*. This policy also discloses that Facebook collects and receives information from third parties, such as PetMed. *See, e.g.*, Meta, *Privacy Policy*, https://www.facebook.com/privacy/policy/ (eff. Nov. 14, 2024) ("We collect and receive information from . . . third parties about a variety of your information and activities on and off our Products."). By continuing to use Facebook and accepting its policies, Plaintiffs therefore consented to the alleged disclosure of their website activities.

**C.      PetMed Was a Party to Any Communication and Consented to Any Purported Interception.**

In any case, not only have *Plaintiffs* consented to the alleged interceptions, Plaintiffs' claims also fail because *PetMed* was both a party to the communication and consented to the alleged interception. Courts in the Eleventh Circuit—and elsewhere—have recognized that "the weight of persuasive authority in similar pixel tracking cases supports [this] position." *Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (collecting cases); *see also, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274–75 (3d Cir. 2016) (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all

---

[4] Plaintiffs refer to and rely upon Facebook's policies in their Complaint. *See, e.g.*, Compl. ¶¶ 66–71. This Court may thus consider the policies in ruling on PetMed's motion to dismiss. *See, e.g.*, *Johnson*, 107 F.4th at 1300.

such communications"); *Kurowski, et al. v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("*Rush I*") ("Rush is therefore a party to those communications and cannot be liable . . . for its alleged interception of them, if such an interception even occurred."). PetMed, by deploying the Website Technologies on its website, has thus consented to any alleged interception.

To summarize, Plaintiffs consented to the alleged interceptions through their choices to use PetMed's website despite the Privacy Policy, as well as by accepting Facebook's written policies when creating their accounts. In any case, PetMed itself also consented to the alleged interceptions Accordingly, Plaintiff fails to state a claim under the ECPA, CIPA, and CDAFA, all of which preclude liability where consent is present. Regardless, and as explained below, Plaintiffs fail to state a claim under any of these statutes for additional reasons as well.

## III.    Count I: Violation of the ECPA (18 U.S.C. § 2510 *et seq.*).

Plaintiffs' claim under the ECPA fails because they do not allege an unauthorized interception, use, or disclosure of an electronic communication in violation of 18 U.S.C. sections 2511(1)(a), (c), or (d). Further, Plaintiffs' allegation that the crime or tort exception applies to these facts is unfounded. *See, e.g.*, Compl. ¶ 130.

### A.    No Interception While in Transit.

Plaintiffs allege that PetMed violated the ECPA by assisting the Website Technology providers in intercepting communications that PetMed was having with Plaintiffs. *See id.* ¶ 125. These allegations fail because "the plaintiffs allege that [defendant] received the communication, sent to them directly and specifically by the plaintiffs, and that it was Facebook that intercepted the communication via the pixel." *Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023). Put simply, PetMed cannot have "intercepted" the same transmission that it also received. *See, e.g.*, *id.*

Regardless, an interception for ECPA purposes must occur "during flight." *United States v. Steiger*, 318 F.3d 1039, 1048–49 (11th Cir. 2003); *see also, e.g.*, *Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) (explaining that the term "intercept" is given its "common meaning" under the ECPA, "which is perhaps best understood through a football analogy. In American football, a ball can only be intercepted when it is 'in flight'"). And courts generally recognize that tracking technologies like those at issue here do not intercept communications while they are in transit. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 951 ("Facebook's tracking does not establish that the [defendants] 'send' information to Facebook . . . More

accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens *independently*.") (emphasis added). Despite Plaintiffs' conclusory attempts to characterize this process as simultaneous through the use of words such as "contemporaneously," this is simply not how the Website Technologies operate. Instead, it is only *after* the response is received by the visitor's browser that the data is copied and separately transmitted to the third parties—in a second transmission.

**B.     The Crime or Tort Exception Does Not Apply.**

Section 2511(2)(d) provides that the party-consent exception will not apply only if a "communication is intercepted for the *purpose of committing any criminal or tortious act . . . .*" (emphasis added). Under section 2511(2)(d), "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022); *see also, e.g.*, *Piedmont Healthcare, Inc.*, 2024 WL 5284883, at *4 (quoting *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024)) ("[I]t is well established that' the crime-tort exception only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself."); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) ("Congress chose the word 'purpose' for a reason. Therefore, the offender must have as her objective a tortious or criminal result.").

Perhaps acknowledging that consent bars their claim, Plaintiffs attempt to plead around this deficiency by alleging that the crime or fraud exception applies. *See* Compl. ¶ 130. These allegations are plainly deficient. Although Plaintiffs contend that PetMed's alleged interceptions violate various laws, they do not allege that the intended *use* or *purpose* of those interceptions was criminal or tortious. *See, e.g.*, *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[T]he commission of a tortious act [does] not prove a tortious purpose."). As Plaintiffs concede, PetMed's intent was merely for its own "financial benefit." Compl. ¶ 151; *see also, e.g.*, *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. 2014) (quoting *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518) (explaining that the crime or tort exception "cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'"); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363–64 (E.D.N.C. 2024) (alleging defendant

8

intercepted communications "for commercial use or gain" does not equate to intercepting "for the purpose of committing any criminal or tortious act"); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) ("Plaintiffs do not allege that [commercial advantage] constitutes independently illegal or actionable conduct" sufficient to apply exception). Plaintiffs thus cannot establish that the crime or fraud exception applies to their claims, and their ECPA claim fails accordingly.

IV.     **Counts II and III: Violations of CIPA (Cal. Penal Code §§ 631, 632).**

        Counts II and III allege violations of CIPA sections 631 and 632 (California's wiretapping and eavesdropping statutes, respectively), claiming that PetMed aided third parties in intercepting confidential communications without consent. Even if this Court were to find that Plaintiffs' did not consent to the alleged interceptions (*see supra* Section II), Plaintiffs nonetheless fail to plead claims under sections 631 and 632. The California Supreme Court has interpreted section 631(a) of the CIPA as making unlawful "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping [of any telegraph or telephone], [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Williams v. What If Holdings, LLC, et al.*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. 2022) (internal quotations and citation omitted).

        Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Cal. Penal Code § 631(a)) (internal quotations removed). It is axiomatic that there can only be a violation under Clause Four if there is a violation of Clauses One, Two, or Three. *See id.* at 1137.

        Plaintiffs allege that PetMed aided and abetted the Website Technology providers' purported violations of Clauses 1-3 by installing the Website Technologies on its website. Plaintiffs' claim is thus contingent on a finding that the third-party providers violated one of these first three clauses. As discussed more fully below, Plaintiffs' Complaint fails to allege facts sufficient to plausibly conclude that the providers violated any of these clauses.

### A.      Clause One Does Not Apply to Internet Communications.

The first clause of section 631(a) provides that wiretapping is only prohibited when it is conducted by means of any "machine, instrument, or contrivance, or in any other manner." The Website Technologies do not constitute any of these devices.

"[B]y its plain terms, the statute prohibits unauthorized connection with transmissions related to 'telegraph or telephone' technologies." *Swarts v. Home Depot, Inc.*, No. 23-CV-0995-JST, 2023 WL 5615453, at *5 (N.D. Cal. 2023). Thus, "[c]ourts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet"—as Plaintiffs allege here. *Id.* at *6; *see also Williams*, 2022 WL 17869275, at *2 (holding that "the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet"); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. 2016) (affirming interpretation of the first clause to solely telephonic communications).

### B.      Clause Two Cannot Apply Because Plaintiffs Do Not Allege the Interception of the Contents of a Communication in Transit.

To properly invoke Clause Two, Plaintiffs must plausibly allege that the Website Technology providers acquired the "contents" of a "communication" while "in transit." Cal. Penal Code § 631(a). The allegations of the Complaint do not meet these requisite elements.

#### 1.      The information allegedly disclosed was not "contents."

Not all data related to communications triggers CIPA—the interception at issue must involve the communication of "contents." Contents is distinguishable from "non-content" or "record information" about a communication, such as "extrinsic information used to route a communication," which is not actionable if collected. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015); *see also, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication."). Therefore, contents does not include "dialing, routing, addressing, or signaling" information, such as "addresses, phone numbers, and URLs"—at least "when they are performing such a function." *In re Google*, 806 F.3d at 137; *see also, e.g.*, *In re Zynga*, 750 F.3d at 1106 ("Customer record

information . . . includes the 'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer . . . '[C]ontents' does not include such record information.").

The information Plaintiffs allege was intercepted by third-parties is "non-content" or "record information." *See In re Google*, 806 F.3d at 135. A URL does not convey the "meaning" of the communication with the host server—it simply identifies the location of the requested webpage on the Internet. In *Zynga*, for example, the Ninth Circuit explained that a URL could disclose that a person viewed the page of a specific support group, yet the court still held that such URLs "function[] like an address," not "contents" of a communication. 750 F.3d at 1107. The same is true here, as the URLs potentially disclosed to third-parties are simply "record information" which are "generated in the course of the communication." *Id.* at 1106–07. The information allegedly disclosed to third-parties as a result of Plaintiffs "visit[ing] webpages and click[ing] on buttons" on PetMed's website, therefore, is not "contents" for CIPA purposes. *See* Compl. ¶¶ 7–9.

The same is true of any information regarding Plaintiffs' names, addresses, or contact information, as federal courts have specifically found that the identities of the parties to a communication and their addresses are not content. *See, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) ("[I]dentities of parties to a communication . . . is not 'content'" because such data "contains no information concerning the substance, purport, or meaning of [the] communication") (internal quotation marks omitted); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("Content" does not include the "name, address and subscriber information or identity of a subscriber or customer"). Therefore, Plaintiffs fail to allege the interception of "contents."

### 2. The alleged interception did not occur while the communications were in transit.

Plaintiffs suggest that the alleged interception of information occurs "contemporaneously" with Plaintiffs sending and receiving communications on PetMed's website. *See, e.g.*, Compl. ¶ 125; *see also id.* ¶ 43 ("Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's website—Defendant's own code, and Meta's embedded code.").

In *People v. Malotte*, the California Supreme Court interpreted the statutory text now contained in Penal Code section 631(a) and held that no wiretap had taken place despite a device having recorded each statement in a phone conversation immediately upon its arrival at a handset.

46 Cal.2d 59, 64, 67 n.1 (1956). The Court held that the interception requirement was not met by "obtaining . . . what is [ ] sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver." *Id.* (internal quotations omitted); *see also Bunnell v. MPAA*, 567 F. Supp. 2d 1148, 1153–54 (C.D. Cal. 2007) (forwarding duplicate copies of communications, even within milliseconds, was not an interception in transit).

Plaintiffs' allegations regarding contemporaneity are simply too conclusory to adequately state a claim. *See, e.g.*, *Swarts*, 2023 WL 5615453, at \*8 ("[C]onclusory allegations" regarding contemporaneity "fail to support a claim under § 631(a)."); *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"). Put simply, it does not suffice for Plaintiffs to merely restate the statutory language. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (dismissing section 631 claim and holding that a bare statement that interception occurred "in real time" did "little more than restate the pleading requirement of real time interception . . . .").

Regardless, and despite Plaintiffs' conclusory attempts to characterize this process as simultaneous, this is simply not how the Website Technologies operate. Instead, it is only *after* the response is received by the visitor's browser that the data is copied and separately transmitted to the third-party technology companies—in a second transmission. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 951 ("Facebook's tracking does not establish that the [defendants] 'send' information to Facebook . . . More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens *independently*.") (emphasis added); *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at \*5 (Cal. Super. Ct. 2023) ("[T]he duplication and sending of Facebook's secret code happens *after* the request reaches its destination (John Muir's server)," and thus the "Plaintiffs have not alleged Defendant's 'interception' while 'in transit'") (emphasis added). Therefore, the alleged interceptions do not occur while the communications are "in transit," as required by the statute.

3.      **Plaintiffs Cannot Adequately Plead a Violation of Section 631(a) Clause Three Because Plaintiffs Fail to Allege a Claim Under Clause One or Clause Two.**

The third clause of section 631(a) restricts any person from using, or attempting to use, "in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . ." Cal. Penal Code § 631(a). Because a violation of Clause Three is necessarily predicated on a violation of Clause One or Clause Two—which Plaintiffs have not sufficiently alleged here—any claim for violation of Clause Three necessarily fails. *See, e.g.*, *Amsteel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("Because the court concludes that [plaintiff] has failed to state a claim under either clause 1 or 2, his claim that [defendant] violated § 631(a)'s third clause fails as a matter of law.").

Therefore, given that Plaintiffs fail to allege a violation of Clauses One, Two, or Three by the Website Technology providers, PetMed cannot be held liable for aiding and abetting under Clause Four. *See* Cal. Penal Code § 631(a).

C.      **Plaintiffs do not allege a violation of section 632.**

"Section 632 provides that '(a) every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records such confidential communication . . . shall be punished by fine . . . or by imprisonment.'" *Rattray v. City of Nat'l City*, 51 F.3d 793, 797 (9th Cir. 1994) (quoting Cal. Penal Code § 632). Plaintiffs' claim under section 632 fails because they do not sufficiently allege a confidential communication.

1.      **No confidential communication.**

A "confidential communication" is one where the parties have a reasonable expectation that it is not being overheard or recorded. *See* Cal. Penal Code § 632(c). "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *see also, e.g.*, *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (dismissing section 632 claim because emails are "Internet-based communications" and thus "not 'confidential' within the meaning of section 632"). Here, Plaintiffs allege an "internet-based

13

communication." Plaintiffs, therefore, have failed to plausibly plead that their activity on PetMed's website involved a "confidential communication."

**D.      No Requisite Intent.**

As discussed, Plaintiffs' theories of liability under both CIPA section 631 and section 632 are premised on aiding and abetting. Notwithstanding the above-discussed deficiencies, Plaintiffs' aiding and abetting theory fails because the Complaint does not allege, nor support even the inference, that PetMed had the requisite intent to aid and abet any such violation.

Aiding and abetting liability for a civil claim under CIPA is available, if at all, under California Penal Code section 31. *See. e.g.*, *Kristensen v. Credit One Bank, N.A.*, No. CV 14-7963 DMG (AJWx), 2016 WL 11757832, at **6–7 & n.12 (C.D. Cal. July 11, 2016). "Proof of aiding and abetting . . . requires demonstrating the aider and abettor's *mens rea* –knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and the aider and abettor's [] *actus reus* – conduct by the aider and abettor that in fact assists the achievement of the crime." *People v. Perez*, 35 Cal.4th 1219, 1225 (2005).

Here, the Complaint says nothing with respect to PetMed's *mens rea*. In fact, the Complaint does little more than explain that the Website Technologies were offered to PetMed to help it analyze and track user interactions on its website. *See, e.g.*, Compl. ¶¶ 41, 42. Plaintiffs offer nothing in the way of allegations that PetMed would have been aware of, much less have intended to assist, any alleged violation of the CIPA by the third-party technology providers. *See, e.g.*, *Kristensen*, 2016 WL 11757832, at **6–7 & n.12 (dismissing a claim of aiding and abetting under CIPA because there was no evidence the alleged defendant "assisted in the intentional recordation of [the principal actor]'s conversation with Plaintiff"). In any case, PetMed's Privacy Policy, which plainly discloses both the fact and purpose of its data collection practices, is entirely inconsistent with any sort of criminal or tortious intent. *See* Privacy Policy, https://www.1800petmeds.com/privacy.html (eff. Feb. 13, 2024). Without such allegations of intent, Plaintiffs' CIPA claims fail accordingly.

**E.      The rule of lenity applies to resolve any ambiguity in PetMed's favor.**

Plaintiffs seek statutory damages of tens or hundreds of millions of dollars. *See* Compl. ¶ 114 (alleging "many thousands" of class members); Cal. Penal Code. § 637.2 (setting statutory damages of $5,000 per violation). Such damages cannot possibly represent a legislative judgment regarding average actual damages.

Thus, if the Court finds CIPA is ambiguous regarding the terms "contents" or "in transit," or "communication," "confidential," "device," or "intent," then the rule of lenity applies in PetMed's favor and requires dismissal given that CIPA is a criminal statute with civil application. *See, e.g.*, *McEwan v. OSP Grp., L.P.*, No. 14-CV-2823-BEN (WVG), 2015 WL 13374016, at *4 (S.D. Cal. July 2, 2015) (dismissing civil complaint by "[a]pplying the rule of lenity to [CIPA] section 632" to construe "telephone" in a way "most favorable to [defendant]"); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (disposing civil claim and finding any "ambiguity" in a criminal statute "should be resolved in favor of lenity" where the case was brought under the statute in "a civil context"); *Romero v. Sec'y, U.S. Dep't of Homeland Sec.*, 20 F.4th 1374, 1383 (11th Cir. 2021) ("The rule [of lenity] mandates that penal statutes be construed strictly . . . Accordingly, when Congress speaks in unclear or indefinite terms about what conduct is criminal, such that the governing statute is genuinely ambiguous, we construe that statute in favor of criminal defendants.").

## V.      Count IV: Violation of CDAFA (Cal. Penal Code § 502).

Plaintiff's CDAFA claim alleges that PetMed knowingly accessed and used Plaintiffs' data without permission. *See* Cal. Penal Code § 502(c)(2). To state a claim under the CDAFA, Plaintiffs must allege unauthorized access to a computer system and resulting damage or loss. The Complaint fails on both elements.

First, Plaintiffs *voluntarily* provided their data (*e.g.*, names, addresses) during transactions on PetMed's website (Compl. ¶¶ 7–9), negating any claim of unauthorized access. *See, e.g.*, *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) ("On Plaintiffs' own allegations, the iOS and third party apps—which contain the alleged 'surreptitious code'—were all installed or updated *voluntarily* by Plaintiffs.").

Second, the Complaint does not allege a cognizable loss, such as economic harm or data corruption, as required by section 502(e)(1). Allegations of unjust enrichment or loss of "valuable personal information" (Compl. ¶¶ 151–152) are speculative and insufficient. *See, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("Plaintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data, as discussed above, is 'damage or loss' within the meaning of the CDAFA."); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (explaining that "even an argument that Plaintiffs experienced a diminution of the value of their

private and personal information" would be insufficient under the CDAFA). Count IV should therefore be dismissed.

**VI.    Count V: Intrusion Upon Seclusion.**

Finally, Plaintiffs assert a claim for intrusion upon seclusion, although it is unclear whether Plaintiffs assert this claim under California or Florida law. Given that this claim deals with state substantive law, it is appropriate for this Court to apply Florida law. *See, e.g.*, *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law."). Under either state's law, however, Plaintiffs fail to plead a claim.

**A.    Plaintiff fails to state a claim under California law.**

"To state a claim for intrusion upon seclusion under California common law, a plaintiff must plead that: (1) a defendant 'intentionally intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a reasonable person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). Plaintiffs fail to plead any of the required elements.

**1.    No intentional intrusion occurred.**

Where a party voluntarily discloses information, an intentional intrusion cannot occur. *See, e.g.*, *Snipes v. Wilkie*, No. 18-cv-03259-TSH, 2019 WL 1283936, at *7 (N.D. Cal. 2019) (dismissing intrusion upon seclusion claim where the plaintiff voluntarily disclosed the information at issue). Plaintiffs assert PetMed's alleged disclosure of their information was an intrusion, but that cannot be the case where Plaintiffs themselves voluntarily disclosed any information to PetMed. In other words, PetMed did not intrude—physically or otherwise—into Plaintiffs' privacy to obtain any information. *See, e.g.*, *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 846 (S.D. Cal. 2024) (dismissing intrusion upon seclusion claim and "declin[ing] to find a privacy interest in Plaintiff's interactions with Defendants' own website when they choose to use that website"); *Rush I*, 659 F. Supp. 3d at 943 (holding that "the core" of intrusion upon seclusion is the "offensive prying into the private domain of another," not "publication," and thus "disclosures of private personal information do not support a claim of unauthorized intrusion"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024) (finding

16

no intrusion "[b]ecause Plaintiff voluntarily shared her information with Defendant"); *Okash*, 2024 WL 1285779, at *7 ("Courts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta. Intrusion requires an 'affirmative act by the defendant in obtaining the information' which cannot exist when the information is provided by the plaintiff, even if a defendant later shares the information.").

Nor have Plaintiffs alleged an intent by PetMed to commit such an intrusion. An intrusion upon seclusion claim "require[s] intent on the part of the tortfeasor." *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016). Tortious intent means "the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead." Restatement (Second) of Torts § 8A, comment b (1965); *see also Folgelstrom v. Lamps Plus, Inc.*, 125 Cal. Rptr. 3d 260, 265 (Cal. Ct. App. 2011) ("California has adopted the Restatement Second of Torts formulation of the intrusion-into-private-matters tort."). Plaintiffs fail to plausibly plead PetMed's intent to intrude in a highly offensive manner into any matter in which Plaintiffs had a reasonable expectation of privacy. As far as PetMed is concerned, any users of its website had either consented to both PetMed's Privacy Policy and Facebook's data tracking and collection practices, or opted out. Plaintiffs fail to suggest any contrary intent.

### 2.    No reasonable expectation of privacy.

Courts have consistently held that there is no reasonable expectation of privacy in many standard internet transmissions. *See, e.g.*, *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (Yahoo chat); *Campbell*, 77 F. Supp. 3d at 849 (Facebook private messaging feature). Plaintiffs list no support, no facts, and no further contentions as to why an expectation of privacy in browsing a public website is reasonable. *See, e.g.*, *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (dismissing intrusion claim because the capturing of plaintiff's "personal details," "browsing history," and "IP address . . . is insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016–17, 1026 (N.D. Cal. 2012) (dismissing intrusion claim, because there was no "'serious invasion' of a privacy interest" in a LinkedIn user's "browsing history" and "LinkedIn ID"). For the same reasons, this data is not subject to a reasonable expectation of privacy.

In any case, as noted *supra*, there can be no reasonable expectation of privacy given Plaintiffs' consent to both PetMed's and Facebook's data collection practices. *See* Privacy Policy, https://www.1800petmeds.com/privacy.html (eff. Feb. 13, 2024); Meta, *Terms of Service*,

https://www.facebook.com/legal/terms (eff. Jan. 1, 2025); *see also, e.g.*, *Smith*, 262 F. Supp. 3d at 955–56 (dismissing intrusion claim, finding no expectation of privacy given plaintiff's consent).

**3.** **Any alleged intrusion was not highly offensive.**

An intrusion upon seclusion claim requires that any intrusion be "highly offensive to a reasonable person." *B.K.*, 2024 WL 878100, at *6. When determining whether an intrusion is "highly offensive," courts consider "the degree and setting of the intrusion," as well as "the intruder's motives and objectives." *Hernandez*, 47 Cal. 4th at 287. Other than conclusively stating that "Defendant's actions constitute a serious invasion of privacy" (Compl. ¶ 160) and that such intrusion "constitutes an egregious breach of the social norms that is highly offensive" (Compl. ¶ 161), Plaintiffs fail to allege any facts suggesting any purported intrusion was "highly offensive."

Regardless, courts have consistently held that disclosure of the type of information at issue in this case is not highly offensive. *See, e.g.*, *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 987-88 (N.D. Cal. 2014) (finding intrusion regarding a web user's "identifying information, browsing habits, search queries" not highly offensive, because there is "a high bar for the requisite intrusion that is highly offensive to a reasonable person"); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (*Cousin I*) (dismissing intrusion claim because intrusion into "a user's browsing history does not plausibly reach the level of 'highly offensive' conduct"); *Esparza v. Gen Digital Inc.*, No. CV 23-8223-KK-AGRX, 2024 WL 655986, at *5–6 (C.D. Cal. Jan. 16, 2024) (dismissing intrusion claim for failure to adequately allege defendant's acts were highly offensive).

And finally, Plaintiff cannot point to any illegitimate motives connected to the alleged disclosures. Courts have consistently found that monitoring internet use for "legitimate business reasons," as opposed to "socially repugnant or unprotected reasons" like "harassment, blackmail, or prurient curiosity," is not highly offensive. *Hernandez*, 47 Cal. 4th at 297–98. For the same reasons, placing internet "cookies" on—and sharing web-browsing data from—publicly-accessible webpages is not highly offensive. *See, e.g.*, *Low*, 900 F. Supp. 2d at 1025 (disclosure of users' browsing history URLs and unique ID to third party was not highly offensive); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d at 988 (disclosure of user's personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third party was not highly offensive). Therefore, Plaintiffs have failed to plead a claim for intrusion upon seclusion under California law.

18

### B.   Plaintiff fails to state a claim under Florida law.

To state a valid intrusion upon seclusion claim under Florida law, a plaintiff must allege three elements: (1) "a private quarter"; (2) "some physical or electronic intrusion into that private quarter"; and, (3) "the intrusion must be highly offensive to a reasonable person." *Celestine v. Capital One*, No. 17-20237-CIV, 2017 WL 2838185, at *3 (S.D. Fla. June 30, 2017).

First, intrusion upon seclusion claims fail where, as here, the conduct complained of is a disclosure of allegedly private communications, rather than an intrusion into them. *See. e.g.*, *Kurowski*, 2023 WL 2349606, at *9 (finding intrusion upon seclusion claim related to pixel on health care website failed to state a claim because the hospital defendant was a party to plaintiff's communication and no claim for intrusion upon seclusion lies for "voluntary communications with defendant that were allegedly disclosed").

Second, PetMed's use of the Meta Pixel, Attentive, and Zeta on its website is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Celestine*, 2017 WL 2838185, at *4. Indeed, as the Third Circuit has explained in addressing internet advertising technology, "the use of cookies for benign commercial purposes has become so widely accepted as part of Internet commerce that it cannot possibly be considered 'highly offensive'"—indeed, "courts have long understood that tracking cookies can serve legitimate commercial purposes." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 294–95 (holding that defendants' decision to use cookies was not "sufficiently offensive, standing alone, to survive a motion to dismiss"); *see also, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122–23 (W.D. Pa. 2019) (alleged "act of collecting [a plaintiff's] keystrokes, mouse clicks, and [personal information] is simply not the type of highly offensive act to which liability can attach"). And, ultimately, it strains credulity to suggest this conduct is "highly offensive" in light of Plaintiffs' consent to both PetMed's and Facebook's data collection practices. Because Plaintiffs have failed to state any of the elements under Florida law, the intrusion upon seclusion claim should be dismissed.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant PetMed Express, Inc. respectfully requests that this Court dismiss the Complaint in its entirety with prejudice for lack of standing and failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and grant such other relief as the Court deems just and proper.

Dated: June 20, 2025

Respectfully Submitted,

/s/ Ara K. Ayvazian
Jennifer A. McLoone (FL Bar No.: 29234)
E-Mail: *jmloone@shb.com*
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 South Biscayne Blvd.
Miami, FL 33131
Tel: (305) 358-5171

Ara K. Ayvazian (FL Bar No.: 1004407)
E-Mail: *aayvazian@shb.com*
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa St., Suite 2900
Tampa, Florida 33602
Tel: (813) 202-7100

***Counsel for PetMed Express, Inc.***