**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:25-cv-80458-RLR**

KRISTIN COBBS, LYNN KAWAMINAMI,
AND LORETTA SCHWEINSBURG,
individually and on behalf of all others similarly
situated,

      *Plaintiffs,*

vs.

PETMED EXPRESS, INC.,

      *Defendant.*

<u>**DEFENDANT PETMED EXPRESS, INC.'S**</u>
<u>**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION**</u>
<u>**COMPLAINT**</u>

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

BACKGROUND .................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 3

I.     Plaintiffs Lack Standing ........................................................................................... 3

II.    Plaintiffs' Statutory Claims Fail. ............................................................................. 6

    A.   Count I: Violation of the ECPA (18 U.S.C. § 2510 *et seq.*). ................................ 6

        1.   No Interception While in Transit Occurred. .................................................. 6

        2.   PetMed Was a Party to Any Communication. .............................................. 7

        3.   The Crime or Tort Exception Does Not Apply............................................. 7

    B.   Counts II and III: Violations of CIPA (Cal. Penal Code §§ 631, 632). ................. 8

        1.   Clause One Does Not Apply to Internet Communications......................... 9

        2.   Clause Two Cannot Apply Because Plaintiffs Do Not Allege the Interception of the Contents of a Communication in Transit. .................. 9

            a)   The information allegedly disclosed was not "contents.".............. 9

            b)   The alleged interception did not occur while the......................... 11

            communications were in transit. ................................................. 11

        3.   Plaintiffs Cannot Adequately Plead a Violation of Section 631(a) Clause Three Because Plaintiffs Fail to Allege a Claim Under Clause One or Clause Two. ............................................................................................................. 12

        4.   Plaintiffs Do Not Allege a Violation of Section 632. ............................... 12

            a)   No confidential communication................................................... 12

            b)   No requisite intent....................................................................... 13

        5.   Plaintiff and PetMed Consented to the Alleged Interceptions................. 14

            a)   Plaintiffs consented to PetMed's use of the Website................... 14

            Technologies. ............................................................................... 14

            b)   Plaintiffs consented to the alleged interception by accepting Meta's policies. ....................................................................................... 15

        6.   The rule of lenity applies to resolve any ambiguity in PetMed's favor.... 16

    C.   Count IV: Violation of the CDAFA (Cal. Penal Code § 502). ............................. 16

    D.   Count V: Intrusion Upon Seclusion...................................................................... 17

            a)   No intrusion into a private quarter or reasonable expectation of privacy.......................................................................................... 18

            b)   No intentional intrusion. .............................................................. 18

            c)   Any alleged intrusion was not highly offensive. ......................... 19

CONCLUSION................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
    380 F. Supp. 3d 1243 (M.D. Fla. 2019) ................................................................................4

*Allen v. Novant Health, Inc.*,
    2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .......................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................3

*B.K. v. Eisenhower Med. Ctr.*,
    721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...............................................................................19

*Banga v. Equifax Info. Servs. LLC*,
    2015 WL 3799546 (N.D. Cal. June 18, 2015) .....................................................................19

*Barbour v. John Muir Health*,
    No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. 2023) ...................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................3

*Bradley v. City of St. Cloud*,
    2013 WL 3270403 (M.D. Fla. June 26, 2013) .....................................................................18

*Bunnell v. MPAA*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2007) ...............................................................................11

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) .............................................................................13, 18

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...............................................................................19

*Celestine v. Capital One*,
    No. 17-20237-CIV, 2017 WL 2838185 (S.D. Fla. June 30, 2017) ............................17, 19, 20

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ................................................................................17

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023) ...............................................................................20

*In re DoubleClick Inc. Priv. Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) .......................................................................8

*Esparza v. Kohl's, Inc.*,
   723 F. Supp. 3d 934 (S.D. Cal. 2024) ....................................................................18

*Everhart v. Colonial Pipeline Co.*,
   2022 WL 3699967 (N.D. Ga. July 22, 2022) ...........................................................4

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................................................................4

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) .................................................................................18

*Washington v. Flixbus, Inc.*,
   2025 WL 1592961 (S.D. Cal. June 5, 2025) ..........................................................14

*Ga. Republican Party v. Sec. & Exch. Comm'n*,
   888 F.3d 1198 (11th Cir. 2018) ..............................................................................3

*Glob. Pol'y Partners, LLC v. Yessin*,
   686 F. Supp. 2d 631 (E.D. Va. 2009) .....................................................................6

*Glob. Quest, LLC v. Horizon Yachts, Inc.*,
   849 F.3d 1022 (11th Cir. 2017) ............................................................................17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) ..................................................................................10

*In re Google Inc. Gmail Litig.*,
   2014 WL 1102660 (N.D. Cal. 2014) .......................................................................8

*In re Google, Inc. Priv. Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................................................................20

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................10

*Hamilton Grp. Funding, Inc. v. Basel*,
   311 F. Supp. 3d 1307 (S.D. Fla. 2018) ...................................................................6

*Harrill v. Emanuel Med. Ctr.*,
   2025 WL 1635428 (E.D. Cal. June 9, 2025) .........................................................11

*Herec v. AT&T Corp.*,
   2008 WL 11409061 (N.D. Ga. Aug. 12, 2008) ......................................................19

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272, 211 P.3d 1063 (2009) ............................................................................19, 20

*Houston v. Marod Supermarkets, Inc.*,
    733 F.3d 1323 (11th Cir. 2013) ............................................................................................3

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..............................................................................10

*In re iPhone Application Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .............................16

*Johnson v. City of Atl.*,
    107 F.4th 1292 (11th Cir. 2024) ......................................................................................2, 15

*Kristensen v. Credit One Bank, N.A.*,
    2016 WL 11757832 (C.D. Cal. July 11, 2016) ....................................................................13

*Kurowski, et al. v. Rush Sys. for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023) ...................................................................................7

*Lakes v. Ubisoft, Inc.*,
    2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .......................................................................14

*Licea v. Am. Eagle Outfitters*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) ..............................................................................11

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..............................................................................18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................................4

*LVRC Holdings LLC v. Brekka*,
    581 F.3d 1127 (9th Cir. 2009) ............................................................................................16

*People v. Malotte*,
    46 Cal.2d 59 (1956) ............................................................................................................11

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021)...........................................................................9, 12

*McEwan v. OSP Grp., L.P.*,
    2015 WL 13374016 (S.D. Cal. July 2, 2015) ......................................................................16

*Muransky v. Godiva Chocolatier, Inc.*,
    979 F.3d 917 (11th Cir. 2020) ..............................................................................................5

*People v. Nakai*,
    183 Cal. App. 4th 499 (2010) ............................................................................................18

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016)..........................................................................................7, 20

*Okash v. Essentia Health*,
    2024 WL 1285779 (D. Minn. Mar. 26, 2024) ..................................................................19

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...........................................................................19

*People v. Perez*,
    35 Cal.4th 1219 (2005) ....................................................................................................13

*Pet Supermarket, Inc. v. Eldridge*,
    360 So. 3d 1201 (Fla. 3d DCA 2023) ..............................................................................18

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ............................................................................................7

*Popa v. Harriet Carter Gifts, Inc.*,
    426 F. Supp. 3d 108 (W.D. Pa. 2019)..............................................................................20

*Popa v. Harriet Carter Gifts, Inc.*,
    772 F. Supp. 3d 592 (W.D. Pa. 2025)..............................................................................15

*Provost v. Aptos, Inc.*,
    2018 WL 1465766 (N.D. Ga. Mar. 12, 2018) ...................................................................4

*Ramos v. Delphi Behavioral Health Grp., LLC*,
    2022 WL 1415856 (11th Cir. May 4, 2022) ......................................................................7

*Rattray v. City of Nat'l City*,
    51 F.3d 793 (9th Cir. 1994) .............................................................................................12

*Rodriguez v. FastMed Urgent Care, P.C.*,
    741 F. Supp. 3d 352 (E.D.N.C. 2024)................................................................................8

*Rodriguez v. Google LLC*,
    2025 WL 50425 (N.D. Cal. Jan. 7, 2025) ........................................................................17

*Romero v. Sec'y, U.S. Dep't of Homeland Sec.*,
    20 F.4th 1374 (11th Cir. 2021) ........................................................................................16

*Shah v. Cap. One Fin. Corp.*,
    768 F. Supp. 3d 1033 (N.D. Cal. 2025) ...........................................................................17

*Smith v. Facebook, Inc.*,
  262 F. Supp. 3d 943 (N.D. Cal. 2017) .............................................................6, 14

*Snipes v. Wilkie*,
  2019 WL 1283936 (N.D. Cal. 2019) ...................................................................18

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)............................................................................................4, 5

*United States v. Steiger*,
  318 F.3d 1039 (11th Cir. 2003) ..............................................................................6

*Swarts v. Home Depot, Inc.*,
  2023 WL 5615453 (N.D. Cal. 2023) ......................................................................9

*T.D. v. Piedmont Healthcare, Inc.*,
  2024 WL 3972984 (N.D. Ga. Aug. 28, 2024), *reconsideration denied,* 2024
  WL 5284883 (N.D. Ga. Dec. 10, 2024)..................................................1, 7, 8, 19

*TBG Ins. Servs. Corp. v. Super. Ct.*,
  96 Cal. App. 4th 443 (2002) ..................................................................................15

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021).................................................................................................5

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023) ..................................................................12

*W.W. v. Orlando Health, Inc.*,
  2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ..........................................................18

*Watts v. City of Hollywood*,
  146 F. Supp. 3d 1254 (S.D. Fla. 2015) ............................................................18, 20

*Williams v. What If Holdings, LLC, et al.*,
  2022 WL 17869275 (N.D. Cal. 2022) ..................................................................8, 9

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ...............................................................................10

**Statutes**

18 U.S.C. § 2510 *et seq.*..................................................................................................6

18 U.S.C. sections 2511(1)(a), (c) ..................................................................................6

18 U.S.C. §2511(2)(d) ....................................................................................................7

Cal. Code Regs. Tit. 16, § 1764......................................................................................5

Cal. Penal Code § 31.................................................................................................................13

Cal. Penal Code § 502(c)(2)......................................................................................................16

Cal. Penal Code § 631(a).......................................................................................................9, 12

Cal. Penal Code § 632(c)...........................................................................................................12

Cal. Penal Code § 637.2............................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 8..........................................................................................................................3

## **MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendant PetMed Express, Inc. ("PetMed"), by and through its undersigned counsel, respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the First Amended Class Action Complaint (Dkt. 21) filed by Plaintiffs Kristin Cobbs, Lynne Kawaminami, and Loretta Schweinsburg ("Plaintiffs") for lack of standing and for failure to state a claim upon which relief can be granted.

Plaintiffs' First Amended Complaint fails to cure the deficiencies identified in PetMed's Motion to Dismiss the original Complaint (Dkt. 20). At the outset, Plaintiffs still do not allege a cognizable injury sufficient to establish standing, as they have not adequately alleged any loss in value of their personal information as a result of PetMed's use of advertising technology, including third-party tracking tools, which shares with third parties certain information about a user's activity on a website. Moreover, Plaintiffs consented to the alleged interceptions of information by choosing to use PetMed's website despite its clear, public disclosures regarding third-party data collection, and by accepting Meta's written policies when creating their accounts. As discussed further below, the First Amended Complaint fails to allege sufficient facts to support any of the asserted claims. Accordingly, it should be dismissed.

## **BACKGROUND**

This case is one in a series of class action suits across the country concerning the use of ubiquitous advertising technology that most companies and government entities have on their public websites. As the Northern District of Georgia put it succinctly: "Cases like this have sprouted like weeds in recent years." *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024), *reconsideration denied,* 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024). But this tide of litigation has begun to recede, with courts now recognizing that "the weight of authority in . . . pixel tracking cases is now solidly in favor of [defendants'] argument[s]." *Id.* The present case provides no occasion to stray from this view.

PetMed is a Florida corporation operating www.1800petmeds.com, a licensed online pharmacy that dispenses veterinary medications. *See* First Am. Compl. ¶ 11. Plaintiffs, California residents, allege they accessed www.1800petmeds.com between September 2024 and February 2025 to purchase veterinary medications for their pets, although they fail to allege what—specifically—was purchased, let alone whether any purchase information was disclosed. *Id.* ¶¶ 7–9. During these transactions, Plaintiffs voluntarily provided information such as their names, phone

numbers, email addresses, and billing addresses to complete their purchases. *Id.* They interacted with the website by browsing products, clicking buttons, and adding items to their carts—all standard activities on an e-commerce platform. *Id.* Plaintiffs allege that PetMed integrated third-party tracking tools, including Meta Pixel, Attentive Tag, and Zeta's LiveConnect Tag (the "Website Technologies") into its website, which captured data such as URLs, button clicks, and hashed email addresses. *Id.* ¶¶ 45–64, 87–107. Plaintiffs allege these tools are common in the industry to facilitate analytics and advertising. *Id.* ¶¶ 34–44.

Notably, PetMed's publicly posted Privacy Policy notifies website users that it uses "tracking tools including cookies, web beacons or other online information-gathering tools that collect information," that it "partner[s] with third-party advertising companies," and that it shares personal information "[w]ith third parties who . . . help us to administer our website, collect data for analysis purposes, conduct surveys, provide technical support, process payments, [and] provide marketing research and assistance (including email and mobile marketing) . . . ." Privacy Policy, https://www.1800petmeds.com/privacy.html (eff. Feb. 13, 2024) (attached hereto as **Ex. A**).[1] The website also features a "consent banner"[2] informing users that "[t]o opt-out of our making available to third parties information relating to cookies and similar technologies for advertising purposes, select 'Opt-Out.'" *See* https://www.1800petmeds.com/.

In light of the aforementioned allegations, Plaintiffs bring this putative class action asserting that PetMed violated federal and state privacy laws by integrating the Website Technologies into its website, which allegedly intercepted electronic communications containing veterinary and personally identifiable information (PII) without consent. Plaintiffs assert five causes of action: (1) violation of the Wiretap Act (ECPA), 18 U.S.C. § 2510 *et seq.*; (2) violation of the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 631; (3) violation of CIPA, Cal. Penal Code § 632; (4) violation of the California Comprehensive Computer Data Access and

---

[1] Plaintiffs refer to and rely upon PetMed's Privacy Policy, *see, e.g.*, First Am. Compl. ¶ 65, so this Court may consider the policies to resolve this Motion. *See, e.g.*, *Johnson v. City of Atl.*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("[A] court may properly consider a document . . . under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.").

[2] A consent banner is a pop-up or notification displayed on a website or application that informs users about the collection and processing of their personal data.

Fraud Act (CDAFA), Cal. Penal Code § 502; and, (5) Intrusion Upon Seclusion.[3] For the reasons discussed below, each claim fails as a matter of law due to insufficient factual allegations, legal deficiencies, and failure to satisfy the applicable statutory requirements.

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, based on a facial attack to a plaintiff's standing, challenges whether the plaintiff "sufficiently alleged a basis of subject matter jurisdiction," applying the standards similar to those governing 12(b)(6) review. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "sufficient factual matter" to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8. Labels, conclusions, and mere assertions are not "facts" entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

### I.      Plaintiffs Lack Standing.

At the outset, Plaintiffs lack standing to bring their claims because, once again, they fail to allege an actual, concrete injury. The First Amended Complaint is largely silent as to how Plaintiffs were affected by the alleged disclosure of their data to the Website Technology providers.

To establish standing, a plaintiff "must put forth specific facts supported by evidence showing that: '(1) it has suffered an 'injury in fact' . . . (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1202 (11th Cir. 2018) (internal citation omitted). To prove an "injury in fact" under the first requirement, a plaintiff must have suffered "an invasion of a legally protected interest

---

[3] Plaintiffs *still* have not identified whether they seek to assert their intrusion upon seclusion claim under California or Florida law, despite PetMed previously raising this issue. *See* (Dkt. 20) at 16.

which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citation omitted). For an injury to be "concrete" it must "actually exist," as opposed to being merely "abstract." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

Here, Plaintiffs have failed to sufficiently allege an injury in fact with respect to the disclosure of their personal information, or that of their pets. As to themselves, Plaintiffs claim only that they suffered a loss of "valuable personal information" (First Am. Compl. ¶ 162), which they contend was "exploit[ed]" by PetMed, Meta, Attentive, and Zeta (*id.* ¶ 112). But these allegations are entirely conclusory and have been rejected by courts as insufficient to confer standing or establish damages. *See, e.g.*, *Provost v. Aptos, Inc.*, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) ("The Court is not persuaded by the hypothetical diminution of value propounded by Plaintiff. Plaintiff has failed to allege with particularity any facts explaining how her personal identity information is less valuable than it was before . . . ."); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) ("The Court rejects this theory of injury in fact because Plaintiffs have not alleged that their personal information has an independent monetary value that is now less than it was before . . . ."); *Everhart v. Colonial Pipeline Co.*, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022) ("Plaintiffs allege that their injuries include 'damage to and diminution in the value' of PII . . . [C]ourts in this circuit have dismissed actions based upon similar conclusory allegations for failing to allege an injury-in-fact."); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) ("Although . . . each user's information is worth a certain amount of money to Facebook and the companies Facebook gave it to, it does not follow that the same information, when not disclosed, has independent economic value to an individual user.").

Plaintiffs' allegations as to the disclosure of their pets' information fare no better. Plaintiffs contend that PetMed has disclosed their pets' veterinary information in violation of California law.[4] But the law cited by Plaintiffs—California Business & Professions Code section 4857(a)—applies only to "a veterinarian licensed under this chapter." Indeed, nowhere in the First Amended Complaint do Plaintiffs allege PetMed is a *veterinarian* subject to section 4857(a)—nor could they, as it is not.

---

[4] Plaintiffs also reference a similar Florida veterinary statute, which fails for the same reasons.

To the extent Plaintiffs rely on provisions of California law that apply to *pharmacies*, such allegations are also deficient. *See, e.g.*, Cal. Code Regs. Tit. 16, § 1764. Plaintiffs allege they purchased unidentified veterinary medications for their pets on www.1800petmeds.com. *See* First Am. Compl. ¶¶ 7–9. But the regulations cited by Plaintiffs only appear to prevent a pharmacist from disclosing the prescription or illness of a "patient." *See id.* at ¶ 23; Cal. Code Regs. Tit. 16, § 1764. Plaintiffs do not allege they input any identifying information about their pets into www.1800petmeds.com when purchasing medication, nor do they allege that PetMed would otherwise have information identifying the specific animal for whom the medication was purchased. Plaintiffs' pets certainly cannot be deemed "patients" of PetMed if PetMed was unaware of the pet's identity. Thus, no "veterinary information" could have been disclosed.

In any event, Plaintiffs also fail to allege what—specifically—was purchased. The statutes relied on by Plaintiffs only concern *prescription* medication, yet Plaintiffs provide no facts to support their allegations that the medication purchased, in fact, required a prescription. While Plaintiffs provide screenshots of various hypothetical searches on www.1800petmeds.com (*see* First Am. Compl. ¶¶ 45–63), Plaintiffs fail to allege that they searched for or purchased the medication identified in these screenshots, or that the Website Technologies received any such information about their pets. Significantly, Plaintiffs also do not contend that they submitted any written prescription to PetMed. Without such allegations, Plaintiffs fail to prove an actual, concrete injury sufficient to establish standing based on the purported disclosure of their pets' information.

Therefore, the only injury Plaintiffs assert is a statutory violation of the ECPA, CIPA, and CDAFA. But it is well established that "a bare procedural violation, divorced from any concrete harm" does not qualify as an injury. *Spokeo, Inc.*, 578 U.S. at 341. Indeed, the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (quoting *Spokeo*, 578 U.S. at 341). Accordingly, not only are Plaintiffs' assertions of statutory violations incorrect, but they are also insufficient—standing alone—to establish standing. *See, e.g.*, *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 921 (11th Cir. 2020) ("Because the plaintiff alleged only a statutory violation, and not a concrete injury, he has no standing.").

II.     **Plaintiffs' Statutory Claims Fail.**

*Even assuming* Plaintiffs have standing to sue, they have nonetheless failed to sufficiently plead violations of the statutes on which their claims rely, for the reasons explained below.

A.      **Count I: Violation of the ECPA (18 U.S.C. § 2510 *et seq.*).**

The ECPA "provides a private right of action against one who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *Hamilton Grp. Funding, Inc. v. Basel*, 311 F. Supp. 3d 1307, 1314 (S.D. Fla. 2018) (quoting 18 U.S.C. § 2511(1)(a)). Plaintiffs' claim under the ECPA fails because they do not allege an unauthorized interception, use, or disclosure of an electronic communication in violation of 18 U.S.C. sections 2511(1)(a), (c), or (d). Further, Plaintiffs' allegation that the crime or tort exception applies is unfounded. *See* First Am. Compl. ¶ 140.

1.      **No Interception While in Transit Occurred.**

Plaintiffs allege that PetMed violated the ECPA by assisting the Website Technology providers in intercepting communications that PetMed was having with Plaintiffs. *See id.* ¶ 133. These allegations fail because PetMed cannot have "intercepted" the same transmission that it also received. *See, e.g.*, *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (dismissing claims brought under the ECPA by reasoning that "the plaintiffs allege that [defendant] received the communication, sent to them directly and specifically by the plaintiffs, and that it was Facebook that intercepted the communication via the pixel").

Regardless, an interception for ECPA purposes must occur "during flight." *United States v. Steiger*, 318 F.3d 1039, 1048–49 (11th Cir. 2003); *see also, e.g.*, *Glob. Pol'y Partners, LLC v. Yessin*, 686 F. Supp. 2d 631, 638 (E.D. Va. 2009) (explaining that the term "intercept" is "best understood through a football analogy. In American football, a ball can only be intercepted when it is 'in flight'"). Courts generally recognize that tracking technologies like those at issue here do not intercept communications while they are in transit. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 951 ("Facebook's tracking does not establish that the [defendants] 'send' information to Facebook . . . More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens *independently*.") (emphasis added). Despite Plaintiffs' conclusory attempts to characterize this process as simultaneous with words such as "contemporaneously,"

this is simply not how the Website Technologies operate. Instead, it is only *after* the response is received by the visitor's browser that the data is copied and separately transmitted to the third parties—in a second, and independent, transmission. *See, e.g.*, *Barbour v. John Muir Health*, 2023 WL 2618967, at *5 (Cal. Super. Ct. 2023) ("[T]he duplication and sending of Facebook's secret code happens *after* the request reaches its destination (John Muir's server)," and thus the "Plaintiffs have not alleged Defendant's 'interception' while 'in transit'") (emphasis added); *see also* First Am. Compl. ¶¶ 42, 43, 88, 101 ("separate message"; "second, secret transmission"); Section II.B.2.(b) *infra*.

## 2. PetMed Was a Party to Any Communication.

Plaintiffs' claim also fails because the ECPA is a one-party consent statute. As explicitly recognized by the Eleventh Circuit, under the ECPA "it is lawful for an individual to intercept a communication if he is a party to it." *Ramos v. Delphi Behavioral Health Grp., LLC*, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) (citing 18 U.S.C. §2511(2)(d)).

Here, Plaintiffs' claims fail because PetMed was an intended party to the communication and therefore has done nothing unlawful under the ECPA. Courts in the Eleventh Circuit—and elsewhere—have recognized that "the weight of persuasive authority in similar pixel tracking cases supports [this] position." *Piedmont*, 2024 WL 3972984, at *2 (collecting cases); *see also, e.g.*, *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274–75 (3d Cir. 2016) (dismissing ECPA claim because defendant "was either a party to all communications with the Plaintiff's computers or was permitted to communicate with the Plaintiff's computers by Viacom, who was itself a party to all such communications"); *Kurowski, et al. v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) ("*Rush I*") ("Rush is therefore a party to those communications and cannot be liable . . . for its alleged interception of them, if such an interception even occurred."). PetMed, by deploying the Website Technologies on its website, cannot be liable for any interception of communications under the ECPA.

## 3. The Crime or Tort Exception Does Not Apply.

The ECPA provides that the party-consent exception will not apply only if a "communication is intercepted for the *purpose of committing any criminal or tortious act* . . . ." (emphasis added). Under section 2511(2)(d), "the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th

7

Cir. 2022); *see also, e.g.*, *Piedmont*, 2024 WL 5284883, at *4 (quoting *Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024)) ("[I]t is well established that the crime-tort exception only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself.").

Likely understanding that consent bars their claim, Plaintiffs attempt to plead around this deficiency by alleging that the crime or tort exception applies. *See* First Am. Compl. ¶ 140. These allegations are plainly deficient. Although Plaintiffs contend PetMed's alleged interceptions violate various laws, they do not allege that the intended *use* or *purpose* of those interceptions was criminal or tortious. *See, e.g.*, *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[T]he commission of a tortious act [does] not prove a tortious purpose."). As Plaintiffs concede, PetMed's intent was merely for its own "financial benefit." First Am. Compl. ¶ 162; *see also, e.g.*, *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. 2014) (quoting *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518) (explaining that the crime or tort exception "cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'"); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363–64 (E.D.N.C. 2024) (alleging defendant intercepted communications "for commercial use or gain" does not equate to intercepting "for the purpose of committing any criminal or tortious act"). Plaintiffs thus cannot establish that the crime or tort exception applies to their claims, and their ECPA claim fails.

**B.    Counts II and III: Violations of CIPA (Cal. Penal Code §§ 631, 632).**

Counts II and III allege violations of CIPA sections 631 and 632 (California's wiretapping and eavesdropping statutes, respectively), claiming that PetMed aided third parties in intercepting confidential communications without consent.

The California Supreme Court has interpreted section 631(a) of the CIPA as making unlawful "three distinct and mutually independent patterns of conduct: [1] intentional wiretapping [of any telegraph or telephone], [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Williams v. What If Holdings, LLC, et al.*, 2022 WL 17869275, at *2 (N.D. Cal. 2022) (internal quotations and citation omitted).

Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting Cal. Penal Code § 631(a)) (internal quotations removed). There can only be a violation under Clause Four if there is a violation of Clauses One, Two, or Three. *See id.* at 1137.

Plaintiffs allege that PetMed aided and abetted the Website Technology providers' purported violations of Clauses 1-3 by installing the Website Technologies on its website. Plaintiffs' claim is thus contingent on a finding that the third-party providers violated one of these first three clauses. But as discussed more fully below, Plaintiffs' First Amended Complaint fails to allege facts sufficient to plausibly conclude that the providers violated any of these clauses. And, in any event, both Plaintiffs and PetMed consented to the alleged interceptions, such that liability cannot attach.

### 1.      Clause One Does Not Apply to Internet Communications.

The first clause of section 631(a) provides that wiretapping is only prohibited when it is conducted by means of any "machine, instrument, or contrivance, or in any other manner." The Website Technologies do not constitute any of these devices.

"[B]y its plain terms, the statute prohibits unauthorized connection with transmissions related to 'telegraph or telephone' technologies." *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *5 (N.D. Cal. 2023). Thus, "[c]ourts have uniformly interpreted this clause as applying only to communications transmitted over telephones and not those transmitted over the internet"—as Plaintiffs allege here. *Id.* at *6; *see also, e.g.*, *Williams*, 2022 WL 17869275, at *2 ([T]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet.").

### 2.      Clause Two Cannot Apply Because Plaintiffs Do Not Allege the Interception of the Contents of a Communication in Transit.

To properly invoke Clause Two, Plaintiffs must plausibly allege that the Website Technology providers acquired the "contents" of a "communication" while "in transit." Cal. Penal Code § 631(a). Plaintiffs' allegations do not meet these requisite elements.

#### a)      The information allegedly disclosed was not "contents."

Not all data related to communications triggers CIPA—the interception at issue must involve the communication of "contents." Contents is distinguishable from "non-content" or

9

"record information" about a communication, such as "extrinsic information used to route a communication," which is not actionable if collected. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015); *see also, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014) ("[T]he term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication."). Therefore, contents does not include "dialing, routing, addressing, or signaling" information, such as "addresses, phone numbers, and URLs"—at least "when they are performing such a function." *In re Google*, 806 F.3d at 137; *see also, e.g.*, *In re Zynga*, 750 F.3d at 1106 ("Customer record information . . . includes the 'name,' 'address,' and 'subscriber number or identity' of a subscriber or customer . . . '[C]ontents' does not include such record information.").

The information Plaintiffs allege was intercepted by third-parties is "non-content" or "record information." *See In re Google*, 806 F.3d at 135. A URL does not convey the "meaning" of the communication with the host server—it identifies the location of the requested webpage on the Internet. In *Zynga*, for example, the Ninth Circuit explained that a URL could disclose that a person viewed the page of a specific support group, yet the court still held that such URLs "function[] like an address," not "contents" of a communication. 750 F.3d at 1107. The same is true here, as the URLs potentially disclosed to third parties are simply "record information" which are "generated in the course of the communication." *Id.* at 1106–07. The information allegedly disclosed to third parties because of Plaintiffs "visit[ing] webpages and click[ing] on buttons" on PetMed's website, therefore, is not "contents" for CIPA purposes. *See* First Am. Compl. ¶¶ 7–9.

The same is true of any information regarding Plaintiffs' names, addresses, or contact information, as federal courts have specifically found that the identities of the parties to a communication and their addresses are not content. *See, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) ("[I]dentities of parties to a communication . . . is not 'content'" because such data "contains no information concerning the substance, purport, or meaning of [the] communication") (internal quotation marks omitted); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("Content" does not include the "name, address and subscriber information or identity of a subscriber or customer").

Plaintiffs' allegations regarding "veterinary information" are also insufficient. First Am. Compl. ¶¶ 7–9. While Plaintiffs suggest they "purchased veterinary medicine" and that this

"veterinary information" was disclosed to third parties (*id.*), they fail to provide any further details about these purported purchases. Similarly vague allegations have been rejected:

> Plaintiff does not identify with specificity what information she provided to Defendants via her browsing activity on the Website and thus what information was subsequently transmitted to Meta. Although Plaintiff's complaint spans over fifty pages, only one paragraph is dedicated to detailing Plaintiff's interactions with Defendants' Website . . . Plaintiff vaguely alleges that she used the Website to search for information related to "actual or potential" health conditions . . . Plaintiff does not describe the types of searches she conducted or the webpages she viewed, even though her browsing activity forms the basis for her assertion that her information was purportedly shared with Meta.

*Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *4 (E.D. Cal. June 9, 2025). Therefore, Plaintiffs fail to allege the interception of "contents."

### b) The alleged interception did not occur while the communications were in transit.

Plaintiffs suggest the alleged interception of information occurs "contemporaneously" with Plaintiffs sending and receiving communications on PetMed's website. *See, e.g.*, First Am. Compl. ¶¶ 90–91, 102; *see also id.* ¶ 43 ("Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's website—Defendant's own code, and Meta's embedded code.").

In *People v. Malotte*, the California Supreme Court interpreted the statutory text now contained in Penal Code section 631(a) and held that no wiretap occurred despite a device having recorded each statement in a phone conversation immediately upon its arrival at a handset. 46 Cal.2d 59, 64, 67 n.1 (1956). The Court held the interception requirement was not met by "obtaining . . . what is [ ] sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the moment, it comes into the possession of the intended receiver." *Id.* (internal quotations omitted); *see also, e.g.*, *Bunnell v. MPAA*, 567 F. Supp. 2d 1148, 1153–54 (C.D. Cal. 2007) (forwarding duplicate copies of communications, even within milliseconds, is not an interception in transit).

Plaintiffs' allegations regarding contemporaneity are simply too conclusory to adequately state a claim. *See, e.g.*, *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'"). Put simply, it does not suffice for Plaintiffs to merely restate the

statutory language. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) (holding that a bare statement that interception occurred "in real time" did "little more than restate the pleading requirement of real time interception . . . ."). Regardless, and as previously explained, the Website Technologies do not operate contemporaneously. *See supra* Section II.A.1. In fact, Plaintiffs' own allegations concede this. *See* First Am. Compl. ¶¶ 42, 43, 88, 101 ("separate message"; "second, secret transmission").

### 3. Plaintiffs Cannot Adequately Plead a Violation of Section 631(a) Clause Three Because Plaintiffs Fail to Allege a Claim Under Clause One or Clause Two.

The third clause of section 631(a) restricts any person from using, or attempting to use, "in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . ." Cal. Penal Code § 631(a). Because a violation of Clause Three is necessarily predicated on a violation of Clause One or Clause Two—which Plaintiffs have not sufficiently alleged here— any claim for violation of Clause Three necessarily fails. *See, e.g.*, *Amsteel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) ("Because the court concludes that [plaintiff] has failed to state a claim under either clause 1 or 2, his claim that [defendant] violated § 631(a)'s third clause fails as a matter of law."). Therefore, given that Plaintiffs fail to allege a violation of Clauses One, Two, or Three by the Website Technology providers, PetMed cannot be held liable for aiding and abetting under Clause Four. *See* Cal. Penal Code § 631(a).

### 4. Plaintiffs Do Not Allege a Violation of Section 632.

"Section 632 provides that '(a) every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records such confidential communication . . . shall be punished by fine . . . or by imprisonment.'" *Rattray v. City of Nat'l City*, 51 F.3d 793, 797 (9th Cir. 1994) (quoting Cal. Penal Code § 632). Plaintiffs' claim under section 632 fails because they do not sufficiently allege a confidential communication.

#### a) No confidential communication.

A "confidential communication" is one where the parties have a reasonable expectation that it is not being overheard or recorded. *See* Cal. Penal Code § 632(c). "[C]ourts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the

communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *see also, e.g.*, *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (dismissing section 632 claim because emails are "Internet-based communications" and "not 'confidential' within the meaning of section 632"). Because Plaintiffs allegations are internet based, they have failed to plausibly plead that their activity on PetMed's website involved a "confidential communication."

### b)      No requisite intent.

As discussed, Plaintiffs' theories of liability under both CIPA section 631 and section 632 are premised on aiding and abetting. Notwithstanding the above-discussed deficiencies, Plaintiffs' aiding and abetting theory fails because the First Amended Complaint does not allege, nor support even the inference, that PetMed had the requisite intent to aid and abet any such violation.

Aiding and abetting liability for a civil claim under CIPA is available, if at all, under California Penal Code section 31. *See. e.g.*, *Kristensen v. Credit One Bank, N.A.*, 2016 WL 11757832, at **6–7 & n.12 (C.D. Cal. July 11, 2016). "Proof of aiding and abetting . . . requires demonstrating the aider and abettor's *mens rea* –knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and the aider and abettor's [] *actus reus* – conduct by the aider and abettor that in fact assists the achievement of the crime." *People v. Perez*, 35 Cal.4th 1219, 1225 (2005).

Here, Plaintiff's First Amended Complaint says nothing about PetMed's *mens rea*. Instead, it does little more than explain that the Website Technologies were offered to PetMed to help it analyze and track user interactions. *See, e.g.*, First Am. Compl. ¶¶ 41, 42. Plaintiffs offer no allegations that PetMed would have been aware of, much less have intended to assist, any alleged violation of the CIPA by the third-party technology providers. *See, e.g.*, *Kristensen*, 2016 WL 11757832, at **6–7 & n.12 (dismissing CIPA aiding and abetting claim because there was no evidence the defendant "assisted in the intentional recordation of [the principal actor]'s conversation with Plaintiff"). In any case, PetMed's Privacy Policy, which discloses the fact and purpose of its data collection practices, is inconsistent with any criminal or tortious intent. *See* Privacy Policy, Ex. A (notifying users that PetMed shares personal information "[w]ith third parties who . . . help us to administer our website, collect data for analysis purposes, conduct surveys, provide technical support, process payments, [and] provide marketing research and assistance (including email and mobile marketing) . . . ."). Without such allegations of intent, Plaintiffs' CIPA claims fail.

**5.      Plaintiff and PetMed Consented to the Alleged Interceptions.**

Plaintiffs' claims under CIPA section 631 and section 632 also fail because both Plaintiffs and PetMed have consented to the alleged interceptions, *i.e.* use of Website Technologies. Claims under CIPA will not stand where all parties have consented to the alleged interception. *See, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 995 (N.D. Cal. 2017) ("Plaintiffs cannot state a claim under the [CIPA] because that statute imposes liability only for interception 'without the consent of all parties.'"). As explained above, by deploying the Website Technologies on its website, PetMed has consented to any alleged interception of Plaintiffs' communications. And as set forth below, the same is true of Plaintiffs.

**a)      Plaintiffs consented to PetMed's use of the Website Technologies.**

Plaintiffs consented to PetMed's use of the Website Technologies by accepting PetMed's Privacy Policy. Plaintiffs allege that they were never "put on notice of a terms of service or privacy policy." First Am. Compl. ¶¶ 7–9. Yet in no uncertain terms, PetMed's publicly posted Privacy Policy notifies website users that it uses "tracking tools including cookies, web beacons or other online information-gathering tools that collect information," that it "partner[s] with third-party advertising companies," and that it shares personal information "[w]ith third parties who . . . help us to administer our website, collect data for analysis purposes, conduct surveys, provide technical support, process payments, [and] provide marketing research and assistance (including email and mobile marketing) . . . ." Privacy Policy, Ex. A. The website also features a "consent banner" informing users that "[t]o opt-out of our making available to third parties information relating to cookies and similar technologies for advertising purposes, select 'Opt-Out.'" *See* https://www.1800petmeds.com/.

Thus, PetMed clearly disclosed the potential collection of data—through various technologies— related to a website user's activity on its website. *See, e.g.*, *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *6 (N.D. Cal. Apr. 2, 2025) (dismissing CIPA claim because the "Privacy Policy explicitly states that Defendant 'use[s] various types of technologies such as cookies to collect [game data and login and browsing data] when you use our services' and Defendant also 'allow[s] some of our partners to set and access their Cookies on your device'"); *Washington v. Flixbus, Inc.*, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025) ("Defendant's Privacy Policy and Terms and Conditions explicitly notify users of the data practices at issue by disclosing the use of

cookies and tracking pixels to track certain data and disclose that data to Defendant's business partners, including marketing partners."); *Popa v. Harriet Carter Gifts, Inc.*, 772 F. Supp. 3d 592, 603–04 (W.D. Pa. 2025) (holding that the defendant's privacy policy sufficiently disclosed, among other things, that the defendant "may contract with third parties for marketing purposes" and "that these vendors may use cookies to collect information about the user's visit to the website and interactions with its products and services . . . ."). A reasonable person browsing PetMed's website would be alerted to the Privacy Policy and the "consent banner," both of which are directly applicable to Plaintiffs' claims. *See, e.g., id.* at 603 ("In order for a privacy statement to convey consent to an interception, it must disclose the nature of the interception to a reasonable reader.").

At any rate, regardless of PetMed's Privacy Policy, Plaintiffs consented to the alleged capture of data because "[a]ny reasonably intelligent person, 'savvy enough' to be using the Internet," would be aware that to conduct an online search requires their computer to send that query over the public internet to retrieve the webpage and that such transmissions "are received in a recorded format" by their very nature. *TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 452 n.8 (2002) (citing *Commonwealth v. Proetto*, 771 A.2d 823, 829 (Pa. Super. 2001)).

### b)       Plaintiffs consented to the alleged interception by accepting Meta's policies.

At the very least, Plaintiffs consented to the alleged interceptions through their use of Facebook. Facebook users, like Plaintiffs, consent to the transmission and use of their data by Facebook when they accept Facebook's policies at the time they sign up for Facebook.[5] *See* Meta, *Terms of Service*, https://www.facebook.com/legal/terms (eff. Jan. 1, 2025) (attached hereto as **Ex. B**). As the Terms of Service explain, Facebook "collect[s] and use[s] your personal data" pursuant to Facebook's "Privacy Policy," in order to provide Facebook's services. *See id.* Of course, users of Facebook may change their privacy choices about how their data is used at any time. *See id*. This policy also discloses that Facebook collects and receives information from third parties, such as PetMed. *See, e.g.*, Meta, *Privacy Policy*, https://www.facebook.com/privacy/policy/ (eff. Nov. 14, 2024) (attached hereto as **Ex. C**) ("We collect and receive information from . . . third parties

---

[5] Plaintiffs refer to and rely upon Facebook's policies in their complaint. *See* First Am. Compl. ¶¶ 66–71. This Court may thus consider the policies in ruling on PetMed's motion to dismiss. *See, e.g.*, *Johnson*, 107 F.4th at 1300.

about a variety of your information and activities on and off our Products."). By continuing to use Facebook and accepting its policies, Plaintiffs therefore consented to the alleged disclosure of their website activities.

Given that both Plaintiffs and PetMed consented to the alleged interceptions, Plaintiffs cannot state a claim under either CIPA section 631 or section 632.

### 6. The rule of lenity applies to resolve any ambiguity in PetMed's favor.

Finally, Plaintiffs seek statutory damages of tens or hundreds of millions of dollars. *See* First Am. Compl. ¶ 123 (alleging "many thousands" of class members); Cal. Penal Code § 637.2 (setting statutory damages of $5,000 per violation). Such damages cannot possibly represent a legislative judgment regarding average actual damages.

Thus, if the Court finds CIPA is ambiguous regarding the terms "contents," "in transit," "communication," "confidential," "device," or "intent," then the rule of lenity applies in PetMed's favor and requires dismissal given that CIPA is a criminal statute with civil application. *See, e.g.*, *McEwan v. OSP Grp., L.P.*, 2015 WL 13374016, at *4 (S.D. Cal. July 2, 2015) (dismissing civil complaint by "[a]pplying the rule of lenity to [CIPA] section 632" to construe "telephone" in a way "most favorable to [defendant]"); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (explaining that any "ambiguity" in a criminal statute "should be resolved in favor of lenity" where the case is brought under the statute in "a civil context"); *Romero v. Sec'y, U.S. Dep't of Homeland Sec.*, 20 F.4th 1374, 1383 (11th Cir. 2021) ("The rule [of lenity] mandates that penal statutes be construed strictly . . .  Accordingly, when Congress speaks in unclear or indefinite terms about what conduct is criminal, such that the governing statute is genuinely ambiguous, we construe that statute in favor of criminal defendants.").

### C. Count IV: Violation of the CDAFA (Cal. Penal Code § 502).

Plaintiff's CDAFA claim alleges that PetMed knowingly accessed and used Plaintiffs' data without permission. *See* Cal. Penal Code § 502(c)(2). To state a claim under the CDAFA, Plaintiffs must allege unauthorized access to a computer system and resulting damage or loss. They have again failed to do so here.

First, Plaintiffs *voluntarily* provided their data (*e.g.*, names, addresses) during transactions on PetMed's website (First Am. Compl. ¶¶ 7–9), negating any claim of unauthorized access. *See, e.g.*, *In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) ("On Plaintiffs' own allegations, the iOS and third party apps—which contain the alleged 'surreptitious

code'—were all installed or updated *voluntarily* by Plaintiffs."). This inquiry is, ultimately, also a question of consent. *See, e.g.*, *Rodriguez v. Google LLC*, 2025 WL 50425, at *7–8 (N.D. Cal. Jan. 7, 2025) (citing Cal. Penal Code § 502(c)(2)) (explaining that the CDAFA imposes liability only where the access is "without permission"). And as explained above, Plaintiffs plainly consented to the alleged interceptions—through their choices to use PetMed's website despite PetMed's clear, public notice that the website works with third parties for data collection purposes, as well as by accepting Facebook's written policies when creating their accounts. In any event, PetMed itself also consented to the purported interceptions.

Second, Plaintiffs do not allege a cognizable loss, such as economic harm or data corruption, as required by section 502(e)(1). Allegations of unjust enrichment or loss of "valuable personal information" (First Am. Compl. ¶¶ 161–62) are speculative and insufficient. *See, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("Plaintiffs offer no support for their theories that the loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data, as discussed above, is 'damage or loss' within the meaning of the CDAFA."); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (explaining that "even an argument that Plaintiffs experienced a diminution of the value of their private and personal information" would be insufficient under the CDAFA).

**D.      Count V: Intrusion Upon Seclusion.**

Finally, Plaintiffs assert an intrusion upon seclusion claim without clarifying whether it falls under California or Florida law, despite PetMed raising this issue in its original Motion to Dismiss (Dkt. 20 at 16). As this involves state substantive law, Florida law applies. *See Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law."). In any event, Plaintiffs fail to state a claim under either state's law.

To state an intrusion upon seclusion claim, Florida law requires (1) intrusion into a private quarter, (2) that is physical or electronic, and (3) highly offensive to a reasonable person. *Celestine v. Capital One*, 2017 WL 2838185, at *3 (S.D. Fla. June 30, 2017). California law requires (1) intentional intrusion into a "place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy[,]' and (2) the intrusion 'occur[red] in a manner highly offensive to a

reasonable person.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs fail to meet these elements.

### a) No intrusion into a private quarter or reasonable expectation of privacy.

"Florida law explicitly requires an intrusion into a private place and not merely into a private activity." *Pet Supermarket, Inc. v. Eldridge*, 360 So. 3d 1201, 1207 (Fla. 3d DCA 2023) (quoting *Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011)). Accordingly, courts have explicitly rejected the argument that tracking technologies like those at issue in this case "constitute[ ] an intrusion into one's private quarters under Florida law." *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *9 (M.D. Fla. Mar. 6, 2025); *see also, e.g.*, *Bradley v. City of St. Cloud*, 2013 WL 3270403, at *4–5 (M.D. Fla. June 26, 2013) (dismissing intrusion claim based on "allegations that the City investigated her and viewed her medical records, at the hospital and without her authorization," because the plaintiff had "not allege[d] that Defendants intruded into her home or another private place"); *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254, 1267–68 (S.D. Fla. 2015) ("The [defendant]'s accessing of [the plaintiff]'s driver's license information in the [Driver and Vehicle Information Database (DAVID)] system is likewise not an intrusion into a 'place.'").

Similarly, California courts find no reasonable expectation of privacy in standard internet transmissions. *See, e.g.*, *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (Yahoo chat); *Campbell*, 77 F. Supp. 3d at 849 (Facebook private messaging). This is especially true for browsing history. *See, e.g.*, *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (dismissing intrusion claim because the capturing of plaintiff's "personal details," "browsing history," and "IP address . . . is insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1016–17, 1026 (N.D. Cal. 2012) (dismissing intrusion claim, because there was no "'serious invasion' of a privacy interest" in a LinkedIn user's "browsing history" and "LinkedIn ID"). Plaintiffs' consent to PetMed's and Facebook's data practices further negates any privacy expectation. *See* Privacy Policy, Ex. A; Meta, *Terms of Service*, Ex. B.

### b) No intentional intrusion.

Where a party voluntarily discloses information, an intentional intrusion cannot occur. *See, e.g.*, *Snipes v. Wilkie*, 2019 WL 1283936, at *7 (N.D. Cal. 2019) (dismissing intrusion claim where the plaintiff voluntarily disclosed the information at issue). Plaintiffs assert PetMed's alleged

disclosure of their information was an intrusion, but that cannot be the case where Plaintiffs voluntarily disclosed information to PetMed. *See, e.g.*, *Piedmont*, 2024 WL 3972984, at *2 (no intrusion where PII and protected health information voluntarily provided); *Okash*, 2024 WL 1285779, at *7 ("Courts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta. Intrusion requires an 'affirmative act by the defendant in obtaining the information' which cannot exist when the information is provided by the plaintiff, even if a defendant later shares the information."); *Banga v. Equifax Info. Servs. LLC*, 2015 WL 3799546, at *9 (N.D. Cal. June 18, 2015) (dismissing intrusion claim, stating, "[t]he thrust of [plaintiff]'s allegations is not that [defendant] obtained unwanted access to data . . . but rather that it improperly disclosed data . . . That is not an intrusion"); *Herec v. AT&T Corp.*, 2008 WL 11409061, at *14 (N.D. Ga. Aug. 12, 2008) (disposing of intrusion claim and finding no evidence of an intrusion because "Plaintiff supplied his personal identifying information to Defendant").

Nor have Plaintiffs alleged an intent by PetMed to commit such an intrusion. An intrusion upon seclusion claim "require[s] intent on the part of the tortfeasor." *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016). Plaintiffs fail to plausibly plead PetMed's intent to intrude in a highly offensive manner. As far as PetMed is concerned, any users of its website had either consented to both PetMed's Privacy Policy and Facebook's data tracking and collection practices, or opted out. *See, e.g.*, *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("[I]f the Plaintiffs effectively consented to Yelp's use of their address book data, they cannot maintain an intrusion upon seclusion claim."). Plaintiffs fail to suggest any contrary intent.

### c)     Any alleged intrusion was not highly offensive.

Both Florida and California law require that an intrusion be "highly offensive to a reasonable person." *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024); *Celestine*, 2017 WL 2838185, at *4. Courts evaluating whether conduct is "highly offensive" consider factors such as "the degree and setting of the intrusion" and "the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287, 211 P.3d 1063, 1073 (2009). Here, Plaintiffs merely assert in conclusory fashion that PetMed's actions "constitute[ ] an egregious breach of the social norms that is highly offensive" (First Am. Compl. ¶ 173), but fail to allege facts supporting that conclusion.

19

PetMed's alleged use of Website Technologies is not conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Celestine*, 2017 WL 2838185, at *4. Courts have routinely rejected intrusion claims where, as here, a plaintiff voluntarily provided the information at issue. *See, e.g.*, *Watts*, 146 F. Supp. 3d at 1268 (no intrusion where defendant accessed information voluntarily provided to a government agency).

Moreover, courts have consistently held that the disclosure of the type of information at issue in this case—such as browsing history, keystrokes, or search queries—is not sufficiently sensitive to support a claim for intrusion upon seclusion. *See, e.g.*, *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding intrusion regarding a web user's "identifying information, browsing habits, search queries" not highly offensive); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (dismissing intrusion claim because intrusion into "a user's browsing history does not plausibly reach the level of 'highly offensive' conduct"). As the Third Circuit has explained, "the use of cookies for benign commercial purposes has become so widely accepted as part of Internet commerce that it cannot possibly be considered 'highly offensive.'" *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294–95.

Plaintiffs also fail to allege any improper motive behind PetMed's alleged conduct. Courts have found that monitoring internet activity for legitimate business purposes, as opposed to "socially repugnant or unprotected reasons," is not highly offensive. *Hernandez*, 47 Cal. 4th at 297–98. Accordingly, placing cookies on a user's browser and sharing web-browsing data from publicly accessible webpages does not amount to a highly offensive intrusion. *See also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122–23 (W.D. Pa. 2019) ("[C]ollecting [a plaintiff's] keystrokes, mouse clicks, and [personal information] is simply not the type of highly offensive act to which liability can attach.").

Finally, it strains credulity to suggest that PetMed's conduct is "highly offensive" given Plaintiffs' consent to both PetMed's and Facebook's data collection practices. Plaintiffs' intrusion upon seclusion claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant PetMed Express, Inc. respectfully requests that this Court dismiss the First Amended Complaint in its entirety with prejudice for lack of standing and failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and grant such other relief as the Court deems just and proper.

Dated: July 25, 2025

Respectfully Submitted,

*/s/ Ara K. Ayvazian*

Jennifer A. McLoone (FL Bar No.: 29234)

E-Mail: *jmcloone@shb.com*

Melissa N. Madsen (FL Bar. No.: 65416)

E-mail: *mmadsen@shb.com*

SHOOK, HARDY & BACON L.L.P.

Citigroup Center, Suite 3200

201 South Biscayne Blvd.

Miami, FL 33131

Tel: (305) 358-5171

Ara K. Ayvazian (FL Bar No.: 1004407)

E-Mail: *aayvazian@shb.com*

SHOOK, HARDY & BACON L.L.P.

100 N. Tampa St., Suite 2900

Tampa, Florida 33602

Tel: (813) 202-7100

**Counsel for PetMed Express, Inc.**