**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:25-cv-80458-AMC**

KRISTIN COBBS, LYNN KAWAMINAMI, AND LORETTA SCHWEINSBURG, individually and on behalf of all others similarly situated,

*Plaintiffs,*

vs.

PETMED EXPRESS, INC.,

*Defendant.*

**DEFENDANT PETMED EXPRESS, INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

ARGUMENT ........ 1

I. Plaintiffs Lack Standing ........ 1

II. Plaintiffs' Statutory Claims Fail. ........ 2

A. Count I: Violation of the ECPA (18 U.S.C. § 2510 *et seq.*). ........ 2

1. No Interception While in Transit Occurred. ........ 3

2. The Crime-Tort Exception Does Not Apply. ........ 3

B. Counts II and III: Violations of CIPA (Cal. Penal Code §§ 631, 632). ........ 5

1. Plaintiffs Have Not Plead a Violation of Section 632. ........ 5

a) The information allegedly disclosed was not "contents." ........ 5

b) The alleged interception did not occur while the communications were in transit. ........ 6

2. Plaintiffs Do Not Allege a Violation of Section 632. ........ 6

3. Plaintiffs and PetMed Consented to the Alleged Interceptions. ........ 7

C. Count IV: Violation of the CDAFA (Cal. Penal Code § 502). ........ 9

D. Count V: Intrusion Upon Seclusion. ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................4

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................9

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................4

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................4

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)....................10

*In re. Facebook, Inc.*,
956 F. Supp. 3d at 599 ....................2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................2

*Glob. Quest, LLC v. Horizon Yachts, Inc.*,
849 F.3d 1022 (11th Cir. 2017) ....................9

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. 2014) ....................4

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................10

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ....................5, 6

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....................9

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................1

*Johnson v. City of Atl.*,
107 F.4th 1292 (11th Cir. 2024) ....................8

*Licea v. Am. Eagle Outfitters*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ....................6

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d at 799 ....................7

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................10

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................10

*Popa v. Microsoft Corp.*,
No. 24-14, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ....................2

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................3

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024)....................4, 10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................2

*United States v. Steiger*,
318 F.3d 1039 (11th Cir. 2003) ....................3

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ....................10

**Statutes**

Cal. Penal Code § 631(a) ....................5, 6

## INTRODUCTION

The internet is—in fact—many things. What it is not, however, is an excuse for consumers to file lawsuits against companies for the use of ubiquitous advertising technologies on their websites. This rings especially true when individuals are made aware of, and explicitly consent to, the use of those technologies.

As explained in PetMed's Motion (Dkt. 23), the First Amended Complaint must be dismissed because Plaintiffs lack standing and have failed to state a claim upon which relief can be granted. Instead of truly addressing the arguments raised in PetMed's Motion, Plaintiffs double down on the deficient allegations of the Complaint. But these deficiencies remain. Plaintiffs still do not allege a cognizable injury sufficient to establish standing, nor have they adequately rebutted the fact that they consented to the alleged interceptions by choosing to use PetMed's website despite its clear, public disclosures regarding third-party data collection, and by accepting Meta's written policies when creating their accounts. In any event, the First Amended Complaint fails to allege sufficient facts to support any of the asserted claims. Accordingly, it should be dismissed.

## ARGUMENT

### I. Plaintiffs Lack Standing.

PetMed's Motion explained that Plaintiffs lacked standing because they failed to allege an actual, concrete injury. Plaintiffs argue the present case is distinguishable from others that did not "involve personal or sensitive information." Opp'n (Dkt. 34) at 4 (citing *Cook v. GameStop, Inc.*, 2025 WL 2250261, at *5 (3d Cir. Aug. 7, 2025); *Adams v. PSP Grp., LLC*, 691 F. Supp. 3d 1031, 1041 (E.D. Mo. 2023); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023)). But the allegations of the First Amended Complaint belie Plaintiffs' argument, as Plaintiffs fail to allege what was personal or sensitive about the information that was disclosed. For instance, as to Plaintiffs' personal information, courts have held that "the collection of email addresses, phone numbers, [ ] usernames, [ ] passwords, and Facebook usernames" is insufficient to confer standing. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022).

Nor do Plaintiffs address PetMed's argument regarding the purported disclosure of their pets' information. Plaintiffs fail to allege what—specifically—was purchased for their pets. The statutes relied on by Plaintiffs concern prescription medication, yet Plaintiffs provide no facts to support their allegations that the medication purchased required a prescription, much less the process by which that prescription was shared with PetMed. In fact, Plaintiffs fail to provide *any*

allegations about the information they shared about their pets. And even assuming Plaintiffs conveyed prescription information, that information relates to an animal, not Plaintiffs personally. Thus, it is not the type of information "concerning his or her person" that is recognized as private. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020).

Plaintiffs also seek to distance themselves from allegations concerning the diminution in value of their personal information, arguing that "Plaintiff's never allege that they lost value in their personally identifiable information; they allege 'an entitlement to profits earned from their personal data.'" Opp'n (Dkt. 34) at 5 (quoting First. Am. Compl. at ¶ 113). But Plaintiffs do not actually explain what profits *PetMed*, as opposed to Meta, Attentive, or Zeta, obtained from this information. Although Plaintiffs suggest that PetMed profited from their data, any purported profit from enhanced marketing is not directly connected to Plaintiffs or their data, nor do Plaintiffs allege how this is illegal or unjust given that they voluntarily provided this information to PetMed. Plaintiffs have, at most, alleged that Meta, Attentive, and Zeta caused their alleged economic injury. This distinction is critical, and well-recognized by the authority relied on by Plaintiffs, which involved claims against *Meta itself*. *See, e.g.*, *In re. Facebook, Inc.*, 956 F. Supp. 3d at 599.

Therefore, the only injury Plaintiffs actually assert is for statutory violations. But the Supreme Court has "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) (noting the legislature "may not simply enact an injury into existence" by "using its lawmaking power to transform something that is not remotely harmful into something that is"). In fact, just last week the Ninth Circuit declined to adopt the principle that "the violation of a statute codifying a common-law privacy harm is sufficient to confer Article III standing." *See Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *6 (9th Cir. Aug. 26, 2025).

## II. Plaintiffs' Statutory Claims Fail.

Even assuming Plaintiffs have standing, their Opposition does not change the fact that they have failed to sufficiently plead violations of the statutes their claims depend on.

### A. Count I: Violation of the ECPA (18 U.S.C. § 2510 *et seq.*).

PetMed's Motion explained that Plaintiffs' ECPA claim fails because they do not allege an unauthorized interception, use, or disclosure of an electronic communication. Plaintiffs'

Opposition does not suggest otherwise, nor have Plaintiffs shown that the crime or tort exception is applicable to their claims.

**1. No Interception While in Transit Occurred.**

Plaintiffs argue that they "satisfy the in-transit and contemporaneity requirement with ease." Opp'n (Dkt. 34) at 6. Not so. Plaintiffs rely heavily on *United States v. Steiger*, but that case only vaguely suggested—citing a law review article—that:

> [T]here is only a narrow window during which an E-mail interception may occur—the seconds or mili-seconds before which a newly composed message is saved to any temporary location following a send command. Therefore, unless some type of automatic routing software is used . . . interception of E-mail within the prohibition of [the Wiretap Act] is virtually impossible.

318 F.3d 1039, 1050 (11th Cir. 2003) (quoting Jarrod J. White, *E–Mail @Work.com: Employer Monitoring of Employee E–Mail*, 48 Ala. L.Rev. 1079, 1083 (1997)). Notably, *Steiger* did not involve the technology at issue in this case, and those cases that have analyzed the operation of the Website Technologies have characterized them as non-contemporaneous. *See, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017) ("Facebook's tracking does not establish that the [defendants] 'send' information to Facebook . . . More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens *independently*.") (emphasis added). Nor do Plaintiffs acknowledge that their *own allegations* describe the Website Technologies as independent. *See, e.g.*, First Am. Compl. ¶¶ 42, 43, 88, 101 ("separate message"; "second, secret transmission").

**2. The Crime-Tort Exception Does Not Apply.**

Having conceded that PetMed consented to the alleged communications (*see* Opp'n (Dkt. 34) at 8), Plaintiffs argue that the crime-tort exception applies to their claim. Plaintiffs contend that PetMed, Meta, Attentive, and Zeta acted with the purpose of: (1) "associating the content of electronic communications with preexisting consumer profiles"; (2) "exploiting the confidential communications for targeted advertisements and direct marketing"; and, (3) "using the intercepted communications in a manner that violates state privacy law, including those that mandate keeping information about veterinary care confidential." *Id.* (quoting First. Am. Compl. at ¶ 140). All three of these theories are insufficient.

First, Plaintiffs cite *Brown v. Google LLC* for the proposition that "[t]he association of Plaintiffs' data with preexisting user profiles is a further use of Plaintiffs' data that satisfies the exception." *Id.* (quoting *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1064 (N.D. Cal. 2021)). In *Brown*, however, the court found that Google possessed a criminal or tortious purpose because it funneled information it intercepted into Google's consumer profiles in direct contravention of what Google had promised consumers—here, Plaintiffs do not allege that any third party funneled information into consumer profiles in contravention of a promise that the third party made. 525 F. Supp. 3d at 1067. Rather, it is the third parties themselves who allegedly funnel information into their own consumer profiles, and it is PetMed who allegedly made unkept promises to Plaintiffs. These allegations do not show a criminal or tortious purpose against PetMed (or the third parties). Indeed, Plaintiffs do not necessarily even allege that PetMed had knowledge of any of the third parties' practices—or that the third parties had knowledge of PetMed's.

Next, Plaintiffs provide no support for their claim that the use of personal information for targeted advertising or direct marketing, by itself, evidences a criminal or tortious purpose. While Plaintiffs take issue with the practice of collecting and disclosing that information, it is unclear why the use of that information for marketing or advertising would suggest a criminal or tortious purpose. And ultimately, the use of such information for marketing or advertising purposes suggests only a commercial purpose, which courts have found insufficient to establish intent. *See, e.g.*, *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. 2014) (quoting *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001)) (explaining that the crime or tort exception "cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money'").

Finally, although Plaintiffs contend PetMed's alleged interceptions violate various laws, they still do not allege that the intended *use* or *purpose* of those interceptions was criminal or tortious. *See, e.g.*, *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 516 ("[T]he commission of a tortious act [does] not prove a tortious purpose."). For the reasons explained herein, Plaintiffs have not stated a claim for violation of any privacy law. But regardless, the mere allegation that PetMed's use of the Website Technologies constituted a crime or tort is not the same as alleging that PetMed had a criminal or tortious purpose for installing the Website Technologies. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *10, 27 (N.D. Cal. Apr. 11, 2024) ("Violation of HIPAA was not the purpose of the alleged interception"); *T.D. v. Piedmont*

*Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) (holding that the defendant "could [no]t have acted with a tortious or criminal purpose in seeking to drive marketing and revenue"). Indeed, under Plaintiffs' formulation, *i.e.* where the alleged interception itself also forms the basis for the crime-tort exception, *every* alleged interception would satisfy the crime-tort exception, effectively transforming the ECPA from a one-party consent statute to a two-party consent statute. Therefore, the crime-fraud exception is inapplicable.

### B. Counts II and III: Violations of CIPA (Cal. Penal Code §§ 631, 632).

PetMed's Motion explained that Plaintiffs' failed to allege a violation of either CIPA section 631 or 632. Nothing in their opposition alters that outcome.

#### 1. Plaintiffs Have Not Plead a Violation of Section 632.

Plaintiffs concede that their liability under section 631 is contingent on a finding that the third-party providers violated one of the first three clauses of that section and therefore focus only on the contested Clause Two. To properly invoke Clause Two, Plaintiffs must plausibly allege that the Website Technology providers acquired the "contents" of a "communication" while "in transit." Cal. Penal Code § 631(a).

##### a) The information allegedly disclosed was not "contents."

Plaintiffs argue that PetMed "disregards Plaintiffs' allegations demonstrating that three types of information—'form field entries,' 'the text of buttons clicked,' and 'full-string URLs' — revealed the 'contents' of their electronic communications." Opp'n (Dkt. 34) at 11. Plaintiffs then spend several pages attempting to explain the operation of the Website Technologies and theorizing about how certain information *could potentially* be disclosed. In doing so, Plaintiffs ignore the fundamental deficiency of the First Amended Complaint—that they have not sufficiently described the activities they actually engaged in on the website.

Courts have consistently rejected similar claims where a "[p]laintiff's complaint does not specify or describe the searches [p]laintiff conducted on the [w]ebsite." *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *10 (E.D. Cal. June 9, 2025) ("Specifically, Plaintiff alleges the 'contents' of her communications to Defendants are the 'search terms' she typed in the 'search bar' and 'Find a Doctor' webpage monitored by Pixel . . . However, . . . Plaintiffs complaint does not specify or describe the searches Plaintiff conducted on the Website."). While the First Amended Complaint contains screenshots of data that allegedly *could be* transmitted by a

hypothetical user, Plaintiffs plead no facts supporting that *they* conducted such searches or otherwise disclosed anything that might be considered "contents." Plaintiffs suggest only that they "purchased veterinary medicine" and that this "veterinary information" was disclosed to third parties (First Am. Compl. at ¶¶ 7–9), but they fail to provide any further details about these purported purchases. Similarly vague allegations have been rejected:

> Plaintiff does not identify with specificity what information she provided to Defendants via her browsing activity on the Website and thus what information was subsequently transmitted to Meta. Although Plaintiff's complaint spans over fifty pages, only one paragraph is dedicated to detailing Plaintiff's interactions with Defendants' Website . . . Plaintiff vaguely alleges that she used the Website to search for information related to "actual or potential" health conditions . . . Plaintiff does not describe the types of searches she conducted or the webpages she viewed, even though her browsing activity forms the basis for her assertion that her information was purportedly shared with Meta.

*Harrill*, 2025 WL 1635428, at *4. Therefore, Plaintiffs fail to allege the interception of "contents."

**b) The alleged interception did not occur while the communications were in transit.**

Plaintiffs' Opposition makes only passing reference to the contemporaneity requirement, contending that "at least two courts—faced with the exact same allegations and the exact same argument—have disagreed." Opp'n (Dkt. 34) at 14 (citing *St. Aubin v. Carbon Health Tech., Inc.*, 2024 WL 4369675, at *1 (N.D. Cal. Oct. 1, 2024); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *5 (N.D. Cal. Apr. 4, 2025)).

But Plaintiffs must do more. Plaintiffs make no attempt to explain why the contemporaneity requirement is met *in this case*, and the allegations of the First Amended Complaint are simply too conclusory to adequately state a claim. *See, e.g.*, *Licea v. Am. Eagle Outfitters*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than conclusory allegations that messages were intercepted 'during transmission and in real time.'").

Therefore, given that Plaintiffs fail to allege a violation of Clauses One, Two, or Three by the Website Technology providers, PetMed cannot be held liable for aiding and abetting under Clause Four. *See* Cal. Penal Code § 631(a).

**2. Plaintiffs Do Not Allege a Violation of Section 632.**

PetMed's Motion explained that Plaintiffs' claim under section 632 fails because they do not sufficiently allege a confidential communication. Plaintiffs argue in response that their

communications were confidential because they "allege that Defendant operated as a licensed pharmacy and that state law prohibits pharmacies . . . from 'exhibit[ing], discuss[ing], or reveal[ing] the contents of any prescription, the therapeutic effect thereof, the nature, extent, or degree of illness suffered by any patient or any medical information furnished by the prescriber.'" Opp'n (Dkt. 34) at 17 (quoting First. Am. Compl. at ¶¶ 23–25). As explained *supra*, however, Plaintiffs have not sufficiently alleged a disclosure of such information. In any event, Plaintiffs' allegations are entirely outside the realm of what courts have considered confidential. These alleged communications only pertain to Plaintiffs' animals—not their own personal medical information—and therefore do not meet the confidentiality standard that courts have deemed necessary to rebut California's presumption against online confidentiality. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799 (noting that "health-related communications with a medical provider are almost uniquely personal" and subject to HIPAA authorizations and therefore were sufficient to rebut the presumption). And regardless, Plaintiffs still fail to allege what the information is that they consider to be confidential as it relates to their pets.

Plaintiffs also argue that PetMed possessed the requisite *mens rea* to establish a violation of section 632 (and 631), asserting that "Defendant's conduct was no mistake; instead 'Defendant took these actions to run marketing and advertising campaigns . . . .'" Opp'n (Dkt. 34) at 18 (quoting First Am. Compl. at ¶ 133). As explained in PetMed's Motion, however, PetMed's Privacy Policy, which discloses the fact that it collects user data for these purposes, is inconsistent with any criminal or tortious intent. *See* Privacy Policy, Ex. A (notifying users that PetMed shares personal information "[w]ith third parties who . . . help us to administer our website, collect data for analysis purposes, conduct surveys, provide technical support, process payments, [and] provide marketing research and assistance (including email and mobile marketing) . . . .").

### 3. Plaintiffs and PetMed Consented to the Alleged Interceptions.

Plaintiffs do not dispute that PetMed consented to the alleged interception, but claim that they "never assented to the privacy policy, and, even if they did, Defendant specifically represented that it would comply with industry standards and keep information about their prescription confidential." Opp'n (Dkt. 34) at 14.

Plaintiffs argue first that they were not put on inquiry notice of the Privacy Policy, and that "[e]ven with the extrinsic evidence that Defendant improperly attempts to submit, nothing in the record comes close to allowing the Court to review 'the full context of the transaction,' including

whether the 'font size and format' for any textual notice was sufficient to put customers on inquiry notice of the privacy policy." Opp'n (Dkt. 34) at 15 (quoting *Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d 580, 585 (C.D. Cal. 2023)).

At the outset, Plaintiffs' comment that the Privacy Policy was "improperly" submitted is not a legal argument as to whether this Court can take judicial notice of the Policy. In any event, it would be patently unfair to permit Plaintiffs to refer to, and rely upon, PetMed's Privacy Policy in their First Amended Complaint (*see, e.g.*, First Am. Compl. ¶ 65), yet at the same time prevent PetMed from relying on that same Policy to defend these claims. *See, e.g.*, *Johnson v. City of Atl.*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("[A] court may properly consider a document . . . under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.").

Recognizing as much, Plaintiffs also argue that the terms of the Privacy Policy still do not establish consent. For instance, Plaintiffs argue "the privacy policy explicitly represents that Defendant 'follow[s] generally accepted industry practices to make sure [personal information] is not inappropriately misused, accessed, disclosed, altered or destroyed . . . That representation is false.'" Opp'n (Dkt. 34) at 16. But Plaintiffs offer no explanation as to why that representation is false, nor do they explain how the use of ubiquitous advertising technology that most entities have on their websites diverges from "accepted industry practices." *Id.* Plaintiffs also argue that the Privacy Policy "notes that 'third parties' may use 'personal information' for 'analysis purposes' . . . but here, Plaintiffs allege that Defendant disclosed such information 'to run marketing and advertising campaigns.'" *Id.* This argument is disingenuous at best, given that the same section Plaintiffs quote from explicitly provides that PetMed may share personal information with third parties to "provide marketing research and assistance." *Id.* Finally, Plaintiffs argue that the Policy's reference to third-party sharing is a "general disclaimer [that] cannot trump the specific promise to treat 'personal and prescription information . . . with the highest level of confidentiality.'" *Id.* But again, Plaintiffs do not adequately explain how PetMed failed to fulfill this promise.

Plaintiffs also argue that they could not have consented to *Meta's* data tracking and collection practices. *Id.* According to Plaintiffs, even if they agreed to Meta's Terms of Service, which disclose their tracking practices, those agreements do not allow for the tracking of "sensitive and confidential information." *Id.* But as explained herein, Plaintiffs have not sufficiently alleged the disclosure of sensitive and confidential information, such that this argument is without merit.

Therefore, given that both Plaintiffs and PetMed consented to the alleged interceptions, Plaintiffs cannot state a claim under either CIPA section 631 or section 632.

**C. Count IV: Violation of the CDAFA (Cal. Penal Code § 502).**

As explained in PetMed's Motion, Plaintiffs do not allege a cognizable loss, like economic harm or data corruption, as required by the CDAFA. Plaintiffs argue their allegations are sufficient because they allege "Defendant's conduct caused numerous third parties—including Meta, Attentive, and Zeta—to profit from Plaintiffs' and Class members' personal information and their activity on Defendants' website." Opp'n (Dkt. 34) at 19 (quoting First Am. Compl. at ¶ 111).

But courts have held that "CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). Plaintiffs have failed to make such allegations. While Plaintiffs argue that Meta, Attentive, and Zeta profited off their personal information, they do not allege how *PetMed* profited from this information. Thus, Plaintiffs' argument amounts to little more than a claim that they have suffered a "loss of the right to control [Plaintiffs'] own data, the loss of the value of their data, and the loss of the right to protection of the data"—allegations which have been squarely rejected. *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021).

**D. Count V: Intrusion Upon Seclusion.**

PetMed's original Motion to Dismiss (Dkt. 20) identified that Plaintiffs had failed to clarify whether their intrusion upon seclusion claim was brough under California or Florida law. Plaintiffs now argue that because "the place of injury is California," California law applies to their intrusion claim. Opp'n (Dkt. 34) at 19. PetMed maintains that because this claim involves state substantive law, Florida law applies. *See, e.g., Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law."). In any event, it is unclear why Plaintiffs could not have clarified this basic point in its First Amended Complaint. Ultimately, however, this distinction is irrelevant as California and Florida law on intrusion upon seclusion are largely similar such that Plaintiffs fail to adequately allege an intrusion under either.

Plaintiffs argue, in a conclusory fashion, that use of the Website Technologies constitutes an intrusion under California law. *See* Opp'n (Dkt. 34) at 20. But Plaintiffs offer no actual explanation as to why this is true, citing only a single case in support of this claim. *Id.* (citing *In*

*re. Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 801). In doing so, Plaintiffs ignore the majority of the arguments made by PetMed, as well as the authorities cited in support thereof.

For example, Plaintiffs do not address the fact that no reasonable expectation of privacy exists in standard internet transmissions. *See, e.g., Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (holding that the capturing of plaintiff's "personal details," "browsing history," and "IP address . . . is insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest"). Worse yet, Florida courts have explicitly rejected the argument that tracking technologies "constitute[ ] an intrusion into one's private quarters under Florida law." *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *9 (M.D. Fla. Mar. 6, 2025).

Nor have Plaintiffs adequately addressed the fact that they *voluntarily* disclosed information to PetMed. While Plaintiffs argue they did not consent to PetMed's disclosure of this information, the cases do not make this distinction. *See, e.g., T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) (no intrusion where PII and protected health information voluntarily provided); *Okash v. Essentia Health*, 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) ("[W]hen a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta. Intrusion requires an affirmative act by the defendant . . . which cannot exist when the information is provided by the plaintiff . . . .").

In any event, courts have consistently held that disclosure of the type of information at issue in this case is not sufficiently sensitive to support an intrusion claim. *See, e.g., In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (intrusion regarding a user's "identifying information, browsing habits, search queries" was not highly offensive). As the Third Circuit has explained, "the use of cookies for benign commercial purposes has become so widely accepted as part of Internet commerce that it cannot possibly be considered 'highly offensive.'" *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016). The same is true of the veterinary prescription information. Without allegations as to what prescription information was allegedly disclosed, Plaintiffs cannot show that any such disclosure was highly offensive.

## CONCLUSION

For the foregoing reasons, Defendant PetMed Express, Inc. respectfully requests that this Court dismiss the Complaint in its entirety with prejudice for lack of standing and failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and grant such other relief as the Court deems just and proper.

Dated: September 2, 2025

Respectfully Submitted,

*/s/ Ara K. Ayvazian*

Jennifer A. McLoone (FL Bar No.: 29234)
E-Mail: *jmloone@shb.com*
SHOOK, HARDY & BACON L.L.P.
Citigroup Center, Suite 3200
201 South Biscayne Blvd.
Miami, FL 33131
Tel: (305) 358-5171

Ara K. Ayvazian (FL Bar No.: 1004407)
E-Mail: *aayvazian@shb.com*
SHOOK, HARDY & BACON L.L.P.
100 N. Tampa St., Suite 2900
Tampa, Florida 33602
Tel: (813) 202-7100

***Counsel for PetMed Express, Inc.***