UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 25-80458-CIV-CANNON/Reinhart

**KRISTIN COBBS, LYNNE KAWAMINAMI,** and **LORETTA SCHWEINSBURG**,
*individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

**PETMED EXPRESS, INC.**,

Defendant.
_______________________________________/

**PLAINTIFFS' SURREPLY TO THE MOTION TO DISMISS**

# TABLE OF CONTENTS

Page


ARGUMENT ..... 1

- I. PLAINTIFFS ADEQUATELY ALLEGE STANDING ..... 1
  - A. Plaintiffs Possess Standing to Bring Claims under the Wiretap Act and CIPA ..... 1
  - B. Plaintiffs Possess Standing to Bring Claim under CDAFA ..... 2
- II. PLAINTIFFS STATE A CLAIM UNDER THE WIRETAP ACT ..... 3
- III. PLAINTIFFS NEVER PROVIDED CONSENT ..... 5
- IV. PLAINTIFFS STATE A CLAIM UNDER CDAFA ..... 6

CONCLUSION ..... 6

## INTRODUCTION

Defendant filed its reply to its motion to dismiss on September 2, 2025, and Plaintiffs submit this sur-reply for the limited purpose of addressing arguments raised there for the first time. To that end, Plaintiffs limit their analysis to the following issues: 1) whether collecting personally identifiable information is sufficient to confer standing; 2) whether Plaintiffs must allege that PetMed, as opposed to other third parties, profited from their personal information; 3) whether Plaintiffs' allegations adequately establish the crime-tort exception; and 4) whether Plaintiffs' allegations incorporated the privacy policy by reference.

## ARGUMENT

### I. PLAINTIFFS ADEQUATELY ALLEGE STANDING

#### A. Plaintiffs Possess Standing to Bring Claims under the Wiretap Act and CIPA

For the first time, Defendant argues that "the collection of email addresses, phone numbers, usernames, passwords, and Facebook usernames is insufficient to confer standing." *See* ECF No. 35 ("MTD Reply") at 1 (internal quotations omitted). To support that argument, Defendant cites *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022), which is a case involving claims for negligence and breach of contract based on a data breach. *Id.* at 1049. But even the author of that decision, the Honorable Yvonne Gonzalez Rogers, would find that case distinguishable, having since taken an expansive view that the statutes here—"the Wiretap Act, CIPA, [and] CDAFA"—"codify substantive rights to privacy," and a violation of those statutes, without more, "result[s] in a concrete harm." *See Brown v. Google LLC*, 685, F. Supp. 3d 909, 924 (N.D. Cal. 2023). Here, the Court need not go so far; even under a narrower view, Plaintiffs adequately allege that Defendant assisted intercepting communications that were "sensitive and confidential." *See* ECF No. 21 ("FAC") at ¶ 4; *see also id.* ¶¶ 7–9 (alleging that Plaintiffs "visited 1800petmeds.com and

purchased veterinary medicine"); *id.* (alleging Plaintiffs "clicked on buttons revealing the prescription that [they] intended to purchase"); *id.* (alleging Plaintiffs "add[ed] the prescription to [their] cart"); *id.* (alleging Plaintiffs "navigated to the checkout page and entered [their] full name, phone number, email address, home address, and billing address").

Moreover, "[t]o the extent that [PetMed] believe[s] that the alleged conduct implicates interests that are not legally protected, this is an issue of the merits rather than of standing." *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F. 3d 125, 135 (3d Cir. 2015).

**B. Plaintiffs Possess Standing to Bring Claim under CDAFA**

For the first time, Defendant argues that "Plaintiffs do not actually explain what profits PetMed, as opposed to Meta, Attentive, or Zeta, obtained from this information." MTD Reply at 2 (emphasis removed). Defendant is wrong, *see* FAC ¶ 162, but even if correct, that point only confuses the analysis. Unjust enrichment—no matter who received the profits—constitutes "an economic injury [that] qualifies as a concrete injury." *See Debernardis v. IQ Formulations,* LLC, 942 F. 3d 1072, 1084 (11th Cir. 2019). Defendant tacitly admits as much. According to Defendant, "Plaintiffs have, at most, alleged that Meta, Attentive, and Zeta caused their economic injury." MTD Reply at 2. That acknowledgement presupposes that Plaintiffs have alleged "economic injury." *Id.* Defendant's argument—that other third parties, as opposed to PetMed, caused Plaintiffs' injury—instead concerns a separate element of Article III standing: whether the concrete injury is "fairly traceable to the challenged action." *Clapper v. Amnesty Intern. USA*, 568 U.S 398, 409 (2013). And here, Plaintiffs allege that "Defendant aided and abetted the third parties with violating Cal. Penal Code § 502(c)(2) by helping Meta, Attentive, and Zeta Marketing knowingly access and without permission take, copy, analyze, and use Plaintiffs' and Class members' data." FAC ¶161. Because Plaintiffs' allegations under CDAFA "hinge on derivative

liability," *see* ECF No. 34 ("MTD Opp.") at 18, Plaintiffs adequately establish all three elements of Article III standing: "injury in fact, causation, and redressability." *Nicklaw v. Citimortgage, Inc.*, 839 F. 3d 998, 1001 (11th Cir. 2016).

## II. PLAINTIFFS STATE A CLAIM UNDER THE WIRETAP ACT

### A. Plaintiffs Establish the Crime-Tort Exception

Plaintiffs allege that Defendant assisted third parties with intercepting communications for three unlawful purposes: 1) "associating the content of electronic communications with preexisting consumer profiles"; 2) "exploiting the confidential communications for targeted advertisements and direct marketing"; and 3) "using the intercepted communications in a manner that violates state privacy law, including those that mandate keeping information about veterinary care confidential." *See* FAC ¶ 140. As previously noted, Defendant's motion to dismiss "neither addresse[d] nor discusse[d] Plaintiffs' allegations establishing the crime-tort exception." MTD Opp. at 10. For the first time on reply, Defendant attempts to distinguish Plaintiffs' allegations establishing the crime-tort exception. None of Defendant's arguments are persuasive.

*First*, Defendant argues that Plaintiffs fail to establish the crime-tort exception because "it is the third parties themselves who allegedly funnel information into their own consumer profiles, and it is PetMed who allegedly made unkept promises to Plaintiffs." MTD Reply at 4. But even accepting Defendant's characterization as true, Defendant still acted with an unlawful and tortious purpose by aiding and abetting the alleged misconduct. *See, e.g.*, *Das v. Bank of America, N.A.*, 186 Cal. App. 4th 727, 744 (2010) (noting that "California has adopted the common law rule for subjecting a defendant to liability for aiding and abetting a tort"); *see also* Cal. Penal Code § 31 (same for criminal law).

*Second*, Defendant argues that "Plaintiffs do not necessarily allege that PetMed had

knowledge of any of the third parties' practices—or that the third parties had knowledge of PetMed's." *See* MTD Reply at 4. The opposite is true. Plaintiffs allege that "Defendant knowingly use[d] the intercepted communications to run marketing and advertising campaigns that target consumers based on their activity on Defendant's website." FAC ¶ 107. Plaintiffs also allege that the third parties "received payment … to leverage Plaintiffs and Class members' personal activity and online activity for that same purpose." *Id.* ¶ 111. Both allegations demonstrate knowledge.

*Third*, Defendant argues that "it is unclear why the use of [personal] information for marketing or advertising would suggest a criminal or tortious purpose." MTD Reply at 4. The reason is straightforward. Under California law, a resident "has a legally protected privacy interest in precluding the … misuse of sensitive and confidential information." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 944 (N.D. Cal. 2024). And here, Plaintiffs allege that they are California residents whose communications with Defendant "contain[ed] sensitive and confidential information." *See* FAC ¶ 4. Plaintiffs also allege that "Defendant knowingly use[d] the intercepted communications to run marketing campaigns that target consumers based on their activity on Defendant's website." *See Id.* ¶ 93. Accordingly, by alleging "misuse of sensitive and confidential information," *see Smith*, 754 F. Supp. at 944, Plaintiffs adequately establish a further use of the intercepted communications that satisfies the crime-tort exception. *See e.g.*, *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) ("Rack Room's alleged disclosure and use of Plaintiffs' personally identifiable information for advertising, in contradiction [to] the commitments it made in its privacy policy, can plausibly constitute a further invasion of privacy beyond the act of intercepting the information alone.").

*Fourth*, Defendant asserts that Plaintiffs "still do not allege that the intended *use* or *purpose*

of those interceptions was criminal or tortious." MTD at 4. That is wrong. As an example, Plaintiffs allege that Defendant "paid the third parties here—including Meta, Attentive, and Zeta—for services and products that relied on analyzing or otherwise exploiting Plaintiffs' and Class members' personal information and their activity on Defendant's website." FAC ¶ 121. Defendant made those payments to "better target advertisements and marketing materials." *Id.* ¶ 111. By doing so, Defendant "aided and abetted the third parties with violating [CDAFA] by helping Meta, Attentive, and Zeta Marketing … analyze[] and use Plaintiffs' and Class members' data." *Id.* ¶ 161; *see also id.* ¶ 44. Accordingly, Plaintiffs adequately allege a further use and purpose that "violated state law, including CDAFA." *See Brown*, 525 F. Supp. 3d at 1067; *see generally People v. Prettyman*, 14 Cal. 248, (1996) ("Under California law, a person who aids and abets a confederate in the commission of a criminal act is liable not only for that crime (the target crime), but also for any other offense (nontarget crime) committed by the confederate as a 'natural and probable consequence' of the crime originally aided and abetted.").

At a minimum, "[a]pplication of the crime-tort exception [is] more fit for resolution at summary judgment or trial than at the motion to dismiss stage." *See W.W. Orlando Health, Inc.*, 2025 WL 722892, at *10 (M.D. Fla. Mar. 6, 2025).

## III. PLAINTIFFS NEVER PROVIDED CONSENT

For the first time, Defendant asserts that "it would be patently unfair to permit Plaintiffs to refer to, and rely upon, PetMed's Privacy Policy in their First Amended Complaint (*see, e.g.*, First Am. Compl. ¶ 65), yet at the same time prevent PetMed from relying on that same Policy to defend these claims." MTD Reply at 8. To establish that Plaintiffs "rely upon" the privacy policy, Defendant points to an allegation that explicitly disclaims notice and addresses the privacy policy in the alternative. *See* FAC ¶ 65 ("At no point during the transaction does Defendant put

consumers on notice of a privacy policy or terms of service.”). Moreover, even with “inconsistent allegations,” the Federal Rules of Civil Procedure “permits the pleading of both alternative and inconsistent claims.” *See United Tech. Corp. v. Mazer*, 556 F. 2d 1260, 1273 (11th Cir. 2009).

## IV. PLAINTIFFS STATE A CLAIM UNDER CDAFA

For the first time, Defendant argues that Plaintiffs “do not allege how PetMed profited from this information.” MTD at Reply 9. To be sure, civil claimants cannot bring a CDAFA claim without alleging “damage or loss by reason of a violation,” *see* Cal. Penal code § 502(c)(2), but once again, “Plaintiffs’ allegations hinge on derivative liability,” *see* MTD Opp at 18, meaning that they need only allege what Defendant has already conceded: “Meta, Attentive, and Zeta profited off their personal information.” MTD Reply at 9; *see* Section I.A, *supra*; *see also Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 568 (2005) (noting that “[l]iability based on aiding and abetting” is “‘derivative,’ i.e., liability is imposed on one person for the direct acts of another”); Cal. Penal Code § 31 (dictating that “[a]ll those concerned in the commission of a crime”—including those who “aid and abet in its commission”—are “principals in any crime so committed”); *Vera v. O’Keefe*, 791 F. Supp. 2d 949, 964 (S.D. Cal. 2011) (noting that Penal Code § 31 applies to criminal laws in the civil context where “there is no exclusion”).

## CONCLUSION

Defendant’s motion to dismiss should be denied in full.

Dated: September 24, 2025

Respectfully submitted,

MARCUS RASHBAUM PINEIRO & MEYER LLP
By: ***Christopher R. Reilly***
Christopher R. Reilly, Esq.
Florida Bar No. 1025097
creilly@mrpfirm.com
Michael A. Pineiro, Esq.

Florida Bar No. 41897
mpineiro@mrpfirm.com
One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
Telephone: (305) 400-4260

LEVIN LAW, P.A.
Brian Levin
Florida Bar No. 26392
brian@levinlawpa.com
Jacob Polin*
jpolin@levinlawpa.com
2665 S Bayshore Dr., Ph. 2B
Miami, Florida 33133
Telephone: (305) 402-9050

*Attorneys for Plaintiffs*
**Pro Hac Vice Forthcoming*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 24, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which caused a copy to be served upon all counsel of record.

*/s/ Christopher R. Reilly*
Christopher R. Reilly