**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 25-80458-CIV-CANNON/Reinhart**

**KRISTIN COBBS, LYNNE KAWAMINAMI,** and **LORETTA SCHWEINSBURG**,
*individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

**PETMED EXPRESS, INC.**,

Defendant.
_______________________________________/

**PLAINTIFFS' MOTION TO EXTEND**
**DEADLINES CONCERNING CLASS CERTIFICATION**

Plaintiffs, through undersigned counsel and pursuant to Fla. R. Civ. P. 16(b)(4), hereby moves the Court to extend and modify the pretrial deadlines related to class certification.

## INTRODUCTION

Since the outset of this action, Plaintiffs have diligently sought the requisite discovery to support a motion for class certification. Within two weeks of the scheduling order dictating that "discovery shall begin immediately," Plaintiffs served their first set of interrogatories and requests for production. Through repeated conferrals since then, Plaintiffs have resolved virtually all disputes, and they have reached agreement on sequencing and prioritizing productions. Plaintiffs have also begun scheduling depositions for key custodians, and they have subpoenaed third parties seeking highly relevant information. These efforts epitomize diligence. Notwithstanding that, Plaintiffs cannot meet the deadlines concerning class certification until the pleadings are resolved.

Unlike putative class actions with single-count claims under statutes like the TCPA or FCRA, Plaintiffs bring common-law and statutory claims that invoke both state and federal law and that hinge on disparate elements and defenses. Because class certification requires Plaintiffs to demonstrate common claims, issues, and defenses, they cannot properly assist the Court in conducting the necessary analysis until the pleadings are resolved and Defendants have answered the Amended Complaint and asserted their affirmative defenses. Courts in this situation—where class certification experts and briefing are due before the pleadings are settled—routinely adjust the schedule to move the class certification deadlines as Plaintiffs request herein. Plaintiffs thus respectfully request that the Court extend the deadlines concerning class certification.

## BACKGROUND

Plaintiffs initiated this action on April 10, 2025. *See* ECF No. 1. On July 11, 2025, Plaintiffs amended their pleadings, and, two weeks later, Defendant moved to dismiss the First Amended Complaint. *See* ECF No. 21. Defendant's motion to dismiss was fully briefed on September 24, 2025, and that motion remains pending. *See* ECF No. 23, 40.

The parties conducted a 26(f) conference on June 2, 2025, [1] and they filed a joint scheduling report on June 3, 2025. *See* Reilly Decl. ¶ 3; *see also* ECF No. 14. On June 5, 2025, Judge Rosenberg entered a scheduling order noting that "[d]iscovery shall begin immediately." *See* ECF No. 15 at 2. Within two weeks, on June 19, 2025, Plaintiffs served their first set of interrogatories and requests for production. *See* Reilly Decl. ¶ 4. On July 18, 2025, Defendant requested a 45-

[1] Usually, the parties should have completed a 26(f) conference by May 13, 2025, *see* Fed. R. Civ. P. R. 26(f), but between April 11, 2025, and May 27, 2025, Defendant relied on temporary counsel who claimed that his representation was limited to requesting extensions and lacked knowledge about who Defendant would ultimately retain. *See* Reilly Decl. ¶ 10. On multiple occasions, Plaintiffs' counsel stressed the need to conduct a 26(f) conference and to file the joint scheduling report. *Id.* ¶ 11. Immediately following defense counsel's notice of appearance on May 27, 2025, Plaintiffs scheduled the 26(f) conference and prepared a draft scheduling report. *Id.* ¶ 12.

day extension to serve responses, and Plaintiffs agreed to that extension "with the understanding that no other further extensions will be needed/agreed to." *See id.* ¶ 5. On September 4, 2025, Defendant served their responses and began producing documents on a rolling basis. *Id.* ¶ 6.

Since receiving Defendant's responses on September 4, 2025, the parties have conferred telephonically on five occasions, and they have exchanged countless correspondences memorializing agreements and proposing compromise positions. *Id.* ¶ 7. Based on those conferrals, the parties have resolved virtually all potential disputes, and they have also reached agreement on the sequencing for document production. *See id.* ¶ 8. Plaintiffs have also begun negotiating deposition dates for key custodians, and they are awaiting productions in response to subpoenas served on Meta and Attentive. *See id.* ¶ 9.

## LEGAL STANDARD

"A schedule may be modified only for good cause and with the judge's consent." *See* Fed. R. Civ. P. 16(b)(4). "In determining whether 'good cause' exits, courts evaluate the diligence of the party seeking leave." *La Dolfina S.A., LLC v. Meeker*, 2024 WL 1406336, at *2 (S.D. Fla. Mar. 22, 2024) (Cannon, J.). Although courts may also consider "the lack of prejudice to the non-moving party," *Angelucci v. GEICO Ins.*,2009 WL 10670385, at *2 (M.D. Fla. July 14, 2009), diligence remains "the key to satisfying the good cause requirement." *See De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012). "The burden of establishing good cause and diligence rests squarely on the party seeking relief from the scheduling order." *See ConSeal Int'l Inc. v. Neogen Co.*, 2020 WL 2494596, at *6 (S.D. Fla. May 14, 2020) (brackets omitted).

## ARGUMENT

### I. PLAINTIFFS HAVE DILIGENTLY SOUGHT DISCOVERY

Consistent with their obligations under Rule 26(g)(2)(C),[2] Plaintiffs crafted their requests for production with clarity and precision. *See* Reilly Decl. ¶ 13, Ex. A. Tacitly reflecting that effort, Defendant agreed to produce nearly all documents in response to Plaintiffs' requests for production, submitting only a minimal number of serious objections. *See id.* ¶ 14, Ex. B. Even for those limited objections, Plaintiffs conferred telephonically with Defendant on five occasions—on October 2nd, October 7th, November 4th, December 3rd, and December 12th—to reach agreement on the proper scope for production. *See id.* ¶ 7. Plaintiffs have also exchanged countless written correspondences memorializing agreements and conveying compromise proposals. *See id.* These efforts, taken together, have largely eliminated potential discovery disputes, leaving only a handful of potential issues. To even further reduce the potential for needless motion practice, Plaintiffs agreed to hold the remaining disputes in abeyance:

| Disputes | Status |
|---|---|
| The term "software designs" | Held in abeyance pending document review. |
| The term "Relevant Tracking Technologies" | Held in abeyance pending document review. |
| The term "sales materials" | Held in abeyance pending document review. |
| The terms "OPT IN" or "OPT OUT" | Held in abeyance pending document review. |
| RFP No. 30 | Held in abeyance pending document review. |
| RFP No. 34 | Partially held in abeyance. |
| Identities of Putative Class Members | Held in abeyance pending document review. |

[2] "Rule 26(g)(2)(C) requires the parties to certify, on pain of mandatory sanctions, that all discove ry requests, responses, or objections are not 'unreasonable or unduly burdensome or expensive.'" *See Chudasama v. Mazda Motor Corp.*, 123 F. 3d 1353, 1368 n. 36 (11th Cir. 1997) (recognizing that a pending motion to dismiss can sometimes "impact[] the needs of the case clouds the parties' ability to certify and hinders their ability to conduct appropriate discovery").

Beyond obtaining compromises on the substance of productions, Plaintiffs also reached agreement with Defendant on sequencing those productions, and they are now negotiating deposition dates for key custodians. *See id.* ¶ 9. More still, Plaintiffs have served subpoenas on the third-party interceptors here—Meta and Attentive—and they have begun conferring with those third parties on a production schedule. *Id.* Put together, rather than stuff the docket with superficial quibbles that serve only to divert this Court's finite resources, Plaintiffs have taken the opposite tact, relying on compromise and agreement to keep discovery targeted and on track.

## II. PLAINTIFFS CANNOT MEET THE CLASS CERTIFICATION DEADLINES

Given the requirements imposed by Rule 23, Plaintiffs cannot meet the deadlines concerning class certification—including the January 9th deadline for expert reports in support of that motion—until the pleadings are resolved.

"Federal Rule of Civil Procedure 23(c) encourages courts to rule on class certification 'at an early practicable time.'" *See Gutierrez v. Wells Fargo Bank, NA*, 889 F. 3d 1230, 1236 n. 8 (11th Cir. 2018) (quoting Fed. R. Civ. P. 23(c)). "The 'early practicable time' phrasing of Rule 23(c)(1)(A) was adopted in 2003, replacing an earlier requirement that the court decide class certification 'as soon as practicable after commencement of an action.'" *See Ali v. Chicago*, 34 F. 4th 594, 601 n. 3 (7th Cir. 2022) (quoting Fed. R. Civ. P. 23 advisory committee's notes to 2003 amendment). Through that amendment, trial courts possess "greater leeway" and "more time for class discovery." *See China Agritech v. Resh*, 584 U.S. 732, 741 (2018). Such flexibility, in turn, ensures that trial courts have the time and evidence necessary to "conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *See Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1245, 1266 (11th Cir. 2009). That inquiry necessarily entails "an examination of the claims, defenses, relevant facts, and applicable substantive law." *See Babineau v. Federal Exp. Corp.*, 576 F. 3d

1183, 1191 (11th Cir. 2009). Indeed, trial courts cannot grant class certification without first "defin[ing] the class and the class claims, issues, or defenses." *See* Fed. R. Civ. P. 23(c)(1)(A).

Plaintiffs cannot propose class definitions—let alone fully compile the evidence and expert testimony necessary to establish the "claims, issues, and defenses" amenable to class-wide resolution—until the pleadings are resolved. To illustrate as much, the three core aspects for class certification—common claims, issues, and defenses—are worth examining in turn.

*A. Plaintiffs Cannot Ascertain the Class Claims*

Although Plaintiffs' claims uniformly sound in privacy, each have disparate elements, and those differences will have a profound impact on the evidence and expert testimony necessary to establish class certification. *See* FAC ¶¶ 130–76. The interplay between CDAFA and CIPA proves the point. To establish a claim under CDAFA, Plaintiffs must allege and prove "damage or loss." *See* Cal. Penal Code § 502(e). Rule 23 "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages," *see Wal-Mart Stores, Inc. v.* Dukes, 564 U.S. 338, 361 (2011), meaning that Plaintiffs may need to retain an expert who can develop a model establishing "that damages are susceptible of measurable across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 28 (2013). Unlike CDAFA, however, CIPA specifically states that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." *See* Cal. Penal Code § 637.2(c). As a corollary, if the CDAFA claim is upheld, the failure to retain a damages expert may foreclose Plaintiffs from bringing that claim on a class-wide basis. By the same token, if the CDAFA claim is dismissed, Plaintiffs' decision to retain a damages expert would prove superfluous.

Another example illustrates the concept. In 2018, "the California State Legislature enacted the California Consumer Privacy Act (CCPA) to give consumers of all ages 'an effective way to

control their personal information.'" *See NetChoice, LLC v. Bonta*, 113 F. 4th 1101, 1109 (9th Cir. 2024) (quoting 2018 Cal. Legis. Serv. Ch. 55, § 2(i) (A.B. 375)). Given the CCPA's breadth and stringency, websites often operate differently in California, particularly with respect to how and whether they collect and disclose consumers' personal information. Because Plaintiffs bring claims under both federal and state anti-wiretapping laws, those differences are more than material to class certification. If Plaintiffs' claim under the Wiretap Act is upheld, for example, an expert report exclusively analyzing the website's functionality in California would be underinclusive and insufficient. By the same token, if only the CIPA claim survives the pleading stage, then an expert report analyzing the website's functionality across the United States would prove superfluous.

In short, "[a]ny dismissal of claims or changes to the current allegations would impact all parties' arguments regarding class certification." *See Norris v. Honeywell Int'l, Inc.*, 2023 WL 4235459, at *2 (M.D. Fla. June 28, 2023). As a corollary, "[u]ntil the causes of action are decided, Plaintiff[s] cannot reasonably be expected to determine which causes of action remain viable for the purposes of seeking class certification." *See Wave Length Hair Salons of Florida, Inc. v. CBL & Associates Properties, Inc.*, 2016 WL 7404733, at *4 (M.D. Fla. Nov. 26, 2016). Accordingly, "it is unreasonable to expect Plaintiff[s] to be able to satisfy the requirements of Rule 23." *Id.*

*B. Plaintiffs Cannot Ascertain the Common Issues*

To gain class certification, Plaintiffs must begin by demonstrating "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). Known as commonality, this requirement focuses on "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *See Dukes*, 564 U.S. at 350 (emphasis removed). After establishing commonality, Plaintiffs must then prove that "common issues are likely to predominate." *Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1271 (11th Cir. 2009). Known as predominance, this

additional hurdle requires the trial court to "first identify the parties' claims and defenses and their elements and then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Sellers v. Rushmore Loan Management Services, LLC*, 941 F. 3d 1031, 1040 (11th Cir. 2019) (internal quotations omitted). "Because predominance relates to individual issues regarding liability, the elements of the underlying cause of action are critical." *See Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1288 (S.D. Fla. 2022).

Plaintiffs cannot yet "identify the parties' claims and defenses and their elements," let alone "classify these issues as common questions or individual questions." *See Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1235 (11th Cir. 2016). Here too, an example helps demonstrate the point. In general, the Wiretap Act is a federal law with nationwide application. *See generally* 18 U.S.C. § 2510. By contrast, "CIPA contains express geographical limitations." *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 958 (N.D. Cal. 2024). When state statutes impose such limitations, "courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *See Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F. 3d 1219, 1223 (9th Cir. 2003). As a result, Plaintiffs cannot establish their CIPA claim without alleging and proving "that the conduct at issue occurred in California." *See Yockey*, 745 F. Supp. 958–59. To support class certification, Plaintiffs must therefore proffer evidence or expert testimony demonstrating that this "issue"—i.e., whether the actionable conduct occurred in California—poses a "common question" that is "susceptible to generalized, class-wide proof." *See Tyson Foods, Inc. v. Bouphakeo*, 577 U.S. 442, 453 (2016). To establish as much, Plaintiffs may need an expert report detailing a reliable method for matching IP addresses to geographic locations. By the same token, if only Plaintiffs' claim under the Wiretap Act survives the pleading stage, then the interception's location evaporates as an issue "whose resolution will affect all or a significant

number of the putative class members." *See Williams v. Mohawk Industries, Inc.*, 568 F. 3d 1350, 1356 (11th Cir. 2009). And if the interception's location is no longer relevant to the analysis, then neither is an expert report analyzing the same.

This example also underscores the prejudice that Plaintiffs face by retaining experts or moving for class certification prior to the Court's decision on the motion to dismiss. As the Eleventh Circuit has noted, the predominance requirement "is not bean counting"; it "requires a qualitative assessment" measuring "the relative importance of the common versus individual questions." *See Brown*, 817 F. Supp. at 1235. In other words, predominance "can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *See Rutstein v. Avis Rent-A-Center Systems, Inc.*, 211 F. 3d 1228, 1234 (11th Cir. 2000). Similarly, "Rule 23 does not require that all the questions of law and fact raised by the dispute be common." *See Cox v. American Cast Iron Pipe Co.*, 784 F. 2d 1546, 1557 (11th Cir. 1986). Instead, "[t]he predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *See Tyson Foods, Inc.*, 577 U.S. at 453. Taking these principles together, Plaintiffs cannot fully gauge an issue's importance—and, by extension, the degree to which they need evidence or expert testimony establishing the issue's amenability to class-wide proof—without knowing which claims will proceed past the pleading stage.

Because the ruling on the motion to dismiss will either solidify or substantially alter the relative importance of issues and questions in this action, Plaintiffs cannot fully understand the evidence and expert testimony necessary to support class certification until the pleadings are resolved.

*C. Plaintiffs Cannot Ascertain the Affirmative Defenses*

"[A]ffirmative defenses should be considered in making class certification decisions." *See Waste Management Holdings, Inc. v. Mowbray*, 208 F. 3d 288, 295 (1st Cir. 2000). When analyzing commonality and predominance, for example, courts must determine whether "affirmative defenses apply to the vast majority of class members and raise complex, individual questions." *See Brown*¸817 F. 3d at 1241. Alongside predominance and commonality, courts must also evaluate "typicality," which similarly requires that they consider whether "defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *See Prado-Steiman ex rel. Prado v. Bush*, 221 F. 3d 1266, 1279 (11th Cir. 2000). In other words, three requirements for class certification—predominance, commonality, and typicality—require courts to scrutinize the affirmative defenses at issue.

It is axiomatic that Plaintiffs "need not anticipate and negate affirmative defenses." *See Isaiah v. JPMorgan Chase Bank*, 960 F. 3d 1296, 1304 (11th Cir. 2020). Instead, "Federal Rule of Civil Procedure 12(b) requires that all defenses be asserted in the responsive pleading." *See Int'l Metalizing & Coatings, Inc. v. M & J Construction Co.*, 2010 WL 2889687, at *2 (M.D. Fla. July 19, 2010). As such, "the general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial." *See Hassan v. U.S. Postal Service*, 842 F. 2d 260, 263 (11th Cir. 1988).

Plaintiffs have so far "lacked even the benefit of the [Defendant's] answer, which would have informed a motion for class certification by responding to the factual allegations and specifying any affirmative defenses." *See Rensel v. Centra Tech, Inc.*, 2 F. 4th 1359, 1366 (11th Cir. 2021). Without responsive pleadings, Plaintiffs can only guess at the affirmative defenses that Defendant intends to raise, and those defenses will likely have significant bearing on the evidence and expert testimony necessary for class certification. As an example, if Defendant raises consent

as an affirmative defense, Plaintiffs may need to submit an expert report analyzing whether the average class member would receive notice of the relevant representations. Similarly, if Defendant asserts the statute of limitations as an affirmative defense, Plaintiffs may need to tailor the expert reports to an updated time period. In short, Plaintiffs cannot fully appreciate the affirmative defenses at issue—and, by extension, the evidence or expert testimony necessary to establish class-wide proof—without first receiving Defendant's responsive pleading. Accordingly, "considering the posture of this case," the current deadlines concerning class certification unnecessarily force Plaintiffs "to move prematurely." *See Rensel*, 2 F. 4th at 1368.[3]

***

As this Court has aptly noted, "deadlines are not aspirational." *See Injury Treatment Center of Ft. Myers, Inc. v. Starr Indemnity & Liability Co.*, 2022 WL 1642951, *2 (S.D. Fla. Apr. 15, 2022) (Cannon, J.). Notwithstanding that, given the procedural posture and their discovery efforts to date, Plaintiffs demonstrate "good cause" for an extension. Indeed, courts in the 11th Circuit and elsewhere have routinely granted such extensions under analogous circumstances. *See Wave Length Hair Salons of Fl., Inc.*, 2016 WL 7404733, at * 4 ("[P]rior to the ruling on the Motion to Dismiss, filing a motion for class certification would have been premature."); *Norris*, 2023 WL 4235459, at *2 (granting extension despite conducting a "preliminary peek" and noting that "[t]he action is not likely to end upon resolution of the motion to dismiss"); *Lum v. Mercedes-Benz USA, LLC*, 2012 WL 13012454, at *4 (C.D. Cal. Jan. 5, 2012) ("Given the pendency of the motion to dismiss, there is little to be gained by requiring plaintiffs to file a motion for class certification in February."); *Just Us Realtors, LLC v. Nudge LLC*, 2018 WL 3873679, at *2 (D. Utah Aug. 15, 2018) (granting extension because "[e]fficiences will be gained by postponing the class

[3] Given Defendant's opposition to this motion, Plaintiffs inquired as to whether Defendant would agree to waive all affirmative defenses not raised within its motion to dismiss. Defendant refused.

certification decision until after the motions to dismiss are decided"); *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, (N.D. Ill. 2013) (noting that the court "granted a stay of briefing on the class certification motion pending the resolution of Unilever's motion to dismiss"); *Hooker v. Citadel Salisbury LLC*, 2021 WL 10396902, at *2 (M.D.N.C. July 15, 2021) (staying briefing on class certification "pending resolution of Defendants' anticipated motion to dismiss and/or the close of pre-certification discovery"); *Johansson v. Nelnet, Inc.*, 2022 WL 6232089, at *1 (D. Neb. July 21, 2022) ("The court will grant Defendants' Motion to Stay Briefing on the Plaintiff's Motion for Class Certification, pending Judge Gerrard's review of the Motion to Strike."); *S.S. Microsoft Corp. Welfare Plan*, 2014 WL 12641201, at *1 (W.D. Wash. Dec. 15, 2014) (granting motion to stay briefing on class certification "until the Court rules on Defendants' Motion to Dismiss"); *Galope v. Deusche Bank National Trust*, 2012 WL 13223670, at *1 (C.D. Cal. Sept. 12, 2012) (finding good cause to grant extension because "requiring Plaintiff to prepare her class certification motion while there is a summary judgment motion pending may lead to unnecessary expense of time and resources"); *Shields v. State Farm Mut. Auto. Ins.*, 2020 WL 1942428, at *2 (W.D. La. Apr. 22, 2020) ("[T]he existence of the pending motion to dismiss at the time of the expiration of the ninety-day deadline would likely have been found to constitute good cause for an extension of the deadline."); *Karg v. Transamerica Corp.*, 2020 WL 3400199, at * n. 4 (N.D. Iowa Mar. 25, 2020) (finding good cause because "[f]ewer than 180 days passed" between the Court's decision on the motion to dismiss and the motion for class certification).

Defendant's opposition to this motion is tactical and baseless. As recently expressed in joint filings, Defendant has touted the cooperative approach to discovery, declaring with adjectival flourish that "the parties [have] constructively and expeditiously work[ed] to complete production without court intervention." *See* ECF No. 41. Indeed, Defendant believed Plaintiffs exercised

enough "diligence" by late October—never mind their diligence since then—to warrant extending the deadline for expert reports to March 2026. *Id.* At Defendant's suggestion, the joint motion also noted that "the parties have engaged in substantive settlement discussions," and that mediation was around the corner. *Id.* Defendant's optimism reveals the difference between then and today: Plaintiffs ended the mediation to Defendant's chagrin, *see* ECF No. 53, and they have wasted no time continuing their march toward class certification and trial.

Given Plaintiffs have established good cause and diligence, they respectfully request that the Court extend the deadlines concerning class certification as follows:

| **Motion & Reports** | **Current Deadline** | **Proposed Deadline** |
|---|---|---|
| Expert Witness Reports on Issues of Class Certification | January 9, 2026 | Two weeks following Defendant's answer and affirmative defenses |
| Rebuttal Expert Reports on Issues of Class Certification | February 6, 2026 | Five weeks following Defendant's answer and affirmative defenses |
| Motion for Class Certification | March 2, 2026 | Seven weeks following Defendant's answer and affirmative defenses |

The parties previously filed a joint motion to extend all pretrial deadlines—including those concerning class certification—by four months. *See* ECF No. 41. The Court partially granted the requested relief and extended all pretrial deadlines by six weeks. *See* ECF No. 47. As outlined above, Plaintiffs only seek to adjust deadlines concerning class certification. All other deadlines would remain operative. Plaintiffs make this motion in good faith and not for the purpose of delay.

## **CONCLUSION**

Because Plaintiffs demonstrate diligence and good cause, their motion to extend deadlines concerning class certification should be granted in full.

Dated: January 9, 2026

Respectfully submitted,

MARCUS RASHBAUM PINEIRO & MEYERS LLP
By: ***Christopher R. Reilly***
Christopher R. Reilly, Esq.
Florida Bar No. 1025097
creilly@mrpfirm.com
Michael A. Pineiro, Esq.
Florida Bar No. 41897
mpineiro@mrpfirm.com

One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
Telephone: (305) 400-4260

LEVIN LAW, P.A.
Brian Levin
Florida Bar No. 26392
brian@levinlawpa.com
Jacob Polin*
jpolin@levinlawpa.com
2665 S Bayshore Dr., Ph. 2B
Miami, Florida 33133
Telephone: (305) 402-9050

*Attorneys for Plaintiffs*
**Pro Hac Vice Forthcoming*

## CERTIFICATE OF CONFERRAL

Under Local Rule 7.1(a)(3), counsel for Plaintiffs certify that, on December 31, 2025, and January 7, 2026, Plaintiffs' counsel conferred, by email, with Defendant's counsel regarding the relief requested in this motion. Defendant opposed.