**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 25-80458-CIV-CANNON/Reinhart**

**KRISTIN COBBS, LYNNE KAWAMINAMI,** and **LORETTA SCHWEINSBURG**,
*individually and on behalf of all others similarly situated*,

Plaintiffs,

v.

**PETMED EXPRESS, INC.**,

Defendant.
________________________________________/

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXTEND DEADLINES CONCERNING CLASS CERTIFICATION**

Plaintiffs, through undersigned counsel, hereby files this reply brief in support of their motion to extend and modify the pretrial deadlines related to class certification.

## INTRODUCTION

Rather than directly address Plaintiffs' efforts to meet the deadlines concerning class certification, Defendant supports its opposition with arguments and accusations untethered from the record. Because Defendant fails to dispute Plaintiffs' diligence in pursuing discovery and preparing for class certification, Plaintiffs' motion to extend deadlines should be granted in full.

## ARGUMENT

Defendant asserts that "Plaintiffs appear to have been content to require the parties (and the Court) to continue to expend resources on this matter, while Plaintiffs set back and waited to see how the pleadings would close." *See* ECF No. 60 ("Mtn. Opp.") at 7. That argument grossly

mischaracterizes the record and procedural history. At the very outset of this action, Defendant defaulted on the pleadings, requiring Plaintiffs' counsel to reach out to then-counsel for Defendant, Charles Throckmorton, to inform him as much. *See* ECF No. 5. Three days after its answer was due, Defendant filed a motion to extend the time to respond, followed by another motion to extend eight days later. *See* ECF No. 7, 10. Those motions were unopposed. *Id.* Almost immediately after discovery was open, on June 19, 2025, Plaintiffs served their first set of interrogatories and requests for production. *See* ECF No. 54-3. The next day, nearly two months after service was effectuated, Defendant filed its first motion to dismiss, and, three weeks later, Plaintiffs amended their pleadings as of right. *See* ECF No. 20-21. On July 18, 2025, the Friday before the Monday deadline to serve discovery responses, Defendant requested and received a 45-day extension. *See* Reilly Decl. ¶ 3. Defendant filed its second motion to dismiss on July 25, 2025, and, on September 4, 2025, Defendant served its discovery responses. *See* ECF No. 54-4. A few weeks later, on September 24, 2025, the parties completed briefing on the motion to dismiss. *See* ECF No. 40. Put together, it took Defendant roughly two months to file the first motion to dismiss, and it took Defendant almost eleven weeks—75 days in total—to serve written responses to discovery. More still, Defendant has recognized that those delays then carried into document production "[d]ue to several changes to PetMeds' senior executives." *See* ECF No. 41.[1]

After receiving discovery responses in September, Plaintiffs conferred with Defendant on

---

[1] In its opposition, Defendant gestures at the recent status conference in which the Court expressed concern regarding the progress of Plaintiffs' productions. *See* Mtn. Opp. at 7. Left unmentioned at the hearing, however, was Defendant's decision to serve its first set of requests for production on August 22, 2025, more than two months after the start of discovery and four months after this action was initiated. *See* Reilly Decl. ¶ 4. Plaintiffs served their responses to discovery on October 14, 2025, and, more than a month later, on November 24, 2025, Defendant served a letter acknowledging "receipt of [Plaintiffs'] discovery responses" and seeking—for the first time—to "confer on certain deficiencies." *Id.* ¶ 5. As indicated in Defendant's opposition, Plaintiffs have begun rolling productions, and they are making every effort to substantially complete document production as quickly as possible. *See* Mtn. Opp. at 7.

five occasions to reach agreement on the proper scope for productions. As Plaintiffs noted in their motion, those conferrals—in conjunction with countless written correspondences—minimized potential issues, and they also led to agreements on prioritizing and sequencing Defendant's productions. *See* ECF No. 54. Readily acknowledging "the many discovery conferrals," Defendant does not—and cannot—contest these representations. Mtn. Opp. at 3. Defendant instead argues that "there was nothing preventing Plaintiffs from … disclosing the relevant expert opinions in support of each claim." *See id.* at 5. In other words, despite benefitting from unopposed extensions that caused briefing to drag into late-September, Defendant now asserts that Plaintiffs should have not only known that the pleadings would remain open, but that they also should have then spent considerable time and resources retaining experts to write reports that—as of five days ago—would prove unnecessary. On its face, that argument is wrong, but an analogy helps prove the point. As mentioned, Defendant sought a 30-day extension "to allow PetMed to, among other things, finalize representation." *See* ECF No. 7. Defendant's position is akin to arguing that PetMed lacked good cause for such an extension because it could have simply hired all attorneys under consideration and instructed them to draft competing motions to dismiss. Although such an approach would have ensured compliance with the response deadline, Defendant would have correctly countered that diligence cannot hinge on the movant's willingness to waste time and money on redundant efforts that the extension is itself designed to obviate.

Defendant then argues that "Plaintiffs' reference to affirmative defenses warrants no extension" because Plaintiffs should have "anticipate[d] affirmative defenses" and they "pled one such 'defense' as a common issue in their Complaint." *See* Mtn. Opp. at 5. That argument runs headlong into basic, foundational principles underlying the notice pleading system. As courts have recognized, "affirmative defenses are pleadings," *see Gomez v. Bird Automotive, LLC*, 411 F.

Supp. 3d 1332, 1334 (S.D. Fla. 2019), and "the purpose of pleading sufficient facts in affirmative defenses is to give fair notice to the opposing party that there is some plausible, factual basis for the assertion and not simply to suggest some possibility that it might apply to the case." *See Castillo v. Roche Laboratories Inc.*, 2010 WL 3027726, at *3 (S.D. Fla. Aug. 2, 2010) (internal quotations omitted). That is why, at a minimum, "the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses." *See Hassan v. U.S. Postal Service*, 842 F. 2d 260, 263 (11th Cir. 1988).[2] That is also why Plaintiffs "need not anticipate and negate affirmative defenses." *See Isaiah v. JPMorgan Chase Bank*¸ 960 F. 3d 1296, 1304 (11th Cir. 2020). Those principles apply with full force here because it is Plaintiffs—not Defendant—who "bear[] the burden of proving all the necessary elements for class certification." *See Fox v. Ritz-Carlton Hotel Co.*, 345 F.R.D. 358, 363 (S.D. Fla. 2024). Accordingly, Defendant's suggestion—that Plaintiffs should simply guess or speculate the affirmative defenses—is not just wrong; it also contravenes the purpose underlying "federal pleading practice generally." *See Raines v. Pulte Homes Co.*, 2006 WL 843992, at *1 (M.D. Fla. Mar. 3, 2006) (noting that Rule 8 aims "to provide notice to the opponent, avoid surprise and undue prejudice, and afford the opponent a chance to argue, if able, why the defense is unfounded").

Defendant next asserts that "Plaintiffs' Motion is not supported by any affidavit from a retained expert explaining why their opinions cannot be finalized." *See* Mtn. Opp. at 6. To be sure, Plaintiffs conducted extensive legal research on the elements for class certification as applied to their claims, and they met with multiple experts on multiple occasion to determine the feasibility of preparing reports and seeking class certification prior to the pleadings being resolved. *See* Reilly

[2] Some courts have also held that "affirmative defenses must meet the [heightened] pleading standard set out in *Twombly* and *Iqbal*." *See Castillo v. Roche Laboratories, Inc.*, 2010 WL 3027726, at *2 (S.D. Fla. Aug. 2, 2010).

Decl. ¶ 7. But in Defendant's view, those efforts still fall short; Plaintiffs should have submitted declarations disclosing their prospective experts, and they should have also asked those experts—prior to being retained or paid—to draft averments explaining why the Court's decision on the motion to dismiss would impact the scope or necessity of their opinions. Here too, Defendant's suggestion is entirely unmoored from the "good cause" standard, effectively conditioning an extension on Plaintiffs' willingness to prematurely reveal experts and the opinions that they may offer. There is neither a legal nor pragmatic reason for requiring as much.

Defendant also urges the Court to view Plaintiffs' motion "[f]rom the defendant's perspective," asserting that "every case, not just this one, could be informed by the closure of the pleadings." *See* Mtn Opp. At 7. That argument makes little sense here. Once again, it is Plaintiffs—not Defendant—who "bear[] the burden of establishing every element of Rule 23." *See Vega v. T-Mobile USA, Inc.*, 564 F. 3d 1256, 1267 (11th Cir. 2009). In any event, Defendant fails to fully capture "the defendant's perspective." By dispensing with notice requirements prior to class certification, Defendant's position would mean that Plaintiffs could move to certify any claim—whether it's alleged within their pleadings or not—so long as they can assert that Defendant could have "anticipated" those claims based on its "knowledge of the law in this space." *See* Mtn. Opp. at 6. Even from "the defendant's perspective," Defendant is wrong, and its position would undermine the very reason for having a pleadings requirement in the first place.

Defendant then offers its own interpretation for Plaintiffs' motion, asserting that Plaintiffs impliedly blame "delays by the Court in ruling on Defendant's Motion." *See id.* at 7. To be clear, the parties finished briefing the motion to dismiss in late-September—nearly five months after this action was initiated—because Defendant waited two months to file its motion to dismiss and then compounded that delay by submitting a reply brief that was littered with new arguments and that

forced Plaintiffs to respond with an unopposed sur-reply. By contrast, within roughly three months, the Court authored a thorough, 25-page decision resolving key questions in this action and setting forth a clear framework for class certification and summary judgment. In short, it was Defendant's delay—and Defendant's delay alone—that created the need for an extension.

Defendant next proclaims that the requested extension "is not the practice in this District." *See* Mtn. Opp. at 7. Rather than bolster that proclamation with caselaw, Defendant proceeds to critique Plaintiffs' motion—without a hint of irony—for "fail[ing] to cite a single Southern District of Florida case in support of the argument that courts have routinely granted such extensions under analogous circumstances." *See id*. To be sure, Defendant ends its analysis by citing a case in which the defendant answered the pleadings **four months** prior to the deadline for class certification. *See Garcia v. Sun W. Mortg. Co.*, 1:18-cv-23289-CMA, ECF No. 40 (S.D. Fla. Sept. 14, 2018). But given the factual distinctions, that case is not only inapposite but also tacitly evinces Defendant's inability to explain why "the practice in this District" distinguishes Plaintiffs' caselaw or forecloses Plaintiffs from seeking to extend deadlines when the pleadings remain open.

Throughout its opposition, Defendant also bemoans potential prejudice for having already "served its expert report." Mtn. Opp. at 3. As will soon become clear through forthcoming motions to exclude and strike, that report is glaringly deficient, failing to satisfy even the low bar imposed by Rule 26 to disclose "facts or data" underlying the analysis. It was not until this past Friday, for example, that Plaintiffs received the raw data for one of the "tests" within the report, and they are still waiting for confirmation from Defendant that its expert failed to preserve such data for the rest. Notwithstanding that, to the extent that Defendant is concerned that a modified schedule would permit too much time to file a rebuttal report, Plaintiffs respectfully request that the deadline to rebut that report remain in place. Plaintiffs are working diligently to meet the

operative deadline, and they intend to serve rebuttals in accordance with the current schedule. If an extension is later necessary, Plaintiffs will seek such relief separately and only insofar as the week-long delay in turning over raw data—something that Defendant was obligated to produce with the report—prohibits Plaintiffs' expert from finalizing his rebuttal report by February 6th.

Defendant also repeatedly stresses "the time and circumstances of Plaintiffs' Motion," arguing that Plaintiffs moved for an extension "knowing full-well that there would be no possibility of obtaining relief from the deadline prior to it lapsing." Mtn. Opp. at 7. Given that Defendant previously sought an extension three days *after* blowing a deadline, its argument here is hypocritical at best. In any event, Plaintiffs expended substantial time—both before and after mediation—attempting to ascertain whether they could prepare expert reports and move for class certification while the pleadings remained open. *See* Reilly Decl. ¶ 7. Immediately after determining that the answer was no, Plaintiffs asked defense counsel on December 22, 2025, whether Defendant would consent to extend the deadlines concerning class certification. *See id.* Once defense counsel conveyed Defendant's opposition, Plaintiffs put pen to paper on their motion, recognizing that the Court partially denied a similar motion in November and that briefing on the motion would render it impossible to receive an extension prior to the first deadline's expiration. Eighteen days later, Plaintiffs filed a 13-page motion supporting "good cause" with extensive caselaw and detailed analysis. *See* ECF No. 54. Especially given the intervening holidays, Plaintiffs prepared and filed their motion as quickly as possible.

Defendant ends its opposition by criticizing the "tight timeframes" within the proposed schedule, asserting that "the class certification motion deadline would be extended to March 25, 2026, which would fall after the deadline for disclosure of merits expert reports." *See* Mtn. Opp. at 9. Defendant's point here is unclear. As courts have noted, "[t]here is no rule" that "[a] motion

for summary judgment cannot be filed before class certification is resolved." *In re Univ. of Miami Covid-19 Tuition and Fee Refund Litig.*, 2022 WL 18586131, at *1 (S.D. Fla. Nov. 21, 2022). In any event, Defendant fails to mention its refusal to produce witnesses for deposition while its lead counsel is in trial from February 9th to February 22nd. That omission makes clear that "tight timeframes" only pose a problem for Defendant when they work to its detriment.

**CONCLUSION**

Because Plaintiffs demonstrate diligence and good cause, their motion to extend deadlines concerning class certification should be granted in full.

Dated: January 19, 2026

Respectfully submitted,

MARCUS RASHBAUM PINEIRO & MEYERS LLP
By: ***Christopher R. Reilly***
Christopher R. Reilly, Esq.
Florida Bar No. 1025097
creilly@mrpfirm.com
Michael A. Pineiro, Esq.
Florida Bar No. 41897
mpineiro@mrpfirm.com

One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
Telephone: (305) 400-4260

LEVIN LAW, P.A.
Brian Levin
Florida Bar No. 26392
brian@levinlawpa.com
Jacob Polin*
jpolin@levinlawpa.com
2665 S Bayshore Dr., Ph. 2B
Miami, Florida 33133
Telephone: (305) 402-9050

*Attorneys for Plaintiffs*
**Pro Hac Vice Forthcoming*

## CERTIFICATE OF CONFERRAL

Under Local Rule 7.1(a)(3), counsel for Plaintiffs certify that, on December 31, 2025, and January 7, 2026, Plaintiffs' counsel conferred, by email, with Defendant's counsel regarding the relief requested in this motion. Defendant opposed.