UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 25-80458-CIV-CANNON/Reinhart

**KRISTIN COBBS** and
**LYNNE KAWAMINAMI,**
*individually and on behalf of all others similarly situated,*

Plaintiffs,

v.

**PETMED EXPRESS, INC.,**

Defendant.
_____________________________________/

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**

## INTRODUCTION

Defendant's motion to strike should be denied in its entirety because Dr. Good's report is exactly what Rule 26 contemplates: A rebuttal that directly contradicts and repels the specific technical opinions of Defendant's affirmative expert, James Vint.

Through his expert report submitted on January 9, 2026, Mr. Vint opines that: 1) there is "no consistency" in data transmissions; 2) "without the c_user value, any transmission to Facebook is anonymous"; 3) "no identifying information" is transmitted to Zeta or Attentive "unless the user enters that information … into a form"; 4) third-party data collection constitutes an "independent interaction"; and 5) determining whether a user's information was transmitted "cannot be done on a class-wide basis" due to nine purported "variables." Vint Report ¶¶ 15, 54, 65, 72, 116–53, 159.

Dr. Good's rebuttal report responds to each of these opinions and contradicts them with specific technical analysis. Dr. Good demonstrates that: 1) Vint's nine "variables" collapse into overlapping categories that do not preclude class-wide treatment; 2) Meta, Zeta, and Attentive systems ingest multiple identifying data points—like, for example, email addresses, phone numbers, IP addresses, and external_ids—independent of first- and third-party cookies; 3) first-party code execution causes third-party transmissions; 4) these third-party transmissions convey substantive purchase content, not mere routing information. Good Report ¶¶ 18–109.

PetMeds' motion rests on the flawed premise that any rebuttal expert who effectively undermines an opposing expert's conclusions must be engaging in improper "case-in-chief" advocacy. That is not the law. "The test under Rule 26(a)(2)(D)(ii) is not whether a rebuttal report contains new information, but whether it is intended solely to contradict or rebut evidence on the same subject matter of an opponent's expert report." *O'Malley v. Royal Caribbean Cruises, Ltd.*, 2018 WL 11350570, at *2 (S.D. Fla. May 24, 2018). Dr. Good's report satisfies that standard: It

is keyed paragraph-by-paragraph to Vint's specific opinions; it is confined to the same subject matter, like the technical mechanics of third-party data transmission from 1800petmeds.com; and it does nothing more than demonstrate that Vint's conclusions are technically incorrect.

Nor does Rule 37 warrant exclusion: Dr. Good's report was timely under the Court's scheduling order; it was substantially justified as a direct response to opinions that Plaintiffs could not have reasonably anticipated; and it is entirely harmless to PetMeds, which has yet to even depose Dr. Good. The Court should therefore deny PetMeds' motion to strike.

## **RELEVANT BACKGROUND**

### I. MR. VINT'S REPORT

This case arises from PetMeds' decision to integrate four tracking technologies into its website, 1800petmeds.com, which then intercepted and disclosed the content of confidential communications—including information that revealed purchased medication—in violation of the federal Wiretap Act and California's Invasion of Privacy Act ("CIPA") §§ 631, 632.

PetMeds disclosed Mr. Vint's report on January 9, 2026, and his report broadly addresses the technical question of whether data transmissions from 1800petmeds.com to Meta, Zeta, and Attentive can be analyzed on a class-wide basis. Vint's principal opinions are:

1) There is "no consistency in transmissions from [w]ebsite visitors to third parties";

2) "[W]ithout the c_user value, any transmission to Facebook is anonymous";

3) "[T]here is no identifying information transmitted to Zeta or Attentive, unless the user enters that information (name, email, etc.) into a form";

4) Third-party data collection constitutes an "independent interaction" between the user's browser and the third party, not an interception by PetMeds;

5) HTTPS encryption renders transmitted data unreadable;

6) URL parameters reflect routing information, not substantive content; and

7) Nine purportedly individualized "variables"—relating to Facebook account status,

> browser configurations, device usage, and privacy settings—make it "not possible to determine on an aggregated basis whether a user's page visit information was sent to Facebook and/or Zeta or Attentive."

*See* Vint Report ¶¶ 15, 54, 65, 74, 105, 116–53, 159.

**II. GOOD'S REBUTTAL OPINIONS**

Dr. Good is the Founder and CEO of Good Research, LLC, and he was retained solely "to evaluate and respond to the Expert Report of Cobbs by James Vint dated January 9, 2026." *See* ECF No. 105-2, Exhibit B to Plaintiffs' Motion for Class Certification at ¶ 10 ("Good Report"). Dr. Good organizes his opinions as direct responses to claims within Mr. Vint's report:

> 1) Responding to Vint ¶¶ 116–153 (nine "variables"): Dr. Good demonstrates that Vint's nine variables collapse overlapping categories, and that his "all-or-nothing" framing is inconsistent with how identification systems actually operate;
>
> 2) Responding to Vint ¶¶ 65, 72 ("anonymous" / "no identifying information"): Dr. Good shows that Meta, Zeta, and Attentive ingest multiple identifiers (hashed email, phone, name, IP address, external_id) independent of cookie availability;
>
> 3) Responding to Vint ¶ 54 ("independent interaction"): Dr. Good outlines through the request-initiator-chain analysis that third-party pixel requests are directly and sequentially caused by the website's own first-party HTML/script execution;
>
> 4) Responding to Vint ¶ 105 (encryption): Dr. Good explains that HTTPS protects data does not prevent Meta/Zeta/Attentive from receiving and reading transmitted data;
>
> 5) Responding to Vint ¶ 99 (whether URLs reveal the "content" of communications): Dr. Good analyzes example URL/GET-POST parameters showing purchase/add-to-cart events convey substantive content (product IDs, names, price, brand); and
>
> 6) Responding to Vint ¶ 159 (class-wide identification "not possible"): Dr. Good presents evidence from Defendant's productions evincing the opposite conclusion.

Each of these opinions directly contradicts a specific Vint opinion, and all of them concern the technical mechanics of data transmission from 1800petmeds.com to third-party recipients.

## LEGAL STANDARD

Under Rule 26, "[t]he test … is not whether a rebuttal report contains new information, but whether it is intended solely to contradict or rebut evidence on the same subject matter of an

opponent's expert report." *O'Malley*, 2018 WL 11350570, at *2. The term "subject matter" is "broadly construed." *Burger King Co. v. Berry*, 2019 WL 571483, at *3 (S.D. Fla. Jan. 8, 2019). "A proposed rebuttal expert satisfies this standard as long as the information provided by the rebuttal expert repels the affirmative expert testimony of the other party." *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 2020 WL 1666763, at *3 (S.D. Fla. Apr. 3, 2020). "For a rebuttal expert report to fall within the scope of 'the same subject matter,' the subject need not even be a major point in the opposing party's expert report." *Major v. Carnival Corp.*, 2019 WL 13488488, at *3 (S.D. Fla. July 10, 2019). Critically, "[a] rebuttal expert can testify as to the flaws that [he] believes are inherent in another expert's report that implicitly assumes or ignores certain facts." *Coquina Invs. v. Rothstein*, 2011 WL 4949191, at *3 (S.D. Fla. Oct. 18, 2011).

Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Exclusion under Rule 37(c)(1) is not automatic; rather, it is proper only where no "substantial justification" is shown and the opposing party would be "unduly prejudiced." *See Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 812 (11th Cir. 2017).

## ARGUMENT

### I. DR. GOOD'S REPORT CONCERNS THE SAME SUBJECT MATTER

PetMeds asserts that Plaintiffs improperly seek "to affirmatively rely on [their] class certification rebuttal report." Mot. at 4–5. This argument conflates two distinct concepts: 1) the substantive content of Dr. Good's report, and 2) citation to Good's conclusions within the class certification briefing, which is how any party uses any expert report in motion practice. The first concept—and the first concept alone—is all that matters for purposes of Rule 26.

The controlling standard is straightforward: "An expert may be used for rebuttal if the expert offers evidence that is intended solely to contradict or rebut evidence on the same subject matter identified by the affirmative expert of another party." *Cole v. Carnival Co.*, 2024 WL 1016113, at *1 (S.D. Fla. Feb. 2, 2024); *Healy v. NCL (Bahamas) Ltd.*, 2024 WL 4132981, at *6 (S.D. Fla. Aug. 13, 2024) ("Rule 26(a) provides that rebuttal experts may be permitted to present evidence that is intended to contradict or rebut evidence on the same subject matter identified by an initial expert witness."); *Finestone v. Fla. Power & Light Co.*, 2005 WL 6745903, at *2 (S.D. Fla. Nov. 28, 2005) (noting that "any party may use an expert rebuttal report to contradict another party's expert" so long as the report "is limited to contradict evidence on the same subject matter").

Dr. Good's report is organized as a point-by-point response to Vint's specific opinions:

1) Through paragraphs 20 to 67, Dr. Good demonstrates that the nine "variables" advanced in Mr. Vint's report collapse into three overlapping categories;

2) Through paragraphs 68 to 84, Dr. Good responds to Mr. Vint's claim about "independent interaction[s]" within paragraph 54 of his report, demonstrating through initiator-chain analysis that third-party requests are directly caused by PetMeds' code;

3) Through paragraphs 85 to 98, Dr. Good refutes to Mr. Vint's claims about the necessity of cookie values for identification, demonstrating that multiple data points are transmitted independent of these cookie values that enable identification;

4) Through paragraphs 99 through 115, Dr. Good responds to paragraph 99 within Mr. Vint's report, demonstrating the content of electronic communications includes transmissions through the internet revealing information like purchase data;

5) Through paragraphs 116 and 117, Dr. Good refutes Mr. Vint's opinions about the reliability of IP addresses as a method of determining a user's location; and

6) Through paragraphs 118 and 119, Dr. Good directly refutes Mr. Vint's conclusion that, "when completing the purchase of a prescription product, there is a statement detailing that a user agrees to PetMeds' privacy policy by placing an order."

By limiting his analysis to specific conclusions and opinions within Mr. Vint's report, Dr. Good crafts a report that serves as the paradigmatic example for a proper rebuttal opinion. *See, e.g.*, *Major*, 2019 WL 13488488, at *3 (noting that "the subject need not even be a major point in

the opposing party's expert report"); *Lebron v. Royal Caribbean Cruises, Ltd.*, 2018 WL 3583002, at *2 (S.D. Fla. July 26, 2018) ("[R]ebuttal opinions are permitted when they directly address an assertion raised by an opponent's experts."); *cf. United States v. Gardner*, 887 F. 3d 780, (6th Cir. 2018) ("A party's opportunity to introduce rebuttal evidence is not limited by the fact that it could have introduced the proffered evidence in its case-in-chief.") (quotations and brackets omitted).

## II. DR. GOOD PROPERLY RELIES ON POST-VINT DISCOVERY

PetMeds next argues that Dr. Good "impermissibly relies" on discovery postdating Mr. Vint's report. *See* Mot. at 5–6. As an initial matter, once again, "[t]he test under Rule 26(a)(2)(D)(ii) is not whether a rebuttal report contains new information, but whether it is intended solely to contradict or rebut evidence on the same subject matter of an opponent's expert report." *O'Malley*, 2018 WL 11350570, at *2 (emphasis added). In any event, even assuming this well-established caselaw is incorrect, the disclosure was substantially justified and harmless because Mr. Vint's report was not disclosed until January 9, 2026, and Plaintiffs were under no obligation to rely on speculation to preempt his opinion beforehand. As courts have noted, a contrary approach "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material." *See id.*

## III. DR. GOOD'S REPORT CONTRADICTS MR. VINT'S CONCLUSIONS

PetMeds then advances the counterintuitive argument that Dr. Good's report is "actually consistent" with Mr. Vint's conclusion that individualized inquiry is required. *See* Mot. at 6–8. To the contrary, Mr. Vint's central conclusion is unambiguous: It is "not possible to determine on an aggregated basis whether a user's page visit information was sent to Facebook and/or Zeta or Attentive" and this determination "cannot be done on a class-wide basis." Vint Report ¶¶ 119,

159. Dr. Good directly contradicts this conclusion by demonstrating that class-wide identification is not only possible but is documented in PetMeds' own productions. Good Report ¶¶ 86–115.

PetMeds also attempts to seize upon Vint's concession that he is "not opining on how Attentive works or doesn't work," asserting it shows that Dr. Good has nothing to rebut. Mot. at 7. Although this admission will feature heavily in Plaintiffs' forthcoming motion to strike, Mr. Vint's report does not limit itself to Meta; it instead expressly discusses whether "a user's page visit information was sent to … Zeta or Attentive." *See* Vint Report ¶ 159. Put differently, Mr. Vint's concessions at his deposition only confirm the unreliability of his opinions; they in no way, however, form a basis for excluding Dr. Good's rebuttal of those unreliable conclusions.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion to Strike the Rebuttal Expert Report of Nathaniel Good, Ph.D. (DE 113) in its entirety. In the alternative, Plaintiffs request that the Court conduct a hearing on the Motion before ruling.

Dated: July 27, 2026

Respectfully submitted,

**MARCUS RASHBAUM PINEIRO & MEYERS LLP**

*By: /s/ Christopher R. Reilly*
Christopher R. Reilly,
Florida Bar No. 1025097
creilly@mrpfirm.com
Michael A. Pineiro, Esq.
Florida Bar No. 41897
mpineiro@mrpfirm.com
One Biscayne Tower
2 S. Biscayne Blvd., Ste. 2530
Miami, Florida 33131
Telephone: (305) 400-4260

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2026, the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*By: /s/ Christopher R. Reilly*
Christopher R. Reilly