**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO. 25-80458-CIV-CANNON/Reinhart**

**KRISTIN COBBS** and **LYNNE**
**KAWAMINAMI,**
*individually and on behalf of*
*all others similarly situated*,

      Plaintiffs,

v.

**PETMED EXPRESS, INC.**,

      Defendant.

_____/

**ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CLASS;**
**DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE;**
**DISMISSING AMENDED COMPLAINT; AND CLOSING CASE**

**THIS CAUSE** comes before the Court upon Plaintiffs' Motion to Certify Class (hereinafter

the "Motion") [ECF No. 106], which seeks to certify four separate classes of plaintiffs under

Federal Rule of Civil Procedure 26(b)(3) in this data privacy class action suit.  The Court has

reviewed the Motion [ECF No. 106], Defendant's Response in Opposition [ECF No. 112],

Plaintiffs' Reply [ECF No. 118], and all of the attachments thereto [ECF No. 106-1 through 106-

27; ECF No. 112-1 through 112-12; ECF No. 118-1 through 118-3].  Following careful review on

a complete class-certification record, the Motion is **DENIED**, and Plaintiff's Amended Complaint

[ECF No. 21] is **DISMISSED** for lack of Article III standing.

**BACKGROUND AND PROCEDURAL HISTORY**

Defendant PetMeds owns and operates www.1800petmeds.com, one of the largest online

pharmacies for veterinary prescriptions.  Plaintiffs are customers or potential customers of

Defendant who visited Defendant's website to browse for veterinary medicine [ECF Nos. 112-2,

112-3].  During the time Plaintiffs were visiting the website, Defendant deployed several third-party tracking technologies—an Attentive tag, a Meta Pixel, and a Zeta Pixel—on its website, ostensibly to assist with multifactor authentication and advertising its product [ECF No. 112-4 pp. 10–13].  However, Plaintiffs characterize the tags and pixels as more malevolent—claiming the technology allowed the third parties, without Plaintiffs' permission or consent, to track Plaintiffs' activities on Defendant's website, such that Defendant and the third parties could target Plaintiffs on an individual consumer basis, ultimately collecting information that revealed "what [they] viewed, selected, added to cart, and purchased"  [*see* ECF No. 106-2 ¶ 107].

In April 2025, based on the tracking technologies identified above, named-Plaintiffs Cobbs, Kawaminami, and Schweinsburg,[1] individually and on behalf of two putative classes, filed suit against Defendant, alleging violations of the Federal Wiretap Act ("Electronic Communications Privacy Act" or "ECPA"), 18 U.S.C. § 2511(1)(a) (Count I); the California Invasion of Privacy Act ("CIPA"), *see* Cal. Penal Code §§ 631–632 (Counts II and III); the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 (Counts IV); and common law intrusion upon seclusion (Count V) [ECF No. 1 pp. 35–42].  After Defendant moved to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [ECF No. 23], the Court granted in part and denied in part that Motion, holding that Plaintiffs had plausibly alleged Article III standing and stated claims for violations of the ECPA and CIPA (Plaintiffs' Counts I, II, and III).  *See generally Cobbs v. PetMed Express, Inc.*, 824 F. Supp. 3d 1257 (S.D. Fla. 2026); [ECF No. 59].  Separately, the Court dismissed with prejudice Plaintiffs' CDAFA and intrusion upon seclusion claims (Counts IV and V), holding they did not and could not state a claim under those theories because Plaintiffs could not prove that they suffered any

---

[1] Plaintiff Schweinsburg voluntarily dismissed her claims on February 2, 2026 [ECF No. 72].

damage or loss from the disclosure of their data, nor could they prove such disclosure was "highly offensive" in our internet-driven age. *Id.*

After several months of class discovery pursuant to a Scheduling Order [ECF No. 47], Plaintiffs now move for class-certification under Federal Rule of Civil Procedure 23(b)(3) [ECF No. 106], seeking to appoint their attorneys as class counsel and certify the following classes:

> **Nationwide Class**: All individuals in the United States who purchased prescription medication through 1800petmeds.com from October 25, 2021, to April 10, 2025.
>
> **Meta Nationwide Subclass**: All individuals in the United States who: 1) purchased prescription medication through 1800petmeds.com from October 21, 2021 to April 10, 2025; 2) completed the purchase using a first name, last name, and email address that is associated with a Facebook account; and 3) appears in Meta's records with a purchase event for a Content ID associated with prescription medication.
>
> **California Class**: All individuals who purchased prescription mediation through 1800petmeds.com with a shipping address in California from October 21, 2021, to April 10, 2025.
>
> **Meta California Subclass**: All individuals who: 1) purchased prescription medication through 1800petmeds.com with a shipping address in California from October 21, 2021 to April 10, 2025; 2) completed the purchase using a first name, last name, and email address that is associated with a Facebook account; and 3) appears in Meta's records with a purchase event for a Content ID associated with prescription medication.

[ECF No. 106 p. 3]. Defendant opposes class certification, arguing that the two remaining named Plaintiffs lack standing to prosecute the remaining claims; that the proposed classes are inadequately defined and not ascertainable; that the class is not sufficiently numerous; and that Plaintiffs' asserted "common questions" of fact between the different Plaintiffs are in fact too diverse to warrant class certification under Rule 23(b) [ECF No. 112].

Following review of the Motion [ECF No. 106] and related briefing [ECF Nos. 112, 118], and with the benefit of a full class-certification record illuminating Plaintiffs' alleged injuries, the Court dismisses Plaintiffs' claims on jurisdictional grounds, finding that neither of the remaining

named-Plaintiffs possesses Article III standing to prosecute the remaining claims asserted. And because the Court lacks jurisdiction over this case, it need not reach either party's other arguments regarding class certification. The Court reasons below.

## ARTICLE III STANDING

In order for a federal court to have jurisdiction under Article III of the Constitution, the plaintiff must establish standing to bring her claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The "irreducible constitutional minimum of standing" has three components—injury in-fact, causation, and redressability—only the first of which is in dispute here. *Id.* To allege a sufficient injury in-fact for Article III purposes, a plaintiff must have a "personal stake" in the litigation and must allege a "concrete and particularized" de facto harm that is "real, and not abstract." *Raines v. Byrd*, 521 U.S. 811, 819 (1997); *TransUnion LLC*, 594 U.S. at 427 (quotation omitted).

Generally, the injury-in-fact analysis involves a "tangible" harm, such as "physical injury or financial loss." *See Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1353, 1356 (11th Cir. 2025). In a narrow subset of cases involving violations of statutory law, however, courts have found standing despite the plaintiff suffering merely an "intangible" harm. *See id.* But, because of the danger in potentially "creating new injuries out of whole cloth," *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1243 (11th Cir. 2022)—and to stay faithful of the Article III requirement of concrete harm—when a plaintiff asserts a so-called "intangible" harm resulting from a bare statutory violation, courts conduct an independent injury-in-fact evaluation to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 594 U.S. at 424 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). While a statute that matches

4

up with one of those traditional harms is sufficient to provide Article III standing, a bare statutory violation that lacks a historical basis for its injury is not. *Id.* at 440; *see also Light v. LVNV Funding, LLC*, 176 F.4th 1288, 1295 (11th Cir. 2026) ("[A] technical statutory violation, without more, does not confer standing."). Importantly, although an "exact duplicate" of a traditionally recognized harm is not required, the alleged harm cannot be missing an element "essential to liability" under the comparator tort. *See TransUnion*, 594 U.S. at 434 (quotation omitted). This ensures that legislatures do not "create[e] new injuries out of whole cloth," enacting "an injury into existence" from conduct that is "not remotely harmful." *Hunstein*, 48 F.4th at 1243 (quoting *TransUnion,* 594 U.S. at 426).

At the class certification stage, to examine whether a named-Plaintiff has standing, the court reviews "both the allegations in the complaint and evidence in the record so far." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 n.6 (11th Cir. 2023). This task "is necessarily fact-specific," *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280–81 (11th Cir. 2000) (evaluating both named plaintiffs' allegations and the lack of evidence of injury in the record for some claims while analyzing Article III standing), and it requires an "evidentiary inquiry to determine whether at least one named representative of the class has standing," *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Where "facts developed in discovery firmly contradict the allegation[s] in the complaint," the Court may not "rely on the [C]omplaint's factual allegation[s]" in place of the developed facts. *Green-Cooper*, 73 F.4th at 891. Instead, the standing question is whether each named Plaintiff has established standing as a factual matter, "viewing all [of] the evidence in a light most favorable" to them. *See In re Polypropylene Carpet Antitrust Litig.*, 178 F.R.D. 603, 609 (N.D. Ga. 1997).

CASE NO. 25-80458-CIV-CANNON/McCabe

**DISCUSSION**

Defendant's primary opposition to class certification is to highlight the lack of injury in fact as required to confer Article III standing [ECF No. 112 pp. 5–7, 11–14]. Defendant acknowledges the Court's earlier conclusion at the pleading stage that Plaintiffs plausibly alleged standing in the Amended Complaint [ECF No. 112 p. 13]. But now, Defendant submits, following class discovery, the facts have not born out Plaintiffs' allegations [ECF No. 112 p. 13]. Specifically, as Defendant explain, Plaintiffs' "Motion does not contain any evidence that Plaintiffs' 'confidential data' was disclosed" to the third parties at issue, meaning Plaintiffs have not suffered an injury in fact for standing purposes [*see generally* ECF No. 112 pp. 12–16].

Plaintiffs take the opposite view, generally reiterating their pleading-stage arguments that Defendant deployed software that intentionally intercepted the contents of their electronic communications, purportedly paying third parties for services that exploited information Plaintiffs reasonably expected to remain private [ECF No. 106 pp. 13–20]. Plaintiffs do not contest the need to establish individual harm for purposes of standing. Nor have Plaintiffs, despite full briefing and class discovery, taken any efforts to supplement or dispute the portions of their depositions as filed by Defendant in Opposition to the Motion [ECF Nos. 112-2, 112-3].

The Court considers these arguments upon a full class discovery record, briefly summarizing the context and scope of the Court's prior standing determination at the motion to dismiss stage followed by an evaluation of the current record on standing.

**A. The Court's prior standing analysis at the pleading stage**.

As all parties agree, and as the Court observed at the motion to dismiss stage, the most apt common law comparator tort for Plaintiff's remaining claims—wiretapping and eavesdropping on electronic communications under both the ECPA and CIPA (Counts I, II, and III)—is intrusion

6

upon seclusion.  *Cobbs*, 824 F. Supp. 3d at 1265–67; [ECF No. 59 pp. 5–9].[2]  Previously, based solely on the allegations in Plaintiffs' Complaint, taken as true, the Court found that Plaintiffs had plausibly alleged standing by and through a comparison to intrusion upon seclusion based on their asserted harm in this case: the knowing disclosure of their confidential data to the various third parties outlined in the Amended Complaint.  *See id.* at 1267–68; [ECF No. 59 pp. 5–9].  That conclusion followed from a binding Eleventh Circuit precedent, *Perry v. Cable News Network, Inc.*, 854 F.3d 1336 (11th Cir. 2017), which determined that a plaintiff-class had plausibly alleged standing via the tort of intrusion upon seclusion where it alleged that a defendant "track[ed] the user's views of news articles and videos," "collect[ed] a record of th[at] viewing activity," and "sen[t] the collected record to . . . a third party company that conducts data analytics."  854 F.3d at 1339.  Applying *Perry* to the allegations in Plaintiffs' Amended Complaint, the Court held that Plaintiffs had sufficiently "establish[ed] a concrete injury-in-fact" based on Defendant's alleged knowing installation of "third-party tracker software on its website, [which] caused the disclosure [to third parties] . . . of Plaintiffs' confidential data . . . such as Plaintiffs' 'form inputs, search queries, content-based URL's, and button clicks'" [ECF No. 59 p. 8]; *Cobbs*, 824 F. Supp. 3d at 1267–68 (citing *Perry*, 854 F.3d at 1341 ("[I]n the tort of intrusion upon seclusion, 'the *intrusion itself* makes the defendant subject to liability, even though there is no publication or other use,' meaning a showing of additional harm is not necessary to create liability." (alteration adopted) (quoting Restatement (Second) of Torts § 652B cmt. b))).  Crucially, at the Motion to Dismiss

---

[2] Here, as done at the motion to dismiss stage, "it is appropriate . . . to examine standing holistically as to all of the related privacy claims because Plaintiffs' asserted privacy invasion is the same throughout" [ECF No. 59 p. 8 n.5]; *Cobbs*, 824 F. Supp. 3d at 1267 n.5 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020) (assessing standing for related privacy claims together)); *see also In re BPS Direct, LLC; Cabela's, LLC Wiretapping Litig.*, 175 F.4th 423, 431 (3d Cir. 2026) (same).

stage, the Court was required to accept as true Plaintiffs' allegations that they "reasonably expected that communications revealing" their private information "would remain confidential" [*see e.g.*, ECF No. 21 ¶¶ 7–9, 31, 170, 171].

**B. At this juncture, following class discovery, neither of the named Plaintiffs has established Article III standing because the unrebutted evidence shows that Plaintiffs lack a subjective privacy interest in the veterinarian and personal information at issue.**

"[E]very court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates." *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999). This duty applies with recognized importance at the class certification stage. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("We emphasize that any analysis of class certification must begin with the issue of standing."). Specifically, "prior to the certification of a class"—and "before undertaking any formal typicality or commonality review—the district court must determine that at least one named class representative has Article III standing." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (dash added); *id.* ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." (quoting *Griffin*, 823 F.2d at 1483)).

Turning to this case, and as explained above, the relevant standing question is whether the named Plaintiffs have been harmed in a way that has a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 594 U.S. at 424. This inquiry requires a foray back into the tort of intrusion upon seclusion in order to ensure, based on the class-discovery record, that the harm *actually* suffered by the named-Plaintiffs does not lack any element "essential to liability" for that tort. *Id.* at 434.

"Intrusion upon seclusion [occurs] where a person 'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns if the intrusion

would be highly offensive to a reasonable person.'" *Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656 (Fla. Dist. Ct. App. 2021) (alteration adopted) (quoting Restatement (Second) of Torts § 652B).[3] As its name suggests, one "essential element" of the tort of intrusion upon seclusion is, unsurprisingly, "seclusion"—i.e., the plaintiff "must have a subjective expectation that the [conveyed information] will remain private and the expectation must also be one which society is willing to accept as reasonable." *Id.*; *see* Restatement (Second) of Torts § 652B cmt. c ("The defendant is subject to liability [for intrusion upon seclusion] only when he has intruded into a *private place*, or has otherwise invaded a *private seclusion* that the plaintiff has thrown about his person or affairs" (emphases added)); *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) ("[T]he plaintiff must show . . . an actual, subjective expectation of seclusion or solitude in the place, conversation, or matter."); *Perez v. Hadley*, No. 25-CV-22162, 2026 WL 500627, at *10 (S.D. Fla. Feb. 6, 2026) (considering subjective expectation of privacy in intentional intrusion upon seclusion claim applying Florida law); *Shulman v. Grp. W Prods., Inc.*, 955 P.2d 469, 490, 494 (1998) (holding intrusion upon seclusion requires an "intrusion into a private place" under California law).

What this means, in effect, is that to have a protectable "secluded" interest for purposes of sustaining a claim for intrusion upon seclusion, a plaintiff must truly sweep that information "into [their] private quarters" rather than allow it to become public or fail to protect it in the first place. *See Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003); *Hammer v. Sorensen*, 824 F. App'x 689, 695 (11th Cir. 2020) ("[T]he tort of intrusion upon seclusion . . . requires a plaintiff

---

[3] Once again, "[t]he parties do not agree on whether Florida or California substantive law applies to" the intrusion upon seclusion comparator tort [ECF No. 59 p. 20 n.16]; *Cobbs*, 824 F. Supp. 3d at 1274 n.16. Here, similar to the Motion to Dismiss stage, "the Court need not make a choice of law determination . . . because the result is the same under the law of either jurisdiction." *Id.*

to show an intrusion into a private place and not merely a private activity." (citation omitted)); *see also Spilfogel v. Fox Broad. Co.*, 433 F. App'x 724, 727 (11th Cir. 2011) (same).  For instance, where a neighbor installed a twenty-five-foot-high rooftop camera that recorded into an adjacent homeowners' backyard, the Florida Second District Court of Appeal found that the homeowners were likely to prove intrusion upon seclusion by the neighbor because the homeowners had established a "subjective expectation of privacy" in their backyard by installing a privacy fence and various "no trespassing signs" on the property.  *See Jackman v. Cebrink-Swartz*, 334 So. 3d 653, 656–57 (Fla. Dist. Ct. App. 2021).  Conversely, the homeowners' retaliation camera—which filmed "the border area between the homes" and the neighbor's "side door to the house which [was] visible from the street"—did not intrude upon the neighbor's seclusion because the neighbor did not "have the same subjective expectation of privacy" as the homeowners did in their privacy-laden backyard.  *Id.*

Construing all of the evidence in Plaintiffs' favor, it is clear that the named Plaintiffs lack Article III standing.  *Bush*, 221 F.3d at 1280 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.").

**<u>Plaintiff Kristin Cobbs</u>**

Start with named Plaintiff Cobbs, who was deposed in this matter on March 2, 2026 [ECF No. 112-2].  On October 29, 2024, Cobbs visited 1800petmeds.com via a Google search for Simparica Trio, a flea, tick, and heartworm preventative that she sought to purchase for her chihuahua Kona [ECF No. 112-2 pp. 17–20].[4]  Though ostensibly bringing this lawsuit based on an intimate privacy concern regarding her and Kona's personal/veterinarian information, Cobbs

---

[4] Cobbs became aware of the potential to become a Plaintiff in this lawsuit sometime after her purchase, through an Instagram/Facebook ad targeting individuals who had made purchases on Defendant's website [ECF No. 112-2 pp. 7–8].

explicitly stated in her deposition that she does not have "any concern with people knowing that Kona is on the preventative Simparica Trio" [ECF No. 112-2 p. 33 ("Q. Do you have any -- would you have any concern with people knowing that Kona's taking the Ollie food?  A. Probably not. Q. Would you have any concern with people knowing that Kona is on the preventative Simparica Trio?  A. No.")].  Moreover, Cobbs acknowledged that she never looks through privacy policies on the websites she shops on, because in her own words, it is "not going to influence the purchases that [she] makes" since such policies are "inconsequential" [ECF No. 112-2 p. 27].  To that end, Cobbs has never read any website's privacy policy [ECF No. 112-2 p. 29], and her online shopping behavior has not changed since filing this lawsuit; she simply does not read privacy policies and does not plan to start doing so [ECF No. 112-2 pp. 85–90].  More generally, Cobbs concedes that, other than the alleged violations prosecuted in this lawsuit, there have been no negative consequences to either her or Kona associated with the conduct at issue in this lawsuit [*see* ECF No. 112-2 pp. 17–33].  Indeed, the following colloquy between counsel for Defendant and Plaintiff Cobbs sums up Cobbs' view of this case, which is that Cobbs is concerned about Defendant's alleged violations of the law, not on an actual invasion into information she personally keeps private.

> **Ms. McCloone**: So what is your concern with Kona's prescription information being available to third parties?
>
> **Ms. Cobbs**: I mean, specifically that it's medical information that shouldn't be shared. I mean, if I was going to the vet, they wouldn't be sharing my personal information, medical information. I think those things are, like—there are laws specifically about not sharing those things.
>
> **Ms. McCloone**: So it's just the violation itself, I guess, is what you're saying is your concern?
>
> **Ms. Cobbs**: Yes.

[ECF No. 112-2 pp. 50–51].

11

**<u>Plaintiff Lynne Kawaminami</u>**

Turn to Plaintiff Kawaminami, who was deposed on March 3, 2026 [ECF No. 112-3].  On February 6, 2025, Kawaminami purchased prescription hydration items (lactated ringers, IVs and needles) for her Savannah cat Jabari on 1800petmeds.com [ECF No. 112-3 p. 38].  She later learned about the potential of being a plaintiff in this lawsuit, like Cobbs, through an Instagram/Facebook ad [ECF No. 112-3 pp. 24–26].  In her deposition, Kawaminami claimed that she agreed to be a named Plaintiff in this lawsuit because it is "very disturbing to think that [her] protected information is out there and being used by third parties" [ECF No. 112-3 p. 19].  Despite that professed sentiment, however, Kawaminami continues to make purchases on 1800petmeds.com using the same browser and browser settings she initially used when the asserted privacy violations that spawned this lawsuit occurred [ECF No. 112-3 pp. 46, 82].  To this day, in fact, she still has not reviewed Defendant's privacy policy, and she has not asked Defendant to delete any of her saved personal information (stored in the website) because then she "would have to re-enter all of [her] information" [ECF No. 112 p. 81].  To top it all off, Kawaminami joined a public Facebook group, entitled "I have a cat with kidney disease," where she explains to members of the group that she provides her cat Jabari with fluids, and has even posted pictures showing her using those products [ECF No. 112-3 pp. 64–71].[5]

What is clear from all of this is that, even construing all of the evidence in named Plaintiffs' favor, no one—not Defendant, not Meta, not Attentive, not Zeta—intruded into either named-Plaintiffs' "seclusion."  Both women apparently care little about their internet privacy, with Cobbs

---

[5] The last named-Plaintiff, Loretta Schweinsburg, voluntarily dismissed her claims on February 2, 2026 [ECF No. 72].  Schweinsburg (whose profile picture is her cat) appears satisfied with PetMeds, as she shared a PetMeds' Facebook coupon on her personal Facebook page on January 1, 2026, while serving as a plaintiff in this lawsuit [*see* ECF No. 112-1 (Facebook post)].

flat-out admitting that she does not have "any concern with people knowing that Kona is on the preventative Simparica Trio," and with Kawaminami continuing to shop on Defendant's website with the same browser settings that led to the initial "harm," *whilst prosecuting this lawsuit* [ECF No. 112-2 pp. 25–30; ECF No. 112-3 pp. 46, 81–82].  Those things being true, Plaintiffs can hardly be said to be keeping their personal and veterinarian information "private and away from other people," *Seclusion*, Oxford American Dictionary (3rd ed. 2010) (defining "seclusion" as "the state of being private and away from other people"), or to be "screening" or "hiding" their information from third-parties,  *Seclusion*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020) (defining "secluded" as "screened or hidden from view").  And they certainly cannot be said to be sweeping such information "into [their] private quarters."  *See Ginsberg*, 863 So. 2d at 162.

Despite Defendant's prominently raising the absence of named Plaintiffs' standing and attaching Cobbs and Kawaminami's depositions to its Opposition to Class Certification [ECF No. 112-2, 112-3], Plaintiffs entirely fail to engage with the developed facts, seemingly assuming that Cobbs and Kawaminami have standing in-fact as a foregone conclusion [ECF No. 106, 118].  In fact, Plaintiffs' only response is to cite internal marketing documents from Defendant showing statistics about pet owners in the United States treating their pets as family and caring about compliance with laws.  Yet none of these reports says anything about the named Plaintiffs' purported injuries.  Instead, the reports say, for example, that (1) after some testing, Defendant found "that 'obeying laws and fulfilling obligations' was" the number one "'top value[] & driver[] for their target audience'"; (2) "25% of [Defendant's] target audience" were "'empty nesters who see pets as children and spend accordingly'"; (3) "'nearly all U.S. pet owners (97%) say their pets are part of their family'"; and (4) "'about half of pet owners (51%) not only consider their pets to

be a part of their family but say they are as much a part of their family as a human member'"

[ECF No. 105 (alterations adopted) (quoting ECF Nos. 106-12, 106-22, 106-23)].[6]

None of these internal marketing documents compensates for the named Plaintiffs' failure to establish standing here.  First, Plaintiffs' generalized statements about Defendant's marketing tactics cannot supplant the individualized analysis necessary to determine whether *these named Plaintiffs*—not just any plaintiff—have article III standing.  *Bush*, 221 F.3d at 1280 (holding that district court, prior to certifying a class, and before undertaking formal review of the Rule 23 factors, "must determine that at least one named class representative has Article III standing").  And second, no matter how much the named Plaintiffs love their pets and see them as "part of their family," that cannot change the undeniable truth revealed during their depositions: neither Plaintiff Cobbs nor Plaintiff Kawaminami has any privacy interest (or "seclusion" interest) in their personal or veterinarian information entered into the form entries on www.1800petmeds.com, given their utter disregard for such information being shared in the public sphere.  In the end, seclusion is "essential to liability" under the common law tort of intrusion upon seclusion, *TransUnion LLC*, 594 U.S. at 434, and even construing the evidence in their favor, named Plaintiffs have not shown any secluded interest here.

What the Court is left with, then, is a bare statutory violation [*see* ECF No. 112-2 pp. 50–51 (Ms. McCloone: "So it's just the violation itself, I guess, is what you're saying is your concern?" Ms. Cobbs: "Yes.")].  But as the Supreme Court stated in *TransUnion*, and as the Eleventh Circuit has held time and time again since then, "bare procedural violations, divorced from any concrete

---

[6] The exhibits cited for these propositions are sealed on the docket pursuant to an earlier Order Granting in Part and Denying in part the parties' Joint Motion to Seal [ECF No. 102]; but the propositions themselves are all found in the unredacted portion of Defendant's Motion to Certify Class [ECF No. 105], and therefore appear herein in unredacted form.

harm . . . d[o] not suffice for Article III standing." *TransUnion*, 594 U.S. at 440–41 (quoting *Spokeo*, 578 U.S. at 341); *Light*, 176 F.4th at 1295 ("[A] technical statutory violation, without more, does not confer standing."); *Nelson*, 144 F.4th at 1354 ("[A] statutory violation is not itself an injury in fact."); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (dismissing a similar data-privacy lawsuit because the plaintiff had identified no "embarrassing, invasive, or otherwise private information collected," making the monitoring of her interactions with a website "similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales").[7]

## CONCLUSION

While Plaintiffs' Amended Complaint did enough to plausibly allege standing at the pleading stage, *Cobbs*, 824 F. Supp. 3d at 1265–67; [ECF No. 59 pp. 5–9], discovery has not borne out those allegations for either of the named Plaintiffs. The Court therefore lacks Article III jurisdiction. *TransUnion*, 594 U.S. at 431 (explaining the need for a plaintiff to maintain standing "at all stages of litigation . . . with the manner and degree of evidence required at the successive stages of the litigation"); *see generally* William B. Rubenstein, 1 Newberg and Rubenstein on Class Actions § 2:8 (6th ed.) ("[I]f a case has only one class representative and that party does not have standing, then the court lacks jurisdiction over the case and it must be dismissed. If the case only had this one class representative from the outset, then there is no opportunity for a substitute class representative to take the named plaintiff's place because this means that the court never had jurisdiction over the matter").

---

[7] Defendant also moved to prevent Plaintiffs from relying on their disclosed rebuttal expert to make their case for class certification [ECF No. 113]. Because Plaintiffs' expert materials are irrelevant to the standing analysis and the Court's conclusions herein, Defendant's Motion [ECF No. 113] is **DENIED AS MOOT**.

CASE NO. 25-80458-CIV-CANNON/McCabe

In light of this core deficiency, it is **ORDERED** and **ADJUDGED** and follows:

1. Plaintiffs' Motions to Certify Class [ECF No. 105 (non-sealed Motion); ECF No. 106 (sealed Motion)] are both **DENIED**.

2. Defendant's Motion to Strike Expert [ECF No. 113] is **DENIED AS MOOT**.

3. Plaintiffs' Amended Complaint [ECF No. 21] is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

4. The Clerk is directed to **CLOSE** this case.  Any scheduled hearings are **CANCELED**, any pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**ORDERED** in Chambers at Fort Pierce, Florida, this 31st day of July 2026.

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

16